RECEIVED IN CLERKS OFFICE
U.S.P.C. Atlanta

JUN 0 4 2021

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

**UNITED STATES DISTRICT COURT**

for the

**Northern District of Georgia**

_ATLANTA_ **Division**

| | |
|---|---|
| **PARTIES** ) | Judge _____ |
| ) | |
| Mr. ROBERT C. HUTCHISON, ) | **Case No.** |
| Mrs. ANAYENCI HUTCHISON, ) | |
| the HUTCHISON CHILDREN ) | # 1:21-CV-2311 |
| R.C.H.II, A.P.H., ) | |
| J.E.H., D.A.B., ) | **COMPLAINT FOR DAMAGES** |
| and others collectively as ) | |
| ) | UNETHICAL MEDICAL EXPERIMENTATION, 45CFR§46; |
| PLAINTIFFS ) | MALICIOUS BATTERY, RCW 19.375; |
| ) | GROSS MISCONDUCT, 50 USC 1810; |
| V ) | GROSS NEGLIGENCE, Cal Civ Code 52.7; |
| ) | EQUAL PROTECTION VIOLATIONS, 42 USC §1983; |
| LIVE WELL COUNSELING, ) | CONSPIRATORIAL DEPRIVATION, 42 USC §1985(3); |
| HONEYWELL LLC., N.S.A., ) | FORESEEABLE NEGLECT TO INFER, 42 USC §1986; |
| VIRTUAL TECHNOLOGIES LTD., ) | INTENTIONAL INFLICTION of |
| W.A.S.P.C., DARPA, F.B.I. ) | EMOTIONAL DISTRESS, 50 USC §1828; |
| UNKNOWN CONTRACTORS, OFFICERS, ) | MALICIOUS INTERFERENCE with CONTRACTUAL |
| OFFICIALS, AND/OR EMPLOYEES of ) | ECONOMIC EXPECTANCY, 42 USC §1981; |
| the UNITED STATES GOVERNMENT, ) | HIPPA VIOLATIONS, RCW 19.86; |
| DIGITAL PIRATES HACKING GROUP, ) | TORTUOUS CONVERSION TRESPASS TO CHATTELS; |
| KU KLUX KLAN OF WISCONSIN, ) | FIRST AMENDMENT VIOLATIONS; |
| STATE OF WASHINGTON, ) | FOURTH AMENDMENT VIOLATIONS; |
| IARPA, US PRESIDENT'S OSTP, ) | FIFTH AMENDMENT VIOLATIONS; |
| and others collectively as ) | EIGHTH AMENDMENT VIOLATIONS; |
| | THIRTEENTH AMENDMENT VIOLATIONS; |
| DEFENDANTS | FOURTEENTH AMENDMENT VIOLATIONS; |

INTRODUCTION

1

Proceeding In Forma-Pauperis as a Pro Se litigant Mr. Hutchison and
other family members collectively as Plaintiffs file this complaint for
damages, relief, permanent injunction, based in scientific facts and
historical facts of collusion to show this Honorable Court as follows:

2

This is an action for personal injury, pecuniary, and non-pecuniary
damages, arising out of similar, but separate tortuous intentional
and/or negligent conduct of all Defendants in violation of, including
but not limited to: state and federal laws, international laws,
treaties, agreements, and covenants; herein incorporated by reference

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................... pg.  01 02

INTRODUCTION ...................................... pg.  02-03

JURISDICTION AND VENUE ...................................... pg.  03-04

PERSONAL JURISDICTION ...................................... pg.  04-05
(See Attachment for Additional Defendants)

ENTITLEMENT TO RELIEF ...................................... pg.  05-06

CAUSE OF ACTION ...................................... pg.  06-30
(Facts of Claim Stated by Paragraph)
Relocation & Ingestible NESD (N³) Neuro-tech Intro          ¶:08
Bias Habits & Societal Policies of USG-Intro                ¶:09-10
BRAIN Initiative & Research Subjects                        ¶:11-12
Inspection of Ingestible Neuro-tech                         ¶:13
Eye Witness DARPA NESD Program INI &/or BC/I                ¶:15
Monitoring of RCH II & Assault                              ¶:16
Fraudulent Misrepresentation                                ¶:17-18
Workplace Hostilities                                       ¶:18,
Secret Meeting & Threats                                    ¶:19-22
Security Clearance Argument                                 ¶:23
RNM Surveillance & Racial Animus Swindling Intro            ¶:24-25
Complaint Honeywell HR & STD placement                      ¶:26
Confronting Production Manager & Racial Animus              ¶:27
Neuro-tech Induced Attempted Suicide                        ¶:28
Swindling & Racial Animus                                   ¶:29-30
Complaint Filed with State of Washington Dept. of Health    ¶:31
Mens Rea of Fraud with Racial Animus KKK                    ¶:32-34
Historical Failure to Infer- Racist Conspiracy Collusion    ¶:35-39
Historical Failure to Infer- Unethical Human Experiments    ¶:40-42
Historical Relevance Argument- Comparison & Facts           ¶:43-44

DEFENDANTS VIOLATIONS OF LAW ...................................... pgs. 30-32

FACTUAL ALLEGATIONS ...................................... pgs. 32-137
(Claims of Relief 1 Thru 16 by Defendants on pages)

PRAYER FOR RELIEF ...................................... pgs. 137-141

to a racially motivated equal protection conspiratorial collusion deprivation with intent to defraud and deprive, as well as failure to infer, with multiple claims against all Defendants who directly and/or indirectly participated, in conspiracy against Mr. Hutchison since June of 2018. Also, the illegal capturing of bio-metric identifiers derived from non-consensual neurotechnology nano-electronic chip medical research experiments directly and/or indirectly conducted by DARPA thru white supremacists black-hat hackers and by all other Defendants beginning August 18th, 2017. Plaintiffs make relevant requests for judicial recognition of scientific facts under FRE 201, appointment of experts for testimony under FRE 706, FRE 1006 for voluminous amounts of evidence, and tolling the statute of limitations under the equitable estoppel doctrine, as well as other statutes and/or doctrines for all Defendants negligent and/or intentional acts that will continue to cause damages to the Plaintiffs unless pursuant to FRCP Rule 65(b) a Temporary Restraining Order and/or an Emergency Preliminary and/or Permanent Injunctive ruling is made by this court.

## JURISDICTION AND VENUE

3

Jurisdiction is proper, for separate civil actions arising from the same events, under 28 USC §1332-diversity of citizenship due to an action for damages exceeding $75,000; 28 USC §1367-supplemental jurisdiction; A jurisdictional grant under 28 USC §1346(b)(1), gives the District Court exclusive jurisdiction of civil actions on claims against the United States for relevant money damages and loss of property for subordinates intentional acts under 18 USC §2712; Actions brought under 5 USC §552(a) privacy act suits, 28 USC §1343(a), 5 USC §552(a), 5 USC §702-right of review, as well as judicial jurisdiction pursuant to 28 USC §1331 to answer a federal question concerning constitutionality of state authorized human experiments with RFID and other personal identifiable SBM tracking technologies.

4

Because torts, wrongs, human rights violations, and constitutional violations occurred in multiple districts throughout multiple states

spanning over three years. Salkin, Waterbly, Mostrom and many more KKK member's network of white supremacist activity with threats of physical harm to Mr. Hutchison with alleged harms done to R.C.H.II, and other "chilling" harms jeopardizing the vulnerability of the other Hutchison children while residing within Spokane County in the State of Washington, created fears of retaliation, as well as, intentional intimidation, stalking, and/or harassment via technological devices delaying commencement of an action in Federal District Court seated in the Eastern District of the State of Washington. The Hutchison's reasonably request, "special circumstances judicial deference", to Plaintiffs venue of choice, be heard in Federal District court seated in the North District of the State of Georgia, or mutual deference to the United States District Court seated in the State of the District of Columbia. Venue is proper in this district under relevant parts of 28 USC §1391(a)(1)(2), §1391(b)(2), §1391(c)(2), §1391(e)(1), and §1391(g).

<div align="center">PERSONAL JURISDICTION</div>

<div align="center">5</div>

The grounds for exercise of personal jurisdiction over nonresidents is set forth within the FRCP Rule 4(k)(1)(a); and, specific jurisdiction as in Goodyear Dunlop, *supra*, 131 S Ct. at 2851, citing von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79nHarv. L. Rev. 1121, 1136 (1966). For "issues deriving from, or connected with, the very controversy that establishes jurisdiction" is proper under O.C.G.A. §9-10-91(2010); Grounds for exercise of personal jurisdiction over nonresident who commit tortuous injuries from outside this state with minimal contacts to the state of Georgia under §9-10-91(3).

<div align="center">6</div>

Defendants Lee W. Salkin as an employee of Live Well Counseling conducts business in the State of Washington located at 200 N Mullan Rd Ste 222, Spokane Valley, WA 99206; Live Well Counseling, conducts business within the jurisdiction of the Federal Judicial District of North Georgia within Fulton County in the State of Georgia located at 201 17th St. NW #3090 Atlanta, GA 30363. Defendants Mark Waterbly and other conspirators as employees of Honeywell Electronics conducts

<div align="center">**4**</div>

## PERSONAL JURISDICTION CONTINUED

## UNITED STATES GOVERNMENT DEFENDANTS

The USG has minimal contact with the State of Georgia within the jurisdiction of this court, including but not limited to: a location in the Sam Nunn Atlanta Federal Center 61 Forsyth SW, Atlanta, GA 30303.


OFFICE OF SCIENCE AND TECHNOLOGY POLICY
Attn: Acting Director Kei Koizumi
725 17th St NW,
Washington, D.C., 20504
202-456-4444

NATIONAL INSTITUTE OF HEALTH
Attn: Director Francis S. Collins, M.D., Ph.
1225 19th St NW #710,
Washington, D.C. 20036
(202)296-4426

U.S. DEPT OF HEALTH AND HUMAN SERVICES
Attn: Secretary of HHS Alex Azar
200 Independence Ave SW,
Washington, D.C. 20201
(887)696-6775

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE/
INTELLIGENCE ADVANCED RESEARCH PROJECTS ACTIVITY
ATTN: Director Avril Haines
ERSKINE HALL
WASHINGTON, DC 20511
(301)243-1995; dni-iarpa-info@iarpa.gov

DEFENSE ADVANCED RESEARCH PROJECTS AGENCY
Attn: Director Stefanie Tompkins
675 N RANDOLPH ST,
Arlington, VA 22203-2114
(703)526-6630

NATIONAL SECURITY AGENCY
Attn: General Paul M. Nakasone
9800 Savage Rd. Suite 6272
Fort Meade, MD 20755-6000
(301)688-6311

## PERSONAL JURISDICTION CONTINUED

US OFFICE OF THE ATTORNEY GENERAL
Attn: AG Merrick B. Garland
441 4TH Street, NW,
Washington D.C. 20001
(202)727-3400; oag@dc.gov

US ATTORNEY'S OFFICE
Attn: William P. Barr
2100 Jamieson Ave,
Alexandria, VA 22314
(703)299-3700;

FBI HEADQUARTERS
Attn: Director Christopher A. Wray
935 Pennsylvania Avenue, NW
Washington, D.C. 20535-0001
(202)324-3000;

U.S. DEPARTMENT of HOMELAND SECURITY
Attn: Alejandro Mayorkas
3801 Nebraska Ave NW,
Washington D.C. 20016
(631)226-2796;

## WASHINGTON STATE GOVERNMENT DEFENDANTS

The State of Washington and all other Defendants listed below under
28 USC §1331 Diversity is proper for a claim exceeding $75,000.00
with all below listed Defendants living in a different state than the
Plaintiffs.

WASHINGTON STATE HOUSE OF REPRESENTATIVES
Attn: Director OPR Jill Reinmuth
416 Sid Snyder Ave SW
Olympia, WA 98504
(360)786-7573;

WASHINGTON ASSOCIATION OF
SHERIFFS AND POLICE CHIEFS
Attn: James McMahan
3060 Williamette Dr NE, Ste 200,
Lacey, WA 98516
(360)486-2380;

## PERSONAL JURISDICTION CONTINUED

STATE OF WASHINGTON
ATTORNEY GENERAL OFFICE
Attn: Bob Ferguson
800 5th Ave #2000,
Seattle, WA 98104
(206)464-7744;

STATE OF WASHINGTON
DEPT OF EMPLOYMENT SECURITY
Attn: Commissioner Cami Feek
212 Maple Park Ave SE
Olympia, WA 98501-2347
(360)902-9500;

WASHINGTON STATE DEPT OF HEALTH OFFICE OF
INVESTIGATIVE AND LEGAL SERVICES HSQA
Attn: Secretary of Health Umair A. Shah, MD, MPH
111 Israel Rd SE,
Tumwater, WA 98501
(360)236-2620; Hsqacomplaintintake@doh.wa.gov

## LOCAL GOVERNMENT DEFENDANTS

CITY OF SPOKANE
Attn: Mayor Nadine Woodward
808 W. Spokane Falls Blvd.
Spokane, WA 99201
(509)625-6250

SPOKANE POLICE DEPT
Attn: Chief Craig Meidl
1100 W Mallon Ave.
Spokane, WA 99260
(509)755-2489

CITY OF SPOKANE VALLEY
Attn: Mayor Ben Wick
10210 E. Sprague Ave.
Spokane Valley, WA 99206
(509)720-5000

SPOKANE SHERIFFS DEPT
Attn: Sheriff Ozzie Knezovich
1100 W. Mallon Ave.
Spokane, WA 99260
(509)477-2240

## PERSONAL JURISDICTION CONTINUED

### CIVIL REGIME THIRD-PARTY DEFENDANTS

*Honeywell Electronics Employees:*

Dwight Mostrom
1515 W Dalton Ave.
Spokane, WA 99205

Alex Duke
8713 E. Michielli Pl
Spokane Valley, WA 99212
(360)390-1251; (360)740-1845

Matt White
207 4th St Apt 4
Lewiston, ID 83501

Jakie Dowlen
15805 W Hoyt Rd
Rathdrum, ID 83858
(562)865-1843

Brian Adams
4308 N Lincoln St
Spokane, WA 99205
(805)461-9281


*Private Persons, Digital Pirates, and others:*

Ronald M. Davidson
5726 W Pacific Park Dr
Spokane, WA 99208
(509)413-2322; (509)326-6197

David A. Chavando
6355 Blanchard Canyon Rd
Tujunga, CA 91042
(509)299-2847; (509)299-2886

Andrew Auernheimer
290 5th St
Jersey City, NJ 07302
(804)355-3889; (804)355-2889

## PERSONAL JURISDICTION CONTINUED

Keli A. Detty
532 Fuller St
Richland, WA 99354
(909)797-7991; (619)216-1665

Tammie Mae Mostrom
12619 50th Dr NE
Marysville, WA 98271
(360)871-0367; (425)870-9296

Wade T. Roses
15321 Old Snohomish Monroe Rd
Snohomish, WA 98290
(360)748-6040; (425)789-1178

### *Racially Motivated Individual:*

LEADER OF KKK WISCONSIN
Rolf W Wegenke
1869 Carrington Dr
Sun Prairie, WI 53590
(608)825-3485

AND MORE UPON DISCOVERY

business in the State of Washington located at 15128 E Euclid Ave, Spokane Valley, WA 99216; Honeywell conducts business within the jurisdiction of the Federal Judicial District of North Georgia within Fulton County in the State of Georgia located at 1190 W Druid Hills Drive NE, Atlanta, GA 30329. With a principle place of business located at 300 S Tryon St Suite 500, Charlotte, NC 28202. Unknown Federal Agents of Federal Agencies as employees of the United States Government in both their individual and/or official capacity in the State of Washington located at 1116 W Riverside Ave. Suite 100, Spokane, WA 99201-1106; and operates in the jurisdiction of the Federal Judicial District of North Georgia within Fulton County in the State of Georgia located at 3000 Flowers Rd. S. Atlanta, GA 30341. With a principle place of business located in between 9th and 10th Street on Pennsylvania Ave, NW Washington, D.C. 20535-0001. Plaintiffs place of residence located in the jurisdiction of the Federal Judicial District of North Georgia within the State of Georgia.

(See Attached List of Additional Defendants Personal Jurisdiction)

### ENTITLEMENT TO RELIEF

5

Plaintiffs are entitled to relief from all Defendants for, including but not limited to: violations of 50 USC Subchapter I-III, §1810- electronic searches and seizures, §1828- physical searches and seizures, an action under Bivens V. Six Unknown Federal Agents 403 US 388(1971). And, under 28 USC §2679(b)(1) exclusiveness of remedy; as well as, under the Federal Tort Claims Act(1978) for claims of relief under 28 USC §1346(b); and under 18 USC §2712,-civil actions against the United States Government for subordinates intentional acts; Furthermore, Plaintiff is entitled to relief from all Defendants under 28 USC §1343(a) recovery for; including but not limited to: damages to person, property, redress of deprivation, injury, and failure to infer, under 42 USC §1981-tortuous inference with contract; 42 USC §1983- racially motivated equal protection deprivation; 42 USC §1985(3)- racist conspiracy collusion intent to defraud & deprivation; and 42 USC

**5**

§1986- gross negligence, neglect to infer with conspiracy. All Defendants, excluding the United States Government, are civilly liable for alleged criminal acts; including but not limited to: under relevant parts of the Electronic Communications Privacy Act(1986), 18 USC §2510-§3121; And, entitlement under 18 USC §2520(a), subsection(b)-Relief, and subsection (2)(a); for actual damages, attorney's fees, and other forms of relief, for violations of the Computer Fraud and Abuse Act (1986), 18 USC §1030- Fraud in connection with computers. The Washington Cybercrime Act(2016), RCW §9A.90.010-§9A.90.110; as well as, RCW §9.61.260 (1)(c),(3)(b),&(5) for the effect on state laws under 42 USC §1320d-7a(2)(A)(i)(1)- to prevent fraud and abuse, in connection with the Biometric Privacy Act(2017), RCW §19.375.020 (4)(b)(ii)-non consensually capturing, disclosing, and mishandling bio-metric identifiers. Plaintiffs are entitled to relief from all Defendants, for all civil damages.

## CAUSE OF ACTION

### 8

Mr. Hutchison relocated his family to Spokane, WA in August of 2017. They encountered vicious mistreatment, racism, multiple forms of discrimination, and racially motivated hostile animus, as well as non-consensual subcellular nano-electronic chips implanted within their neural cells on August 18th, & 29th, of 2017, when a crew of men working on the water-main located at 24th and S. Pines in Spokane Valley, WA, argued over who would place the ingestible implantable ($N^3$) Next-Gen Neurotechnology devices in the Hutchison family's water-main, scientific facts of the neurotechnology is water soluble capable of traveling to the skin and enter into the bloodstream, breaching the Blood-Brain-Barrier of each member of the Hutchison family to include Mrs. Hutchison while pregnant with J.E.H.; DARPA's Intelligent Neural Interface is capable of much more than just remotely monitoring, but is a means of controlling the human body thru "Optogentics" via neuromuscular electrical stimulation (NMES). DARPA's ingestible ($N^3$) neurotechnology has given unfiltered access to the Hutchison family's brains and bodies anyone with an access code via "Brainjacking" such as private persons, civil regimes, and/or governments have access to Mr.

**6**

Hutchison, Mrs. Hutchison and the Hutchison children, a "chilling effect" fear of hostility due to the intentional racial animus from white supremacists toward Mr. Hutchison while employed at Honeywell Electronics, that caused lingering effects of psychological damages, including but not limited to: mental instability, mistrust of government, paranoia derived from group cyber-stalking, and mental anguish from witnessing the Intelligent Neural Interface. Mr. Hutchison made several attempts to contact appropriate state and federal agencies diligently discovering material scientific facts, for arbitration and/or relief from cyber terrorist, as well as compensation for damages suffered as a result of fraudulent misrepresentations made by Honeywell Electronics to trap Mr. Hutchison into a "swindle" scheme by subordinates of Live Well Counseling and Honeywell while Mr. Hutchison was temporarily disabled on short term disability, justifying a special circumstances request for tolling the statute of limitations.

9

The facts of bias habits and societal policies of the USG discussed herein may be considered, "lacking ripeness" within the allegations Mr. Hutchison presents to this court. But, instead of lacking ripeness, factual data of such research is relevant to Plaintiffs claims for monetary relief, injunction, and/or repair on the merits against the defending parties, as well as absolutely necessary to prevent "chilling effect" fears of conspiratorial collusive harm and systemic targeting of Mr. Hutchison and his family who are Black/African American citizens and other members of protected classes.

10

Because there is no exclusive constitutional authority to protect the rights of human research subjects, relevant arguments are made in Griffin V Breckenridge, 403 US. 88, 105-06 (1971) While they have yet to be identified, other rights may be protected against private impairment. The Supreme Court cautioned: "In identifying these two constitutional sources of congressional power, we do not imply the absence of any other." Id. At 107. The Hutchison's civil rights and civil liberties, as well as, other procedural and substantive due process protections under the Fifth Amendment are in jeopardy.

7

The [Brain Research through Advancing Innovative Neurotechnologies] Initiative herein referred to as the BRAIN Initiative Program, announced by the President's [OSTP] Office of Science and Technology Policy, under the Obama Administration, on April 2nd, 2013; with approximately $100 million USD in support funds. A collaborative effort between DARPA project SUBNETS, RAM, and HAPTIX; National Institution of Health Advisory Committee on Diversity BRAIN Working Group funding research at Georgetown University, National Science Foundation funding the Center of Brains, Minds, and Machines based at MIT and HARVARD for integrative and interdisciplinary fundamental research and development of innovative technologies and data infrastructures, DARPA funding Stanford University and other academic bodies for research and development of miniaturized technology devices and biomedical electromyostimulation devices; FDA has partnered with medical device companies for public sector research, as well as private sector commitments from the Allen Institute for Brain Science, the Kavli Foundation, and Howard Hughes Medical Institute, with goals of supporting the development and application of innovative neural technology herein referred to as "neurotechnology", that can create a dynamic revolutionizing understanding of the human brain. Accessible remotely via a DARPA Brain to Computer Interface, and is similar if not the same to devices, under Patent WO 2012/126003 A1 and/or KR20170090373A. Funding for neural research is contributed by government under the BRAIN Initiative, Neurological Initiative, and/or Humane Genome Project; and paid for by grants similar if not the same, to the National Institute of Health (NIBIB and NCMRR/NICHD) under Bio-engineering Research Partnership Program (1R01EB007401-01), the National Science Foundation under the ERFI Program (#0937848), and by the Defense Advanced Research Projects Agency (DARPA) Reorganization and Plasticity to Accelerate Injury Recovery Program (REPAIR) (N66001-10-C-2010). The Presidential Commission for the Study of Bioethical Issues under the BRAIN Initiative Program was created to establish ethical, legal, and societal implications and projected impacts on society, but failed to recognize potential abuses and misuses.

12

Mr. Hutchison and family are non-consensual research subjects, under the US Brain Initiative Program. Mr. Hutchison is a victim of malicious cyber stalking using "Neuroweaponry". As well as, on several occasions Mr. Hutchison has witnessed other people are being used like puppets under the "doll-mode" application of the neurotechnology device accessing motor cortex control derived from a neural prosthesis that is capable of restoring and/or controlling motor functions of the entire body through "Optogenetics" (NMES) Neural Muscular Electrical Stimulation and/or (FES) Functional Electrostimulation, also known as Electromyostimulation.

13

On August 18, 2017 in between 8:30pm to 9:45pm, "Mr. Hutchison, a machinist employed by Honeywell Electronics, working on a Mori Seiki Lathe input an offset of .002" adjustment to T1 with a 30 radius diamond-tipped insert, for a precision rough cut, "finishing pass". After an M0 in the program, Mr. Hutchison opened the sliding door, and visually inspected the finishing pass, as well as, used a handheld UT Scanner to check depth of cut. With his back turned to the work desk, two employees Brian Adams and Alex Duke approached Mr. Hutchison and began making small talk and quickly walked away. Mr. Hutchison picked up his cup of water and put it to his lips, and drank some of the water, noticing a faint metallic taste. Mr. Hutchison looked at the water and noticed golden-alloyed triangular fin-like tipped objects swimming side to side inside the cup. Mr. Hutchison removed a single cylindrical golden-alloyed triangular fin-like tipped object out of the cup and physically measured the device with a pair of tweezers in his left-hand and an (ISO CERTIFIED) 6 inch 'MSC#86487592 Mitutoyo (500-752-20)' IP67 Electronic Caliper in his right-hand, acquired the cylindrical diameter dimension at 0.005mm-0.00495mm while under a circular magnifying glass with a light, visually inspected the gold alloy cylinder and the triangular fin-like tip, that freely moved side to side with a small amount of pressure from the electronic caliper. The device is similar in size to a single grain of Metamucil.

**9**

14

Shortly afterward Mr. Hutchison walked to the restroom and recalls seeing his own personal medical information, as well as private bio-metric data displayed on a co-worker Dwight Mostrom's computer monitor that was obviously some form of advanced and/or next generation Brain to Computer Interface technology. Questions arose in Mr. Hutchison's mind, what is this technology? And, how did Mostrom and others come into the possession of this form of technology as civilians? As well as, who gave them access to this technology?

15

Mr. Hutchison recalls the BC/I and/or INI analog monitor with specificity in quadrants, from Q1-top left, Q2-top right, Q3-bottom left, Q4-bottom right, explained as follows: Q1-a full body EEG electrocardiography magnetic resonance imaging display 'Body Mapping' pixelating from head to toe in rapid succession of Mr. Hutchison's body; Q2-an MEG of Mr. Hutchison's synapses activity 'Brain Mapping', and fMRI display of a Grey pixelating 'Thought Display' to view what Mr. Hutchison is thinking; Q3-an EKG displaying Mr. Hutchison's 'Vital Signs'. Visual display creating a picture in a picture image of Mr. Hutchison looking at Mostrom and the computer monitor, Mr. Hutchison's sight 'Remote Viewing' to view what Mr. Hutchison is seeing; Q4-a DNN/HMM Learning Speech Recognition display 'Speech to Text' with translation capabilities, and a second 'Thought to Text' underneath to view and record what Mr. Hutchison says aloud, thoughts, hear via ears, and see via eyes, as well as, DARPA logo in the bottom left corner of the monitor. Among many more biological anatomy and/or private and personal bio-metric identifiers on this monitor, Mr. Hutchison was astonished at the technology platform of the United States Brain Initiative Program and/or Neurological Initiative, participant DARPA's NESD program Intelligent Neural Interface and/or Next-Gen ($N^3$) ingestible wireless neurotechnology.

16

On September 6th, 2017 Mr. Hutchison's son a nine year old boy R.C.H. II came home from school and said, "Dad I woke up on the slide in the playground at school today, and no one was out there just me." And,

Robert also said, "Dad my butt feels funny, I did number two at school and my poop came out, I didn't have to push". Mr. Hutchison reasonable believes his son Robert was sexually assaulted at school, by white supremacist who have access to the DARPA BC/I. At approximately 8:30pm at Honeywell Electronics, Mr. Hutchison was approached by a co-worker who was teary eyed and was about to say something to Mr. Hutchison, before being abruptly interrupted by the Production Manager Waterbly.

17

On September 7th, 2017 Mr. Hutchison contacted Live Well Counseling, located at 521 North Argonne, Bldg. B Suite 105 Spokane Valley, WA 99206 and made an appointment with Lee Salkin, who presented himself as a mental healthcare provider, offering counseling services, on September 12, 2017 at 9am. With concerns of mental anguish derived from a hostile work environment.

18

On September 12th, 2017 Mr. Hutchison went to an appointment with Live Well Counseling, for mental health related issues, involving a hostile work environment and became a patient of Lee Salkin's, for mental health related issues. Mr. Hutchison attended several sessions with Live Well Counseling employee Salkin for work related hostilities seeking help with coping from trauma of a noose being presented and other hostilities on the job, in which the noose making co-worker was terminated, and Mr. Hutchison recalls some employees were plotting against him. Mr. Hutchison reasonable believes he was poisoned without his knowledge, implanted with an ingestible neural nanotechnology device, proximate causing severe mental anguish, thoughts of suicide, and suffering physical damages to the brain.

19

On September 20th, 2017 at around 8:00pm Mr. Hutchison recalls noticing most of the employees were not on the shop floor, and Mr. Hutchison then went on break, by going outside to smoke a cigarette where other employees were seated and smoking as well. Mr. Hutchison then came back into the building grabbed a cup of coffee and went into the break room, and sat down next to the wall, where one of the conference rooms were located. Mr. Hutchison recalls overhearing a, meeting he was not a

**11**

party to, taking place behind closed doors, in the conference room as follows:

20

"Mark Waterbly-Production Manager, Dwight Mostrom-Machinist, Jack Dowlen-Lead Machinist, Alex Duke-Machinist, Matthew White-Machinist and others voices were recognized during this meeting. The men congratulated Waterbly on his promotion. I overheard what I believed to be their cellphones hitting the table in the meeting room. I was sitting adjacent to the wall with my ear pressed up against the wall, listening to the meeting, I was uninformed of and/or unaware of and/or not invited to this meeting, as follows:

21

Waterbly began the meeting – "It's good to see you guys again"

Others in the Room – replied in likeness

Waterbly to Others – "Their almost done refurbishing the Klavern, so we won't have to meet in different places anymore, my grandfather was one of the founding members of the Klavern.

Waterbly to Mostrom – "I have never been treated with more respect, people called me sir, and I got a free coffee,"

Waterbly to Mostrom – (referring to Mr. Hutchison) "I would kill you if you did that to my son" and, "I don't give a fuck about what that bitch said, that man is a nigger."

Waterbly to Others– "I don't know about you guys but, I ain't doing what no nigger tells me!"

Others– "That's our money, he doesn't deserve it."

Mostrom– "you guys are committing conspiracy,"

Waterbly– "If that nigger tries something I got a snub nose...... .357 in my desk and I'll blow that niggers back out." "I don't want that nigger to get another dime of our money." "We have to kill him but it can't happen here, it would be too obvious."

Others– "yeah, I keep mine ready, I got a knife."

Waterbly– "I don't want that nigger to get another dime of our money." We have to kill him, but it can't happen here, it would be too obvious."

**12**

Others– "yeah, I got C4, another said, I put a tracker under his car, another man with a studder said, I iiii hhhaaavve aaaaa knife"

Waterbly to the Studdering co-conspirator – "We know what your trying to say"

Waterbly– "We'll let the boys handle him."

Others– "The brothers have a plan, to get this nigger"

Waterbly– "Even better"

Others– "yeah, we're going to get him good"

<div align="center">22</div>

One of them came out and saw me sitting against the wall and immediately ran back inside and warned the men in the room yelling, "S.A.N.B.O.G. he is on the other side of the wall" and one of the others asked, "Is he wearing earbuds"? And, Waterbly ended the secret meeting. Mr. Hutchison overheard the men in the room talking about his wife and children as though they were viewing and/or surveilling his family while in the privacy of their own home, right before the end of the meeting. Unknown third-party Defendants as co-conspirators called "Brothers" were mentioned in the conversation, as well as, mentioning an undisclosed amount of money to be divided by the conspirators, a plot to physically harm Mr. Hutchison, and implying harms done to his son. Mr. Hutchison noticed Mark Waterbly and many others exiting the room without making eye contact with Mr. Hutchison.

<div align="center">23</div>

Mr. Hutchison makes subject matter factual arguments, that to obtain neurotechnology "neuroweaponry" either directly and/or indirectly subordinates of Honeywell LLC., must be associated with participants in the Neurological Initiative and/or must have obtained a security clearance first, by filing out Standard Form 86, using technologies only accessible through authorization under Executive Order 13284 (January 23, 2003) section 19 to section 20 "A Senior Official of the Intelligence Community" make determinations on who has access to compartmentalized information, and security clearance under 50 USC §3441 and is permissible under E.O.12968, 60 FR 40245 (August 2, 1995); relating to access to classified information, or any successor thereto, and E.O.10865 25 Fed. Reg. 1583 (February 20, 1960); relating to

<div align="center">**13**</div>

safeguarding classified information with industry), or any successor
thereto; and (B) possesses a need to know under such an Order, then an
individual would have access to DARPA's Brain Computer Interface and/or
to obtain, "neuroweaponry" directly allowing access to weapons of mass
destruction in close proximity to white supremacists. Mr. Hutchison
further claims, "They waited for my family to move up there to
(Spokane, WA) from Georgia to plot against me, directly causing a
breach of contract, indirectly causing economic hardship for Mr.
Hutchison and his family, resulting in a foreclosure of Real-Estate
property located at 2406 South Pines Rd. Spokane Valley, WA 99206, and
being cyber-stalked, by all Defendants misuse of neurotechnology, as
well as the proximate cause for all damages".

24

Mr. Hutchison was being surveilled by Salkin and others using DARPA
NESD program $N^3$ Technologies and/or Intelligent Neural Interface under
the US BRAIN Initiative. Indirectly subjecting Mr. Hutchison to torture
under a 42 USC §1985(3) racially motivated conspiratorial collusion
intent to defraud and deprive. Plaintiffs were lulled into inaction for
filing a claim within the statute of limitations due to scientific
facts and death threats via ingestible nano-electronic devices. Mr.
Hutchison has made several attempts to inform the correct government
agency and/or entities in an effort to seek arbitration and/or relief
in the form of permanent injunction, as well as monetary compensation.

25

Racially motivated acts to conspire through coordinated networks of
white supremacists subordinates of Live Well Counseling, Honeywell
LLC., Virtual Technologies LTD., WASPC, Contractors, Sub-Contractors
and/or Private Sector entities and/or funded under federal grants with
NSA, DARPA, and/or other government agencies directly and/or indirect
participants to the United States Government's BRAIN Initiative
program, and Neurological Initiative Program, as well as participation
in the international Human Genome Project; third-party private persons
who directly and/or indirectly have access to Mr. Hutchison's brain via
Remote Neural Monitoring using a DARPA Intelligent Neural Interface to
intentionally commit identity theft, forgery, and/or fraud by

**14**

"swindling", as well as give power to members of white supremacists groups and an elite hacking group, known as, "digital pirates" fronting as "Anonymous", are co-conspirators acting collusive to deprive, Mr. Hutchison of alienable and inalienable life and liberty interests to rights of privacy, bodily integrity, and personal autonomy under the Substantive Due Process Clause of the Fifth Amendment, as well as equal protection violations derived from Gross Misconduct for misuse and/or mishandling of ingestible neurotechnology to follow thru with conspiratorial efforts, of "swindling" and/or to commit identity theft of Mr. Hutchison's name and/or likeness, as well as, forgery on a Cayman National Bank form on June 8th, 2018.

26

On September 26th, 2017 Mr. Hutchison went to the H.R. Department and told them about his lunch bag and other personal belongings, being tampered with, and beliefs based on race discrimination, that one or more of the Machinists poisoned his food and beverage on multiple occasions without his knowledge. The secret Klan meeting Mr. Hutchison overheard concerning racially motivated life-threatening comments, made by one or more machinists. And, as a result of such complaints, H.R. manager recommended Mr. Hutchison take a paid leave of absence and go on short-term disability with CIGNA insurance company with a principle location 900 COTTAGE GROVE RD. BLOOMFIELD, CT 06002; as supplemental income offered by Honeywell Electronics. Mr. Hutchison suffered severe emotional distress and mental anguish causing paranoia concerning his families' safety, as a result of witnessing his bio-metric identifiers digitally displayed in real-time on a DARPA BC/I, the hostile work environment, and white supremacists activity in the region, as well as, at Honeywell Electronics to include the production manager Mark Waterbly an Exalted Cyclops of the KKK chapter of Spokane, WA.

27

On November 20th, 2017 Mr. Hutchison went to work for the majority of his shift unto the morning of November 21st, 2017 and confronted Waterbly behind closed doors, and before Mr. Hutchison could finish talking Waterbly said, he didn't feel comfortable and he went to the H.R. and Mr. Hutchison was escorted from the premises. Upon being

**15**

ejected from the building while walking with the H.R. and another
employee, one of the machinists made a death threat saying, "you're a
dead nigger." Mr. Hutchison went directly home and started feeling
uneasy having thoughts of suicide leading to a hospital visit and Mr.
Hutchison was under a lot of mental distress, because of finding a
noose at work, that led to termination of that employee, witnessing a
DARPA BC/I and/or INI, and many more hostilities that amounted to
alleged retaliatory acts from other employees, including but not
limited to, poisoning of Mr. Hutchison's food and beverage without his
knowledge, Mr. Hutchison's son being assaulted at school while he was
sleeping from working a 12 hour night-shift, random threats of harm
from other white supremacist in the area where the population of
Black/African Americans are at and/or below 1%, and a close call of
death when Mr. Hutchison went on a ride-along with Spokane PD on July
28, 2017 at around 12:00am.

<div align="center">28</div>

On November 21st, 2017 Mr. Hutchison had an induced psychotic break and
attempted suicide leading to a hospital visit at Multi Care Valley
Hospital located at 12606 E Mission Ave. Spokane Valley, WA. Mr.
Hutchison was placed under a 72 hour hold and was transferred to New
Alliance E&T in Collville, Washington on November 22, 2017 pursuant to
RCW 71.05 for thirteen days. Shortly after being released from New
Alliance E&T in Collville, Washington Mr. Hutchison went through Live
Well Counseling for treatment while under short term disability
provided by third-party Cigna Incident #10367032-01. Mr. Hutchison had
no record of psychological and/or mental health, prior to moving to the
Spokane area. Mr. Hutchison reasonable believes employees at Honeywell
Electronics were and/or are members of some White Supremacist groups in
the area, implanting ingestible neural technology, in his brain and
body, as well as, alleged poisoning of his food and beverage,
indirectly causing mental distress, insomnia, irritability, depression,
and severe mental anguish. Directly affecting Mr. Hutchison's,
character, attendance, job performance, and is the proximate cause, for
interfering with contractual agreement between Mr. Hutchison and
Honeywell Electronics causing harms to economic expectancy.

<div align="center">16</div>

29

On June 8th, 2018 at around 11:55am and began my session with Lee Salkin at Live Well Counseling in Spokane, WA. He had a clipboard with an insurance form folded in-half with a Cayman National Bank form underneath where the signature line and account number was partially visible. I noticed that Lee W. Salkin had a clear plastic radio earpiece in his left ear. And, he was communicating with unknown co-conspirators in the next room. He told me, "I need you to sign an insurance form," and handed me the clipboard. I was about to sign it when Lee Salkin oddly said, "make sure to sign it neatly." I overheard the conversation due to close proximity to Salkin and 'paper thin walls' when one of the conspirators said, "Do you want us to get him" Salkin replies, "Hold On." Then Salkin gave me an ultimatum by saying, "$5 Million USD for a hospital visit, or $1 Million USD for broken bones if I don't sign the form" I laughed at first, but then quickly realized that the threat to my life was serious. Mr. Hutchison alleges his actual signature is illegible, due to a broken knuckle on his right hand, a non-related injury, suffered at 16 years old. Salkin threatened to harm Mrs. Hutchison and their three children by saying, "We are watching you." "If you tell anyone about this we will kill that Illegal and those mongrels." At first I didn't take him seriously until I noticed a concealed firearm on the right side of his body at the waist. So, I looked at Lee W. Salkin and said, "you must be joking, right", he replied, "does it look like I'm joking?" I overheard one of the unknown men in the other room say, "Say the word" and Lee Salkin replied into the earpiece saying, "No, I got this" And, he then made an indirect inflammatory statement referring to a joke by Chris Rock saying, "There is a difference in Black people and Niggers, Niggers have got to go!, I wish they would let me join the KKK, so I can kill Niggers". Lee Salkin started acting strange and made a physical gesture with his body by crossing his arms over his chest and lifting his left hand in some odd white supremacists salute and began acting strangely. I was disgusted by his acts as my mental health counselor, for his improper conduct, and how he conducted that session, as well as, the inflammatory

**17**

statement with reference to a racially-motivated joke used to intentional harm me, along with threats to my family, when he told me. I told him I did not feel comfortable, and I wanted to leave immediately. I was afraid for my family's safety, and I was in fear of physical harms, loss of life, as well as, angered by race based inflammatory statements in the form of a "racist remarks" with intent to harm me, so I left the building in a rush and went home.

30

Live Well Counseling subordinate Lee Salkin and other coconspirators, allegedly remotely monitored Mr. Hutchison and his family via ingestible neurotechnology and the DARPA Brain Computer Interface via neurotransmitters data decoded and sent to technological devices in the Defendants possession, to plot and/or plan a conspiracy to commit tortuous conversion to chattel, by stealing from Mr. Hutchison, in secret collusion between Honeywell Electronics employees and a Live Well Counseling healthcare provider, W.A.S.P.C., and Unknown Federal officials, officers, and/or employees of the United States Government participants in the US BRAIN Initiative Program, Neurological Initiative Program, with intent to "swindle", Plaintiff, by way of identity theft and forgery on an illegally obtained Cayman National Bank draft form, intentionally acting to steal the entire contents of Mr. Hutchison's checking account with Cayman National Bank.

31

Due to the intentional poisoning of Mr. Hutchison by conspirators Lee Salkin and employees at Honeywell Electronics causing Mr. Hutchison to suffer severe mental anguish leading to a hospital stay rendering Mr. Hutchison so temporarily disabled that he couldn't reasonable bring a civil action against Live Well Counseling and attempted to contact the Washington State Department of Health under RCW 7.70.110 for mandatory mediation of health care claims- via complaint filed on 06/17/2020, stating requests for investigation of malicious fraud, threats of physical harm, and possible criminal charges, as well as other forms of arbitration. Thereby satisfies the requirement for arbitration before filing a cause of action due to the Washington State Dept. of Health failing to investigate the complaint, and alleged preferential

**18**

treatment given to Live Well Counseling prohibited under RCW 49.60.400;
As well as, indirectly constitutes intentional concealment, actionable
under 42 USC §1986; for foreseeable failure to infer with the §1985
racially motivated conspiratorial collusion intent to defraud and
deprive Mr. Hutchison of inalienable rights to privacy, bodily
integrity, and personal autonomy under the due process clause of the
Fourteenth Amendment to the US Constitution.

                                    32

The identity theft, fraud, and/or swindling and/or unlawful conversion,
occurred while Plaintiffs were under duress via threat of physical
harm, as well as, illegal 24/7 surveillance as a non-consensual
neurotechnology research subject under the US BRAIN Initiative Program,
and since Salkin and cohorts are members of the KKK of Wisconsin, the
racially motivated conspiratorial collusion intent to defraud, pursuant
to FRCP Rule 9(b); Conspirators mindsets are examined based on an
ideology to prove motive in committing fraud, as follows:

                                    33

Salkin, Mostrom, Waterbly, and others racially motivated ideology
behind, negative reactions and/or discriminatory actions and/or
conspiratorial racially motivated acts of conspirators alleged set of
beliefs in white supremacy and/or affiliations and/or Mens Rea, by the
dual-fold character, "ghost skin", to commit fraud and is based on
deception through fraudulent misrepresentations made by subordinates of
Live Well Counseling, Honeywell LLC and others.

                                    34

Including but not limited to: Mark Waterbly, Dwight Mostrom, Alex Duke,
Lee Salkin and others character are in question, pursuant to FRCP 9(b),
to prove motive, opportunity, and intent as the basis for fraudulent
misrepresentations, as well as racist ideology to premeditatedly plan
fraud and swindle Mr. Hutchison out of funds within a Cayman National
Bank account. By Salkin's on words, on portable digital recording
device, his late father was a law enforcement officer, and a racist who
didn't agree with his son race mixing with a childhood Black female
lover, as a member of the KKK of Wisconsin", Salkin's uncle Rolph
Wegenke leader of the Wisconsin KKK, as well as, Salkin's' cousin, one

of the men in the other room talking thru earpiece to Salkin. Under the
First Enforcement Act: Civil Rights Act of (1870), SEC. 6; state's,
"That if two or more persons shall band or conspire together, or go in
disguise upon the public highway, or upon the premises of another, with
intent to violate any provision of this act, or to injure, oppress,
threaten, or intimidate any citizen with intent to prevent or hinder
his free exercise and enjoyment of any right or privilege granted or
secured to him by the Constitution or laws of the United States,
codified at 42 USC §1985(3); [note that this section seems specifically
to target the activities of the KKK, founded in 1866] 1862,ch. 108.
Vol. xii. p.480 Any person knowing that certain wrongs are about to be
done, and having the power to prevent them, neglects so to do, and any
such wrong is done, is made liable for all damage caused thereby,
codified at 42 USC §1986; In Whitfield v. United States, 453 US. 209
(2005) "The illegal act is the conspiracy's 'target offense.'" Since
failure to infer with racist conspiracy to defraud occurred and is
pleaded with relevant specificity of historical collusion, for example:
                                35
The infamous Federal Bureau of Investigations (COINTELPRO) Counter
Intelligence Program of the 1960's several civil rights workers died
and/or were assassinated and others were subjected to well-known
horrific and vicious inhumane treatment for efforts of constitutionally
protected rights to gain, including but not limited to: respect, equal
protections, right to vote, and implement federal laws passed by the
42nd Congress in the Civil Rights Act of 1870, 16 Stat. 140. (1870) §2
"it shall be the duty of every person and officer to give to all
citizens of the US the same and equal opportunity." As well as, all
other laws passed by congress. It is historic fact during the 1960's
Black American political figures were targeted, including but not
limited to: Medgar Evers, Dr. Martin Luther King Jr., Minister Malcolm
X, Fred Hampton, and many more were either assassinated and/or
illegally surveilled by the FBI. Recognition for abuse of power for
example: Former Director Comey admitted J. Edgar Hoover wrote letters
to Dr. King to commit suicide. The Civil Rights Movement of the 1960's
opposition arouse in the form of collusion between the KKK and local,

state, and federal government, as well as FBI's involvement and/or
failure to infer with racially motivated conspiracies. Relevant
similarities exist between Mr. Hutchison's 42 USC §1986 failure to
infer with a racist conspiracy. The FBI's COINTELPRO, as well as the
widely distributed Black Identity Extremists Intelligence Assessment
(2017) on page 5 stated under (U//FOUO)-"Moorish sovereign citizens are
a loose network of mostly African Americans who believe they are
sovereign entities who do not recognize the authority of the USG". It
is a fact that Black/ African American groups like the Moorish Science
Temple of America, BLM, and other individual are targets of FBI, while
historically neglecting to acknowledge obvious threats of collusion
between KKK and law enforcement caused well-documented harms to Black
Americans. Also, under page 6 (U)-Perspective states "BIE violence
peaked in the 1960's and 1970's in response to changing socioeconomic
attitudes and treatment of Blacks during the Civil Rights Movement"
indirectly reclassifying peaceful protesters in the 1960's as Black
Extremists. Under FRE Rule 406 Habit; Routine Practice- Pattern of
collusion and failure to infer is plausible evidence based on
historical facts. It is a fact that white supremacists connection to
government positions is a grandfathered method of a caste system and
created grounds for, "meeting of the minds." Herein explained with
specificity to encompass some of FBI subordinate acts of collusion
between white supremacists is explained by relevant sources. These
allegations are evidentiary historical facts under FRE Rule 803(16)
Statements in Ancient Documents: "A statement in a document that was
prepared before January 1, 1998", and other documents of evidence
supported by FRE Rule 901; pursuant to FRCP 44(a)(1)(A); including but
not limited to: newspaper articles, televised testimonies, and relevant
documentaries as a historical intentional foreseeable neglect to infer,
actionable under 42 USC §1986; For example:

36

It is historical fact that during the infamous FBI COINTELPRO unjust
racially motivated unlawful investigations of parallel constructed
evidence gathering methods derived from collusion between federal law
enforcement and white supremacists were discovered during a televised

testimony of Gary Thomas Rowe, wearing a "KKK hood", during the Church Committee Hearings (1975); As well as, the FBI's White Supremacist Infiltration of Law Enforcement Intelligence Assessment (August 2006) and are herein incorporated to support judicial recognition of a historical pattern of discrimination, failure to interfere with racially motivated conspiracies, and collusion between federal agents of federal agencies as representatives and/or employees of the United States Government and white supremacists with racially motivated ideologies.

37

During the Church Committee Hearings a KKK affiliate Gary Thomas Rowe an informant, recorded on 12/2/1975 testifying and during the proceedings, Rowe told the subcommittee that the FBI knew and disregarded his participation in the violent attacks on African Americans and was also tasked with causing friction within the KKK by extramarital relations. Rowe stated, a detective with Birmingham PD, intentionally allowed a racially motivated failure to protect American citizens, for a duration of more than (15) fifteen minutes, allowing physical attacks on Black American citizens by members of the Eastview Klavern 13, the most violent chapter of the KKK in American History. Rowe was an informant for the FBI and Director J. Edgar Hoover personally approved payments in the range of $80 to $250 with additional expenses, without interference. It is a well-known fact that the "Church Committee Hearings" contributed to the FISA Act of (1978). Rowe was recruited by FBI Special Agent Barrett G. Kemp in April of 1960. The FBI discovered that the Klan was attempting to recruit Rowe, a man known for his work with the ATF, leading to arrests in illegal alcohol operations in exchange for firearms, and who was seeking a career in law enforcement.

38

According to a 1976 report titled, The Ku Klux Klan in Illinois, by the Illinois Legislative Investigating Commission, "Governors in 10 states and 13 senators in nine states were elected with Klan help. At least one senator, Hugo Black, who was destined to become a United States Supreme Court Justice, had been a Klansman."Alabama governor David Bibb

Graves was Grand Cyclops of the Montgomery chapter. He served two terms, starting in 1927. Alabama's neighbor, Georgia, also had a Klan governor in Clifford Mitchell Walker, who served from 1923 to 1927. Walker often talked to other Klansmen before making decisions about state business. The situation wasn't better in the West. In 1920s Colorado, the Klan "could well believe they owned the state," wrote the historian Carl Abbott in Colorado: A History of the Centennial State. In Denver Klansmen held the offices of head of public safety, city attorney, chief of police, and several judgeships, and they were behind the election of its mayor. At higher levels, the Klan helped elect the state's US. senators and governor, while Ku Kluxers themselves held four of the state's top offices and one seat on its Supreme Court. "The Republican Party, heavily influenced by the Klan, controlled both houses of the legislature," according to Abbott. In a 1944 letter to segregationist Mississippi Senator Theodore G. Bilbo, Byrd wrote, "I shall never fight in the armed forces with a Negro by my side. Rather I should die a thousand times, and see Old Glory trampled in the dirt never to rise again than to see this beloved land of ours become degraded by race mongrels, a throwback to the blackest specimen from the wilds." As late as 1946, Byrd wrote to the Klan's Grand Wizard: "The Klan is needed today as never before, and I am anxious to see its rebirth here in West Virginia and in every state in the nation." Robert Byrd's career in public service began on November 4, 1952, when the people of West Virginia elected him to his first term in the US. House of Representatives. Byrd served six years in the House before being elected to the US. Senate in 1958. He would continue to serve in the Senate for the next 51 years, until his death at age 92 on June 28, 2010. Illinois. General Assembly. Legislative Investigating Commission. The Ku Klux Klan in Illinois. Chicago, Ill.: Illinois Legislative Investigating Commission, 1976. Relevant case law under Collins V. Hardyman 341 US. 651 (1951) the court first considered the question of whether section 1985(3) included private conspiracies in deprivation of federal rights. The Collins court did consider the possibility that a "conspiracy by private individuals could be of such magnitude and effect as to work a deprivation of equal protection of the laws, or of

equal privileges and immunities under the laws." 341 US Id. at 662. It
then cited the post-Civil War Ku Klux Klan as a possible example of
such a conspiracy. The circuit court, reversing a lower court decision,
held that section 1985(3) did include private conspiracies in
deprivation of rights of national citizenship. Hardyman v Collins, 183
F. 2d 308 (9th Cir. 1950)

39

To further support, a historic fact pattern of discrimination and
collusion between white supremacists and governmental positions
existing since the "Klanbake" of the 1920's has created a national
network of private persons acting in their individual and/or official
capacity under color of law, to further their cause of dominating other
citizens of different races and/or persons of differing national
origin. It is also a historical fact that strong influence of white
supremacy over governmental positions contributed to decades of
racially motivated oppression and afterward racially motivated failure
to protect, as well as inference with racially motivated conspiracies
that affected the social order and/or socio-economic political
mechanism, intentionally depriving Black Americans and others of equal
opportunities and many other injustices since slavery as factual
unequal mistreatment. It is historic fact that White supremacists
social orders, created the "maintain the status quo" narrative stated
throughout directives under the FBI's COINTELPRO, and contributed to
the development of institutionalized racism as a historic fact pattern
of equal protection violations. In Birnbaum v Trussel, 347 F. 2d 86, 90
(2d Cir. 1965) "A violation of equal protection would be shown if the
actions against the plaintiff were part of a veteran, or a member of
some class or race. A violation of equal protections would be shown if
the actions against the plaintiff were part of a 'general pattern of
discrimination,' or were based on impermissible consideration of race
or class, but plaintiff has not raised a genuine issue of fact
concerning such discrimination." See Birnbaum v Trussell, 371 F2d 672,
676 (2d Cir. 1966); Mr. Hutchison differs by supporting the accusation
of institutionalized racism as equal protection violations, actionable
under 42 USC §1986; by looking to relevant events throughout history,

including but not limited to: Slavery, Black Codes, Jim Crow, and many
other forms of state based eugenics supported discrimination, unethical
medical experiments, and oppression of Black/ African American people
as a historical fact pattern of equal protections violations, suffered
by Plaintiffs Mr. Hutchison and his family who are members of protected
classes.

<div align="center">40</div>

Human experimentation on minorities particularly Black American people
as members of a protected class of US citizens, can be traced directly
to the United States Government and federal agencies concerning, but
not limited to, intelligence gathering research, biological research,
technological research, neurological research, and many other forms of
medical research. Several research programs have been, both
historically and chronologically documented, as well as, privately
conducted with intent to neglect the research subjects. The sad fact is
subordinates of the USG have conducted unethical human experiments on
the economically deprived, foreign nationals, and people of color as a
historic fact pattern of discrimination under sex, race, mental health,
economic class, and veteran status for non-consensual participation in
human test trials and/or medical experiments since the 19th century to
today is factual history of unethical non-consensual human
experimentation on protected classes herein listed chronologically,
including but not limited to:

<div align="center">41</div>

Beginning in the 1840s– Dr. James Marion Sims, "the father of
gynecology," performed involuntary surgical experiments on enslaved
African women, without anesthesia; 1896– Dr. Arthur Wentworth,
Children's Hospital Spinal taps on 29 children to test procedure. Dr.
Roberts [Philadelphia]: labeled them "human vivisections"; 1899– Dr.
Sharp, Indiana State Prison, sterilization experiments were conducted
on African American prisoners; 1900– Cuba, US Army Major Dr. Walter
Reed injects 22 Spanish immigrants with yellow fever and promises $100
USD if they survive; 1915– Mississippi, physician for US Public Health
Office injects African American prisoners with venereal diseases to
experiment on a cure; 1916– California, testicular transplant

<div align="center">25</div>

experiments on African American prisoners in San Quentin; 1931- Puerto Rico, Dr. Rhoads, Rockefeller Institute infected Puerto Ricans with cancer, called for the annihilation of Puerto Ricans, created US Army Biological Warfare units in MD, UT, and Panama. Dr. Rhoads performed radiation experiments on prisoners, hospital patients, and soldiers. He was honored by the American Association for Cancer Research; In 1932 to 1972- Tuskegee, Alabama, US Public Health Service Dr. John Cutler withheld syphilis treatment for indigent Black men to monitor and record long term effects; 1940s- Chicago, US Army, Statesville Penitentiary African American prisoners were infected with Malaria for "war effort." Nazi doctors cited these experiments as precedent to defend their own "research" for the German war effort; 1941- Dr. William Black, infected 1yr olds with herpes, the Journal of Experimental Medicine called it: "an abuse of power, an infringement of the rights of an individual; not excusable because the illness had implications for science"; 1943- University of Cincinnati Hospital 16 mentally disabled patients locked in freezers for 120 hrs "to study the effect of frigid temperature on mental disorders"; 1945- US State Dept & CIA, "Project Paperclip" [bombs and toxins]; 1946- US Government – experiments on veterans in VA hospitals; secret order to change "experiments" to "investigations" or "observations" in reports as a form of spoliation; 1946 to 1948 Guatemala, US Public Health Service soldiers, prisoners, mentally ill patients, prostitutes 700 syphilis, 600 gonorrhea, 100 chancroid "The medical team used prison inmates, prostitutes were bought with American taxpayer money. If the women didn't have syphilis, PHS physicians injected syphilis on their cervixes. Syphilis or gonorrhea was poured into the men's penises, on faces, on forearms, in eyes or through spinal punctures"; 1949 to 1953- Massachusetts, Atomic Energy Commission children with mental disabilities are fed radioactive isotopes; 1950- University of Pennsylvania, Dr. Joseph Stokes 200 female prisoners infected with hepatitis; 1950 to 1969- San Francisco US Army, Navy, CIA "mock" biological warfare attacks on American citizens; 1951 to 1960- University of Pennsylvania & US Army conducted psycho-pharmacological experiments on African American prisoners; 1952 to 1980- University of

Pennsylvania, Holmesburg Prison, 33 pharmaceutical companies tested 153 drugs on African American prisoners; 1951 to 1958– Virginia, Georgia, Florida, US Army Black Americans exposed to toxins, bacteria, viruses, and more for unethical human experimentation; 1952– Columbia University, State Psych Institute, Department of Defense experiments with mescaline had fatal results; 1956 to 1972– Staten Island, Willowbrook State School children with mental disabilities force-fed milkshakes with hepatitis; participation mandatory for admission to school; Dr. Saul Krugman called it: "serving mankind"; 1963 to 1973– Oregon & Washington, Dr. Carl Heller testicular irradiation experiments on African American prisoners; 1964– World Medical Association adopts Helsinki Declaration, states "The interests of science and society should never take precedence over the well-being of the subject"; 1966– New York, US Army, CIA toxins & bacteria released in NY subway system; 1969– Milledgeville, GA drugs tested on children with mental disabilities; 1969 to 1971– San Antonio, Texas contraception experiments, no informed consent of poor Mexican-American women; 1974– National Commission for the Protection of Human Subjects. Public Health Service mandated to enact regulations for the protection of human subjects; 1960s to 1970s– Intersections of Misogyny, Racism, and Classism: mass sterilizations of poor white women and women of color during experiments, exams, and surgeries. By 1974– over 42% of American Indian women had been sterilized without their consent; 1987– Supreme Court, US v Stanley, ruled soldiers given LSD without his consent could not sue Army; 1990– FDA waived Nuremberg Code for Dept. of Defense injected soldiers with unapproved drugs in Iraq War; 1996– New York, Psych Institute, Columbia University, Queens College, Mount Sinai School of Medicine. Young Black & Hispanic boys, 6 to 10 yrs old, injected with drugs to "predict violent or criminal behavior"; 1997– President Clinton apologizes to victims of "Tuskegee Experiments"; 2010– Secretary of State Hillary Clinton, Health and Human Services Secretary Kathleen Sebelius officially apologize to Guatemala's president; 2011– Presidential Commission Report "Ethically Impossible" STD Research in Guatemala from 1946 to 1948; and yet again is another unethical human medical experiment under the US Brain Initiative

Program being conducted on a protected class members Mr. Hutchison and
his family from August 2017 to today.

42

The aforementioned chronologically listed unethical medical
experiments, that occurred for more than one hundred years in this
country from the 19th century well into the 21st century. In which the
medical industries have benefited from the pattern and/or practices of
biological research performed on unsuspecting men, women, and children
of the Black population and other minority groups used as biological
research subjects conducted under racist ideologies and beliefs.

43

The well-known and well-documented torment, humiliation, and abuses
people of color have suffered due to medical curiosity and white
supremacy in the past involving unethical experiments on human research
subjects as discrimination has a chilling effect of "genocide by
definition under 18 USC §1091 Genocide (a)". And, is relevant to
evidence gathered during the Nuremberg Medical Trail of (1946-47) human
experiments on mind control conducted by NAZI German military physician
Dr. Kurt Plotner working at the concentration camps Dachau and
Auschwitz, experimented with barbiturates, morphine derivatives, and
mescaline for interrogation purposes ie… intelligence gathering. The
use of neurotechnology to gather domestic intelligence on American
citizens is relevant to Mr. Hutchison and family's alleged
participation in medical experiments, and have been compared to the
infamous human medical experiments in Guatemala ("the Guatemala
Venereal Experiments") and the Tuskegee, Alabama ("the Tuskegee
Experiments"), wherein Black men who are members of a protected class
of United States citizens were left untreated for observational
purposes. During the research conducted on these men, observations were
made concerning the effects of advanced stages of syphilis on their
health. While there indeed are many similarities, including but not
limited to: The subjects of the unethical human experimentation are
members of a protected class that has been purposefully neglected and
abused, monitored and tortured with an inability to refuse
participation, and in vitro and/or in vivo chemically reactive

**28**

substances injected and/or implanted directly into the body traveling to the brain, as well as unethical implantation of a foreign object and/or monitoring conducted by a government body during the experiment. In comparison: during ("the Guatemala Venereal Experiments"), a division of the Public Health Service, the Venereal Disease Research Laboratory, conducted unethical non-consensual human medical experiments and one major distinction is that many of the victims in this case were intentionally inoculated with sexually transmitted diseases (also called venereal diseases); Even though, Mr. Hutchison and his family haven't been inoculated with venereal diseases, but were implanted with ingestible neurotechnology devices, there exists commonalities between the aforementioned experiments on Black Men in Tuskegee and foreign Nationals from Guatemala and The Hutchison's claims of neurotechnology experimentation. For example:

44

(1) These victims didn't begin the experiments with the diseases or ingestible neurotechnology; (2) The medical team and/or subordinates of the USG wanted to record, analyze, and study the effects of diseases or ingestible neurotechnology; (3) The medical team and/or subordinates of the USG intentionally infected their subjects which is morally wrong, extremely unethical, and most importantly illegal; (4) The victims of these human medical experiments were purposefully neglected and left without proper medical care, sufficient medical treatment, and/or an effective cure, among other things.

45

A historical fact is race-based inequities are well-documented in United States history, and derives from age old prejudices and/or societal norms, based on foundational racism involving biological differences via eugenics research. In Plessy v Ferguson Justice John Marshall Harland's dissenting opinion stated, "'the white race deems itself to be the dominant race in this country so it is in terms of prestige and achievements in education and wealth and power so I doubt not it will continue to be for all time if it remains true to its great heritage and holds fast to its principles of constitutional liberty', 'but in view of the Constitution in the eye of the law there is in this

country no superior dominant ruling class of citizen, there is no caste
here.' 'Our Constitution is colorblind and neither knows nor tolerates
classes among citizens in respect of civil rights, all citizens are
equal before the law.'" The existence of racial inequalities,
discriminatory efforts from white supremacists groups is compared to
caste system of racism. Further discussed in Cass R Sunstein's, The
Anticaste Principle, 92 Mich. L. Rev. 2410, 2411 (1994). Cass Sustein
defends a concept of rights under an anticaste principle, which
"forbids social and legal practices from translating highly visible and
morally irrelevant differences into systemic inequality in rights
treatment that is not justified from a moral point of view." Sustein
suggests rights afforded without duties or functions of individual
citizens, to the extent such duties or functions may exist, and they
are derivatives of preexisting rights. The New York State Supreme Court
in 1995- Justice Edward Greenfield stated, "Mentally incompetent people
in psychiatric institutions cannot be given experimental drugs without
first agreeing to take part in the procedures. The mere mention of
experimental medical research on the mentally ill and children summons
up visceral reactions, with memories of brutal Nazi experimentations.
Even without the planned brutality, we have had deplorable instances of
over-reaching medical research in this country." Mr. Hutchison asked
the court to diligently research and/or fact find neurotechnology
capabilities, for a justiciable ruling on the merits.

## DEFENDANTS' VIOLATIONS OF LAW

46

The Defendants actions violate, and Plaintiffs' causes of action arise
from, the following laws, agreements, conventions, resolutions,
policies, regulations, executive orders, and treaties, which constitute
specific examples of the applicable law of nations or customary
international laws, states laws, congressional acts, and other laws of
the United States, as well as, substantive rulings of the Supreme Court
of the United States and lower courts, including but not limited to:

47

  a  Federal Tort Claims Act (1946);

b  Civil Rights Act (1866);

c  Civil Rights Act (1964);

d  The First, Fourth, Fifth, Eighth, Thirteenth, Fourteenth
   Amendments to the Unite States Constitution;

e  California Civil Code 52.7;

f  Washington State Biometric Privacy Act (2017);

g  Health and Human Services 45 CFR 46

h  Privacy Act (1974) 5 USC §552a;

i  Stored Communications Act (1986) 18 USC Chapter 121 §2701-§2712;

j  Electronic Communications Privacy Act (1986) 18 USC §2510 et seq.

k  Alien Tort Statute, 28 USC §1350;

l  Foreign Intelligence Surveillance Act (1978)

m  The Law of Nations(1758);

n  Universal Declaration of Human Rights, G.A. Res. 217A (iii), U.N.
   Doc. A/810 (1948);

o  International Covenant on Civil and Political Rights, G.A. Res.
   220A (xxi), 21 U.N. Doc., GAOR Supp. (No.16) at 52, U.N. Doc.
   A/6316 (1966);

p  The Convention Against Torture and Other Cruel, Inhuman or
   Degrading Treatment of Punishment, Dec. 10, 1984, G.A. Res. 39/46,
   39 U.N. Doc., GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51 (1985)
   (ratified 10/28/98);

q  Declaration on the Protection of All Persons From Being Subjected
   to Torture and Other Cruel, Inhuman or Degrading Treatment or
   Punishment, G.A. Res. 3452, 30 U.N. Doc., GAOR Supp. (No.34) at
   91, U.N. Doc. A/10034 (1976);

r  Vienna Declaration and Programme of Action (World Conference on
   Human Rights, 1993);

s  Article 3 of the Geneva Conventions (1949);

t  The Nuremberg Code (1947);

u  The Bilateral Treaty of Peace, Amity, Commerce and Navigation
   between the United States and Mexico;

v  Slavery Convention of 1926, September 25, 1926, 60 L.N.T.S. 253,
   Amended on Dec. 7, 1953, 183 U.N.T.S. at 51 (1953);

w  The Convention on the Elimination of All Forms of Racial
   Discrimination, Mar. 7, 1966, 660 U.N.T.S. at 195 (1978);

x  The Convention on the Elimination of All Forms of Discrimination
   Against Women, March, 1, 1980, 1249 U.N.T.S. at 13 (1980);


FACTUAL ALLEGATIONS


FIRST CLAIM FOR RELIEF

(Violation of Prohibition Against Medical Experimentation on Non-
Consenting Human Subjects: Alien Tort Statute, 28 USC §1350; Violation
of the Newborn Screening Saves Lives Reauthorization Act (2014), Common
Rule, 45 CFR 46; Violation of Due Process Clause: Fifth Amendment, 42
USC §1985(3))


48

Plaintiffs incorporate by reference each and every allegation contained
in the preceding paragraphs as if set forth fully herein against all
Defendants. At all times pertinent to the allegations herein,
subordinates of the USG acts and omissions were conducted and/or
performed under color of law of the United States. Although
subordinates of Live Well Counseling and Honeywell Electronics are
private persons, and not state officials, I instruct you that the
relationship between Live Well Counseling and Honeywell Electronics and
the USG is sufficiently close that they were acting under color of law.
In other words, this element of Mr. Hutchison's claim is not in
dispute, and you must find that this element has been established.

49

The United States BRAIN Initiative Program, Neurological Initiative,
and/or Human Genome Project is conduct by government employees and/or
private sector entities, and/or contracted private persons through the
NSA's domestic intelligence network and cover businesses, including but
not limited to, Live Well Counseling, Honeywell Electronics, and
Virtual Technologies LTD., as well as all subordinates to other private
sector entities. All Defendants were aware of the contractual agreement
of employment between Mr. Hutchison and Honeywell Electronics. The

32

United States Government and all third-party Defendants are liable for subordinates' intentional disregard of the excessive risk of serious harm to Plaintiffs' health and safety during neurological research.

50

Plaintiff Mrs. Hutchison brings this claim against all Defendants' for acts described herein constituting bio-metric medical neurotechnology experimentation on non-consenting human subjects in violation of the law of nations and are, therefore, actionable under the Alien Tort Statute, 28 USC §1350. As well as, substantive due process rights under the Fifth Amendment of the United States Constitution. The customary international law prohibition of medical experimentation on non-consenting human subjects is expressly defined in international treaties, declarations, international judicial decisions, and in the domestic legislation of numerous countries throughout the world, including the United States. It is widely-recognized that experimentation on unknowing human subjects is morally and legally unacceptable.

51

The USG, President of the US, and the OTSP are liable for the alleged conduct of subordinates and third-party contractors under the 'respondent superior doctrine', in that the NSA, DARPA, and/or their predecessors, acting under color of law and authority as United States Officials, set the conditions for, committed, directed, ordered, confirmed, ratified, acquiesced, had command responsibility for aiding and abetting, conspired to, and/or otherwise directly or indirectly caused or facilitated the bio-metric medical experimentation on all Plaintiffs, without all Plaintiffs' consent. The USG has a duty to prevent human rights abuses applicable to the Inter-American system under the theory of foreseeable risk establishes that for a State to be responsible for a crime committed in its territory, four elements must be present: (1) there must be a situation of real and immediate risk, (2) this situation must threaten a specific individual or group, (3) the State must know or ought to have known of the risk, and (4) the State could have reasonably prevented or avoided the materialization of the risk. But instead the USG and/or subordinates intended, knew or should

**33**

have known, that non-consensual human bio-metric neurotechnology
medical experimentation was being committed by their subordinates and
failed to prevent such abuse or punish those responsible.

52

Non-consensual human medical experimentation are a major violation of
ones rights to life, health, and personal integrity. The universally
condemned acts are violations of customary international law, as in
various relevant international instruments, such as the Nuremberg Code,
which states as its first principle, "the voluntary consent of the
human subject is absolutely essential." The Universal Declaration of
Human Rights ("UDHR"), and Article 7 of the International Covenant on
Civil and Political Rights ("ICCPR"), which provides that "no one shall
be subjected without his free consent to medical or scientific
experimentation." Other international documents prohibiting non-
consensual human bio-metric neurotechnology medical experimentation
include the Convention on Human Rights and Bio-medicine, the Universal
Declaration on Bioethics and Human Rights, and the 2001 Directive
passed by the European Parliament and the Council of the European
Union. This prohibition is also recognized by the World Medical
Association's Declaration of Helsinki, which sets forth global ethical
principles for physicians and provides that human subjects should be
volunteers who give informed consent to participate in research, and by
the Council for International Organizations of Medical Services
("CIOMS") guidelines, which require "the voluntary informed consent of
a prospective subject."

53

These prohibitions of non-consensual human medical experimentation is
further demonstrated in the enactment of an explicit prohibition by no
less than eighty-four countries. For its part, the US Food and Drug
Administration and other government agencies, including but not limited
to: US Department of Homeland Security; US National Aeronautics and
Space Administration; US Agency For International Development; US
Defense Department; Environmental Protection Agency; National Science
Foundation; as well as, the Department of Health and Human Services;
have long required informed consent for human medical research under

**34**

Subpart A 45 CFR part 46, "Protection of Human Subjects Regulations," promulgated as a Common Rule in (1991). Violations of these domestic and international prohibitions are capable of impairing international peace and security, especially, as here, when the medical team of one country violates the rights of another State's citizens. As a direct and proximate result of Defendants' acts and/or omissions, a Foreign National of Mexico Mrs. Hutchison, while pregnant with a US citizen J.E.H. became a victim of non-consensual ingestible implantable bio-metric neurotechnology medical experimentation, and has been subjected to severe physical and psychological injuries, have incurred expenses, and suffered actual damages. These injuries have caused, and will continue to cause, Mrs. Hutchison and other family members great physical and mental pain and suffering without injunction.

54

The Newborn Screening Saves Lives Reauthorization Act Pub. L.113-240 December (2014), as well as, the Common Rule (1991) under 45 Code of Federal Regulations Subpart B §46.201-§46.207 provides "additional protections for pregnant women, human fetuses and neonates involved in research"; The Hutchison children have also become victims of unethical bio-metric neurotechnology medical experimentation, directly and/or indirectly derived from white supremacist employed by Live Well Counseling and Honeywell Electronics conspiring with unknown government officers, officials, and/or employees intentional acts and/or omission in violation of 45 Code of Federal Regulations Subpart D §46.401-§46.409 provides "additional protections for children involved as subjects in research." All Defendants gross misconduct for failure to follow procedures clearly stated under 45 CFR 46 (a)(1-2) for "research that is conducted or supported by a federal department or agency, whether or not it is regulated as defined in §46.102(e), must comply with all sections of this policy." All Defendants not directly employed by the government are further liable for misconduct, mishandling, and misuse of ingestible implantable neurotechnology and (DARPA BC/I) brain computer interface, as well as, unethical research as major policy violations under 45 CFR 46, Subpart A – Basic HHS Policy for Protection of Human Research Subjects §46.101-§46.124 for research that is neither

35

conducted nor supported by a federal department or agency, but is
subject to regulation as defined in §46.102(e) must be reviewed and
approved, in compliance with §46.101, §46.102, and §46.107 through
§46.117 of this policy, by an institutional review board (IRB) that
operates in accordance with the pertinent requirements of this policy.

55

Since there is no ethical Internal Review Board that would authorize
non-consensual bio-metric neurotechnology medical experimentation on
pregnant women, fetus neonates, and children, gives rise to Plaintiffs
claims of aiding and abetting, gross misconduct and gross negligence
for unlawful and/or wanton acts between the USG subordinate employees
and private persons Salkin employee of Live Well Counseling, Mostrom,
Waterbly and other employees of Honeywell Electronics, as well as
third-party private sector entities and private persons as academic
bodies, corporations, technology companies, and any other unknown
affiliates, organizations, co-ops, and establishments engaged in
subject matter research, are directly and/or indirectly responsible for
maintaining appropriate regulatory and preventative measures for
misuses and abuses and/or loss of ingestible implantable
neurotechnologies connected to a DARPA BC/I, and other forms of
sophisticated surveillance equipment, as well as, any and all brain to
brain and/or brain to computer interfaces/machines. Furthermore,
Plaintiffs did not consent to being involved in any and/or all
unethical human medical experiments and is a direct violation under 45
CFR subpart A §46.116 general requirements for informed consent.

56

All plaintiffs, who had not been adjudicated guilty of any crime in
accordance with due process of law and therefore were not subject to
punishment, were subjected to harms, through the medical
experimentation that amounted to punishment by the government.
Plaintiffs' mistreatment during the non-consensual human medical
experimentation was imposed out of intelligence gathering purposes and
medical curiosity, without regard for the impact on its human subjects.
The non-consensual bio-metric neurotechnology medical experiment
deprived Plaintiffs of their alienable and inalienable rights as human

beings and their life and liberty interests in direct violation of
their substantive and procedural due process rights under the Fifth
Amendment of the US Constitution.

<div align="center">57</div>

Plaintiffs are informed and believe and thereon allege that all
Defendants' aforementioned acts were intentional, willful, malicious,
oppressive and despicable, and/or were done in willful and conscious
disregard of the rights, welfare, and safety of the research subject as
the proximate cause for all harms suffered, justifying entitlement to
injunction, monetary damages, and thereby justifies the request for
punitive and exemplary damages against all Defendants, as well as any
other relief deemed just and proper by the court.

<div align="center">SECOND CLAIM FOR RELIEF</div>

(Violation of Prohibition Against Cruel, Inhuman, or Degrading
Treatment- Alien Tort Statute, 28 USC §1350; Violation of Substantive
and Procedural Due Process Rights: Fifth Amendment, 42 USC §1986;
Violation of Cruel and Unusual Punishment: Eighth Amendment, 42 USC
1983; California Civil Code section 52.7)

<div align="center">58</div>

Plaintiffs incorporate by reference each and every allegation contained
in the preceding paragraphs as if set forth fully herein against all
Defendants. At all times pertinent to the allegations herein,
subordinates of the USG acts and omissions were conducted and/or
performed under color of law of the United States. Although
subordinates of Live Well Counseling and Honeywell Electronics are
private persons, and not state officials, I instruct you that the
relationship between Live Well Counseling and Honeywell Electronics and
the USG is sufficiently close that they were acting under color of law.
In other words, this element of Mr. Hutchison's claim is not in
dispute, and you must find that this element has been established.

<div align="center">59</div>

The NSA's domestic intelligence network and cover businesses, including
but not limited to, Live Well Counseling, Honeywell Electronics, and
Virtual Technologies LTD., as well as, all subordinates to other

<div align="center">**37**</div>

private sector entities. All Defendants were aware of the contractual agreement of employment between Mr. Hutchison and Honeywell Electronics. The United States Government and third-party private sector entities are liable for subordinates' intentional disregard of the excessive risk of serious harm to Plaintiffs' health and safety.

60

Plaintiffs bring this claim against all Defendants and at all times pertinent to the allegations herein, Defendants were acting under color of law. All Defendants' acts described herein constitute cruel, inhumane, or degrading treatment of Plaintiff's in violation of the law of nations and are, therefore, actionable under the Alien Tort Statute, 28 USC §1350; and, Customary international treaties and international and domestic judicial decisions, and other substantive and procedural due process violations of the Fifth Amendment, actionable under 42 USC §1986, as well as, violations of California Civil Code section 52.7 subcutaneous subcellular implantation of a radio frequency device, as well as, for deprivation of protections against Cruel and Unusual Punishment under the Eighth Amendment of the US Constitution.

61

The Hutchison's who were not adjudicated guilty of any crime in any court, but have been subjected to harms, due to outrageous conduct amounting to punishment, without due process of law, as well as, Defendants acts and/or omissions while using neurotechnology connected via DARPA brain computer interface constituting actual knowledge of a substantial risks of harm, including but not limited to: racially motivated digital stalking, torture, harassment, embarrassment, humiliation, oppress, deprive of sleep, and cause mental stresses, herein constitute cruel and unusual punishment in violation of the Eighth Amendment of the US Constitution, actionable under 42 USC §1983.

62

The United States Government is liable for failing to take reasonable measures to deal with the problems of alleged misconduct of subordinate agencies and/or individuals acting in both their individual and official capacity under the 'respondent superior' doctrine in that the NSA, DARPA, and others (or their predecessors), acting under color of

law and authority as United States officials, officers, and/or employees have set the conditions for, committed, directed, ordered, confirmed, ratified, acquiesced, had command responsibility for aiding and abetting, conspired to, and/or otherwise directly or indirectly caused or facilitated the unethical ingestible bio-metric neurotechnology medical experiment on the Hutchison's without first obtaining consent. DARPA intended, knew or should have known that the Brain Computer Interface is being misused during a non-consensual unethical bio-metric neurotechnology medical experiment and was being conducted by subordinates or their associates and/or white supremacist affiliates and DARPA failed to prevent such abuses of power, negligence, and intentional gross misconduct, as well as punish those responsible.

63

The United States Government intended, knew or should have known, that subordinates DARPA, IARPA, NSA, FBI, DHS, and/or other government agencies intended, knew or should have known, that neurotechnology is being used unethically and human trials are being conducted on Plaintiffs without consent under the Brain Initiative Program, Neurological Initiative Program, and the Human Genome Project. IARPA and DARPA subordinates failed to prevent such abuses and/or interfere with the non-consensual medical experiment and/or punish those responsible.

64

Non-consensual ingestible bio-metric neurotechnology medical experiment is a major violation of all Plaintiff's rights to life, liberty, health, bodily integrity, freedom of thought, and personal autonomy under the due process clause of the Fifth Amendment to the US Constitution, and, is universally condemned, in violation of customary international law, as in international human rights instruments, including but not limited to: the UDHR (Art.5), the ICCPR (Art.7), as well as, the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT") (Art.16). The United States is a party to the ICCPR, having signed on October 5, 1977 and ratified

the Covenant on June 8, 1992 and to the CAT, having signed on April 18, 1988, and ratified on October 21, 1994.

65

The USG is liable for intentional gross misconduct of subordinates, acting in both their individual and/or official capacity under color of law and authority of the United States Government as officers, officials, and/or employees, set the conditions for, committed, directed, ordered, confirmed, ratified, acquiesced, had command responsibility for, aided and abetted, conspired to, and/or otherwise directly and/or indirectly caused or facilitated the unethical non-consensual neural nanotechnology integrated biomedical human experiment conducted on Plaintiffs.

66

All Plaintiffs' lack of consent to participate in unethical bio-metric neurotechnology human experimentation amounting to punishment, is in violation of personal protections against impairment, for Mr. Hutchison's children who were unaware, uninformed, and underage, fetus and/or at the neonate stage of life, and Mrs. Hutchison who was pregnant at the time of ingestible implantation of neurotechnology commencement of human research as subjects of the unethical non-consensual bio-metric neurotechnology human experiments. And, have had to live with the debilitating and destructive ingestible neurotechnology implant as a result of this unethical bio-metric neurotechnology human experiment, and have therefore been deprived of their liberty to live their lives free of such intrusive, harmful, and degrading intentional acts committed directly and/or indirectly by all Defendants.

67

The USG subordinates are further liable for their conscious disregard of the excessive risk of serious harm to The Hutchison Children's health and safety. All plaintiffs, who had not been adjudicated guilty of any crime in accordance with due process of law and therefore were not subject to punishment, were subjected to harm through the medical experimentation that amounted to punishment by the government. In violation of California Civil Code section 52.7, makes it unlawful for

**40**

anyone– not just employers– to "require, coerce, or compel any other
individual to undergo the subcutaneous implanting of an identification
device"; as well as, the Cruel and Unusual Punishment Provision under
the Eighth Amendment to the United States Constitution, actionable
under 42 USC §1983.

68

Plaintiffs' mistreatment during the unethical non-consensual
neurotechnology bio-metric human experimentation imposed out of,
including but not limited to: intelligence gathering purposes,
biomedical curiosity, satellite based monitoring research, ingestible
neurotechnology research and/or to punish the Plaintiffs without any
adjudication of guilt from any judicial authority within any judicial
jurisdiction within the Continental US. or abroad. And, without swift
action from this court to halt the continued unethical non-consensual
neurotechnology bio-metric human experimentation will continue to
deprive Plaintiffs of their alienable and inalienable rights as human
beings to live free from intrusive technologies, and constitutional
protections to life and liberty interests as substantive and procedural
due process rights under the Fifth Amendment of the US Constitution,
actionable under 50 USC §1810 and §1828.

69

As a direct and proximate result of all unknown federal agents of
federal agencies' acts and omissions, Plaintiffs have been subjected to
severe physical and psychological pain and suffering, have incurred
expenses, and suffered damages. These injuries have caused and will
continue to cause Plaintiffs great physical and mental pain and
suffering.

70

Plaintiffs are informed and believe and thereon allege that all
Defendants' aforementioned acts were intentional, willful, malicious,
oppressive, and despicable, and/or were done in willful and conscious
disregard of the rights, welfare, and safety of all Plaintiffs who have
suffered severe physical pain, mental anguish, loss of sleep,
psychological pain and suffering, thereby justifying entitlement to
injunctive relief and monetary compensation for actual economic damages

**41**

suffered, with a request for punitive, exemplary, treble damages against Defendants and any other relief deemed reasonable by the court.

THIRD CLAIM FOR RELIEF

(Electronic Communications Privacy Act (1986); 18 USC §2520(g) Washington State Biometric Privacy Act (2017); Violation of Unlawful Searches and Seizures: Fourth Amendment, 42 USC §1983; Substantive Due Process: Fourteenth Amendment, 42 USC §1985(3))

71

Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein against all Defendants. At all times pertinent to the allegations herein, subordinates of the USG acts and omissions were conducted and/or performed under color of law of the United States. Although subordinates of Live Well Counseling and Honeywell Electronics are private persons, and not state officials, I instruct you that the relationship between Live Well Counseling, Honeywell Electronics, Virtual Technologies, LTD., and the USG are sufficiently close that they were acting under color of law. In other words, this element of Mr. Hutchison's claim is not in dispute, and you must find that this element has been established.

72

Plaintiffs bring this claim against all Defendants, including but not limited to: the state of Washington, W.A.S.P.C., Pacific Northwest Neuroscience Neighborhood, University of Washington Nano Manufacturing Facility and others involved in the US BRAIN Initiative Program, Neurological Initiative, and/or Human Genome Project research conducted by private persons and/or government employees acting in both their individual and/or official capacity, under NSA's domestic intelligence network and cover businesses, including but not limited to, Live Well Counseling, Honeywell Electronics, and Virtual Technologies LTD., as well as other private persons and private sector entities who are directly and/or indirectly liable for the acts and/or omissions of subordinates under the "Respondent Superior Doctrine".

73

Lee W. Salkin and Live Well Counseling directly conducted business with
Honeywell Electronics, in a third-party payment arrangement, to accept
insurance company funds through CIGNA with INCIDENT #10367032-01.
Defendants Lee W. Salkin and Live Well Counseling had received said
payments through Cigna for the duration of multiple sessions Mr.
Hutchison attended while on (STD) Short Term Disability offered by
Honeywell Electronics between the months of November 2017 to June 2018.
Mr. Hutchison was financially supported by the supplemental Short Term
Disability provided by CIGNA as shown on Mr. Hutchison 2017 and 2018
tax returns presentable under request.

74

Plaintiffs are informed and have reason to believe Primary Defendant
Lee W. Salkin deliberately deceived Plaintiffs for months as a
Healthcare Provider. The misrepresentation was intentionally
fraudulent, in order to obtain an illegitimate gain, by swindling
Plaintiff Robert Hutchison on June 8th 2018.

75

All Defendants were aware of the contractual agreement of employment
between Mr. Hutchison and Honeywell Electronics. The USG and Private
Sector entities subordinates' intentional disregard of the excessive
risk of serious harm caused by the misuses and abuses of neural
technology under the Brain Initiative Program, jeopardizing Plaintiffs'
health and safety. Furthermore; Plaintiffs allege all Defendants acts
and/or omissions using scientific facts of relevant neural technology
nanotransmitters, constitute a deprivation of rights stated in the
Electronic Communications Privacy Act (1986) codified at 18 USC §2510-
§2523 directly and/or indirectly intercepting data, improperly
disclosing Plaintiffs private and personal bio-metric identifier data,
and/or information used beyond the extent permitted by 18 USC §2517, as
well as is a violation of section 18 USC §2520(a); Including but not
limited to, Biometric Identifiers captured, decoded, deciphered, and/or
used by government and private persons, without first obtaining consent
from Plaintiffs. Constituting intentional acts at deprivation of the
implied right to privacy from physical invasions of the body amounting
to cavity searches without a warrant actionable under 50 USC§1828, and

violates protection from unreasonable searches and seizures clause of the Fourth Amendment to the Constitution; Furthermore, constituting a deprivation of the fundamental right to freedom of thought illegally capturing all neurological functions via sophisticated surveillance equipment ingestible implanted in the Plaintiff's brain compromising privacy, bodily integrity, as well as, personal autonomy under the substantive due process clause of the Fourteenth Amendment to the US Constitution.

76

The US BRAIN Initiative Program, Neurological Initiative, and/or Human Genome Project participants, including but not limited to: IARPA, DARPA, NSA, and the USG, as well as, all private sector entities are liable for their subordinates acts, omissions, and conscious disregard of the excessive risk of serious harm to Plaintiffs' health and safety caused by non-consensual participation as a human neurotechnology research subject in the US Brain Initiative Program, Neurological Initiative, and/or Human Genome Project. Defendant's misuse of ingestible implantable devices lead to white supremacists using the technology directly and/or indirectly given to them by the USG to commit fraud, identity theft, and forgery, as well as remotely monitoring Mr. Hutchison's neural activity, that represents a substantial permanent intrusion upon Mr. Hutchison's mind and body searching and capturing all bio-metric identifiers without permission disregarding laws, ethical protocols, and procedures recommended by the Bioethics Commission for four distinct implications: 1-Integrate ethics early and explicitly throughout research. 2-Evaluate existing and innovative approaches to ethics integration. 3-Integrate ethics and science through education at all levels. 4-Explicitly include ethical perspectives on advisory and review bodies. As well as, violates personal protections stated in the Washington State Biometric Privacy Act of (2017), RCW 19.375.020; Plaintiff Mr. Hutchison, who had not been adjudicated guilty of any crime in accordance with due process of law and therefore were not subject to punishment were subjected to harms, through the intrusive ingestible neurotechnology bio-metric data breach and/or dissemination, directly and/or indirectly allowing

unknown third-party individuals to gain access to the Mr. Hutchison's Biometric Identifier data, via cyber security breach, and/or pre authorization thru coordinated efforts of a security clearance issued, that indirectly amounted to punishment by the government also constitutes gross misconduct and is the direct and/or proximate cause for all Plaintiffs damages.

77

NSA's unreasonable search of ingestible implantable neurotechnology devices, "brain-jacking", during the non-consensual human biomedical neurological research conducted under the US BRAIN Initiative Program, Neurological Initiative, and/or Human Genome Project was imposed out intelligence gathering, racially motivated oppression, and medical curiosity, without regard for the impact on its human subjects. Non-consensual participation in the US BRAIN Initiative Program, Neurological Initiative, and/or Humane Genome Project deprived Plaintiffs of their enumerated right to Privacy, Bodily Integrity, and Personal Autonomy under the substantive due process clause of the Fifth Amendment to the US Constitution.

78

All Defendants are liable for their acts and/or omissions as the indirect and proximate cause for all harms done to Plaintiffs, who have been subjected to severe physical and psychological pain and suffering, have incurred expenses, and suffered actual economic damages. These injuries have caused and will continue to cause Plaintiffs great physical and mental pain and suffering unless stopped by this court. Plaintiffs request injunctive relief against illegal interception of Biometric Identifier data under California Civil Code 52.7; and/or 18 USC §2521(2)(A)(i-iii). As well as, monetary and other appropriate equitable relief for damages suffered under subsection(2)(A); for future medical expenses, reasonable attorney's fees and other ligation costs, thereby justifying the awarding of punitive and exemplary damages against all Defendants. Plaintiffs have suffered other economic and non-economic damages as severe physical and psychological pain and suffering, and thereby entitled to injunction, monetary compensation, and all other forms of relief deemed just and proper by the court.

45

FOURTH CLAIM FOR RELIEF

(Violation of Equal Protections- Fourteenth Amendment, Malicious Abuse
of Power, 42 USC§1981; Violation of Substantive Due Process- Fourteenth
Amendment, 42 USC§1983; Violation of Substantive Due Process- Fifth
Amendment, Gross Misconduct, IIED, 42 USC§1985(3); Violations of
Electronic Communications Privacy Act of (1986), Gross Negligence 42
USC§1986)

79

Plaintiffs incorporate by reference each and every allegation contained
within the preceding paragraphs as if set forth fully herein against
all Defendants. At all times pertinent to the allegations herein,
subordinates of NSA acts and omissions were conducted and/or performed
under color of law of the United States. Although subordinates of Live
Well Counseling and Honeywell Electronics are private persons, and not
state officials, I instruct you that the relationship between Live Well
Counseling and Honeywell Electronics and the state is sufficiently
close that they were acting under color of state law. In other words,
this element of Mr. Hutchison's claim is not in dispute, and you must
find that this element has been established.

80

The NSA's domestic intelligence network and cover businesses, including
but not limited to, Live Well Counseling, Honeywell Electronics, and
Virtual Technologies LTD., as well as other private persons and
subordinates to other private sector entities under the US BRAIN
Initiative Program, Neurological Initiative, and/or Human Genome
Project. All Defendants were aware of the contractual agreement of
employment between Mr. Hutchison and Honeywell Electronics via remote
access to the Brain Computer Interface. The United States Government
and all other Defendants are liable for subordinates' intentional
disregard of the excessive risk of serious harm to Plaintiffs' health
and safety.

81

The Hutchisons bring this claim against all Defendants and at all times
pertinent to the allegations herein, were acting under color of law of

the United States. All Defendants' acts described herein constitute cruel, despicable, inhumane, racially motivated discriminatory mistreatment of Mr. Hutchison and family's brains and bodies in violation of equal protections actionable under the Fourteenth Amendment to the US Constitution, and in violation of personal protections to electronic privacy actionable under 50 USC §1810; racially motivated failure to equally protect actionable under 42 USC §1983; violations of the Electronic Communications Privacy Act of (1986); for conspiratorial collusion deprivation with intent to defraud using technology, actionable under 42 USC§1985(3); negligent failure to infer with the racially motivated conspiracy, actionable under 42 USC §1986 and, due to scientific facts related to ingestible implantable nanotransmitters capable of transferring a low level frequency signal via Signals Intelligence to and fro BC/I, violates Washington States Biometric Privacy Act (2017); as well as, domestic judicial decisions, and other substantive and procedural due process violations actionable under the Fifth Amendment to the United States Constitution.

82

United States Government is liable for subordinates intentional collusion with third-party white supremacists' employees at Honeywell Electronics, Live Well Counseling, W.A.S.P.C., Spokane Sheriff's Department, Spokane Police Department, and other unknown conspirators who were directly and/or indirectly acting under color of law and authority, by using top secret technologies not readily accessible to the public, and only accessible by individuals with permission in contract and/or top secret security clearances under 50 USC §3441, authorized only by the United States Government, heads of agencies, senior officials, and/or high rank employees, constituting a malicious abuse of power, gross misconduct, intentional and/or gross negligence with foreseeability constituting a duty to prevent, but neglected to act upon racially motivated conspiratorial intent to defraud plot/scheme against Mr. Hutchison, actionable under 42 USC§1986 for all damages.

83

**47**

Unknown federal agents of agencies, officials, and/or employees
intentionally, set the conditions for, committed, directed, ordered,
confirmed, ratified, acquiesced, had command responsibility for, aided
and abetted, conspired to, and/or otherwise directly or indirectly
caused or facilitated the intelligence gathering under Executive Order
12333 and the United States BRAIN Initiative Program, Neurological
Initiative, and/or Human Genome Project on Plaintiffs, without
Plaintiffs' consent, constituting an intentional Malicious Abuse of
Power, 42 USC §1981; as well as, race based failure to equally protect
Plaintiffs in violation of the Equal Protection Clause of the
Fourteenth Amendment to the US Constitution.

84

Unknown federal agents, officers, and/or officials of federal agencies
DARPA, IARPA, FBI, NSA, DIA, and other subordinates of the USG,
intended or knew and/or should have known, the W.A.S.P.C., Spokane PD,
and other federal law enforcement agencies intended, knew or should
have known that white supremacist subordinate employees of Honeywell
Electronics, Digital Pirates, and others are committing "Brainjacking"
directly and/or indirectly conducting non-consensual unethical
ingestible neurotechnology bio-metric medical experiments under the US
BRAIN Initiative Program, Neurological Initiative, and/or Human Genome
Project, as well as constitutes neglect to secure and/or add sufficient
security measures and/or cyber security features to the ingestible
implantable neurotechnology microchips/devices, as well as the misuse
of a top secret DARPA Brain Computer Interface to monitor bio-metric
identifiers of Plaintiff's brain and body, constituting Gross
Misconduct Equal Protections Violations, actionable under 42 USC §1983;
as well as, in violation of inalienable rights to privacy, personal
autonomy, and bodily integrity under the substantive due process clause
of the Fifth Amendment to the US Constitution.

85

All federal level Primary Defendants are proximate liable for failure
to infer with the racially motivated conspiratorial collusion
deprivation with intent to defraud, "swindle", Mr. Hutchison. And,
failed to act upon the FOIA request sent via May 14th, 2019 with a case

number 107016, a cease and desist letter, titled "Official Complaint",
by certified mail on May, 24th 2019 to the Department of Homeland
Security Office of Civil Rights and Civil Liberties, the US. Department
of Justice Inspector General, and the US. Attorney's Office., mailed on
April 1st, 2020 to the US. Dept. of Justice Civil Rights Division all
sent via certified mail, other requests and complaints were also filed.
Stating claims of race based conspiratorial collusion, fraudulent
misrepresentations, and factual allegations of R.C.H.II being sexually
assaulted while being remotely monitored by white supremacists using
technologies under the US BRAIN Initiative Program, Neurological
Initiative, and/or Human Genome Project; including but not limited to:
unethical neural nanotechnology biomedical human experiments that
caused physical harms to Mr. Hutchison's nine year old son R.C.H.II,
while he attended University Elementary School located in Spokane
Valley, WA during the Fourth Grade year, constitutional violations,
FISA Act violations, Human Rights Violations, requests for emergency
injunction from in vivo ingestible implantable neurotechnology embedded
in Mr. Hutchison's brain as a non-consensual neurotechnology human
research subject, being psychologically tortured, extremely unusually
high amounts of "cyberstalking" from a hacker group called "Crackers"
and/or "Digital Pirates" and/or unknown affiliates, and for being the
individual who is the subject of a federal investigation leading into
the counter terrorism unit of the FBI drafting the Black Identity
Extremist Intelligence Assessment (2017), as well as, being listed as a
terrorist under the Terrorism Surveillance Program, amounting to a
racially motivated failure to equally protect the Hutchison family,
especially R.C.H.II who was only nine years old at the time, evil
private persons of KKK Grand Dragon Salkin and Kleeper Mostrom with
non-consensual access to a child's bio-metric identifier data via
neural technology and a DARPA BC/I used the technology to monitor,
track, and sexually assault R.C.H.II at school while he was in the
Fourth Grade, stated on page 13 paragraph 16 constitutes Gross
Negligence, actionable under 42 USC §1985(3) and is a violation of
privacy, bodily integrity, and personal autonomy under the substantive
due process clause of the Fifth Amendment to the US Constitution.

86

Plaintiffs are informed, witnessed, and/or reasonable allege all
Defendants failed to equally protect R.C.H.II, from harms directly
and/or indirectly caused by non-consensual participation as a child in
the US Brain Initiative Program, Neurological Initiative, and/or Human
Genome Project thru collusion between white supremacists and government
agencies or private sector participants to obtain; including but not
limited to: security clearances, access to NSA Intelligence DARPA's
remote neural monitoring BC/I, and sophisticated surveillance equipment
to directly have access to the Hutchison children's real-time personal
and private life via electro-physical searches constituting a cavity
search to, including but not limited to: capture Biometric Identifiers,
track real-time location, record thought, speech, sight, and auditory
functions. In the non-consensual medical experiment US BRAIN Initiative
Program, Neurological Initiative, and/or Human Genome Project directly
and/or indirectly conducted by Defendants with or without security
clearances to access the DARPA Brain to Computer Interface.

87

All Defendants gross misconduct, constitutes foreseeable neglect to
infer with a racially motivated conspiracy deprivation intent to
defraud, using technologies only accessible through authorization under
Executive Order 13284 (January 23, 2003) section 19 to section 20
"Senior Official of the Intelligence Community" make determinations on
who has access to compartmentalized information, and security clearance
under 50 USC §3441 and is permissible under E.O.12968, 60 FR 40245
(August 2, 1995); relating to access to classified information, or any
successor thereto, and Executive Order 10865 25 Fed. Reg. 1583
(February 20, 1960); relating to safeguarding classified information
with industry), or any successor thereto; and (B) possesses a need to
know under such an Order, and/or by the US BRAIN Initiative Program,
Neurological Initiative, and/or Human Genome Project announced by the
Presidents' [OSTP] Office of Science and Technology Policy under the
Obama administration, on April 2, 2013.

88

Mr. Hutchison is informed and reasonable alleges conspiratorial collusion between Third-Party white supremacists and government agencies to gain access to ingestible implantable neurotechnology, and DARPA Brain to Computer Interfaces, Mr. Hutchison makes relevant arguments that only government employees, civilians, and/or the private sector, as well as, other applicants who filed Standard Form 86, and upon approval obtained and retained a security clearance and any individual directly involved with white supremacy is automatically barred from obtaining a top secret security clearance. So how did they get access to "Neuroweaponry"? Mr. Hutchison further alleges third-party white supremacists gained access to ingestible neurotechnology through private sector participants in the US BRAIN Initiative Program, Neurological Initiative, and/or Human Genome Project from Nano Manufacturing Facilities and/or Universities engaged in research studies and/or building the ingestible implantable micro-robotic devices under government grants, and/or private sector entities authorized to conduct ethical human experiments. Vicariously placing the burden of liability on the United States Government, under the "Respondent Superior" doctrine for negligent and/or intentional and/or under duress, acts and omissions of participants, subordinates, and affiliates, as well as liability for the failure to intervene and/or infer and/or halt the intentional acts of subordinates, as well as, third-party white supremacists racially motivated conspiratorial collusion intent to defraud acts, by accessing the Hutchison families private and personal bio-metric identifier data, and is the proximate cause for all of The Hutchison's damages.

89

All Defendants failed to prevent such abuse or punish those responsible and are liable for all damages, actionable under 42 USC §1986 for neglect to infer with a §1985(3) racially motivated conspiratorial collusion intent to defraud and/or, "swindle", Mr. Hutchison out of the entire contents of a Cayman National Bank checking account with a total lifetime value of $69,178,753,430,598,000 and 00/100cents. The Hutchison's have had to live with the debilitating and destructive ingestible implantable neural nanotechnology devices, as a result of

unethical non-consensual participation as a research subject in the US
BRAIN Initiative Program, Neurological Initiative, and/or Human Genome
Project experiments, as well as a violation of life and liberty
interests to live their lives free of such physically intrusive DARPA
NESD Program (N$^3$) Next-Generation Neurotechnology connected to an
Intelligent Neural Interface and/or BC/I that is the proximate cause
for outrageously severe mental anguish, as well as, other non-economic
damages suffered by Mr. Hutchison.

90

State and local level Primary Defendants aforementioned acts of
negligence and neglect to infer under 42 USC §1986 with the 42 USC
§1985(3) racially motivated conspiratorial collusion intent to defraud
claim; including but not limited to: private persons, companies,
corporations, contractors, universities, nano-manufacturing facilities,
and government agencies; the state of Washington, Washington State
Patrol, W.A.S.P.C., city of Spokane, city of Spokane Valley, Spokane
Police Department, Spokane Sheriffs Department, Honeywell Electronics,
Virtual Technologies, LTD., and other unknown third party private
persons, as well as, cyber gangs and/or cyberstalkers and/or black hat
hacker groups, code-cracking, "Crackers" and/or "Digital Pirates" as
Third Party Defendants. Pursuant to FRCP Rule 9(b) alleging fraud any
Defendants directly and/or indirectly involved in the conspiracy to
commit fraud is subject to evaluation of their Mens Rea and/or state of
mind; Therefore, Defendants who share a white supremacist ideology with
prior knowledge of the racially motivated conspiratorial collusion
intent to defraud plot/scheme against the Plaintiffs are liable for all
damages.

91

Mr. Hutchison is informed and reasonable alleges, unknown federal
agents of federal agencies aided, abetted, and/or supplied, white
supremacists third-party defendants with ingestible implantable
neurotechnology and/or radio frequency bio-metric identifier electronic
microchip devices used on Mr. Hutchison and other family members.
Unknown federal agents of federal agencies, acts of collusion, and/or
inaction, and/or failure to equally protect and/or failure to infer

with the conspiratorial collusion intent to defraud plot, both indirectly and/or directly contributed to, "cyber stalking" by cyber gangs and/or cyberstalkers and/or black hat hacker groups, code named "Crackers" and/or "Digital Pirates" as third-party Defendants with a shared white supremacists ideology, and prior knowledge of the racist conspiracy intent to defraud plot, but failed to equally protect, prevent, interfere, and/or interrupt, the conspiratorial collusion with prior knowledge of collusion under the (2006) FBI intelligence Assessment White Supremacist Infiltration of Law Enforcement and the (2009) (U//FOUO) Rightwing Extremism: Current Economic and Political Climate Fueling Resurgence in Radicalization and Recruitment, constituting Gross Negligence to interfere actionable under 42 USC§1986, as well as the proximate cause for violations of inalienable rights to privacy, bodily integrity, and personal autonomy under the substantive due process clause of the Fifth Amendment to the US Constitution.

92

All Defendants, who neglected to infer with the racially motivated conspiracy deprivation intent to defraud, as well as, all unidentified private persons authorized and/or given permission to access The Hutchison's bio-medical information, as "bio-metric identifiers" data, are liable under 42 USC§1986 for failure to infer with the non-consensual capturing of Biometric Identifiers actionable under RCW 19.375; information transmitted to the Brain to Computer Interface software via nanotransmitters hardware in nanotechnology devices used against the Hutchison family, for nefarious purposes to, include but not limited to: intimidate, torment, harass, embarrass, corrupt the mind, and control the physical body, under what is known as, extreme targeting via "gang stalking" codified at RCW 9.61.260 and illegally capturing bio-metric identifiers data in violation of RCW 19.375.020, all Defendants are proximate liable for all of Plaintiffs damages.

93

The Hutchison's have not been adjudicated guilty of any crimes in accordance with due process of law and therefore were not subject to punishments, were subjected to harm through unethical non-consensual

neurotechnology medical experiments under the US BRAIN Initiative Program, Neurological Initiative, and/or Human Genome Project that amounted to punishment by the United States Government. Plaintiff's mistreatment during the unethical non-consensual neurotechnology medical experiment was imposed out of intelligence gathering purposes, racially motivated conspiracy, and/or medical curiosity, without regard for the impact on its human subjects. NSA, DARPA, FBI, DIA, DHS, and the USG are liable for subordinates unethical misconduct during the non-consensual neurotechnology medical research on Plaintiffs under the BRAIN Initiative Program, Neurological Initiative, and/or Human Genome Project, constituting intentional infliction of emotional distress, as well as, depriving Plaintiffs of their alienable and inalienable rights as human beings and their life and liberty interests in direct violation of their substantive and procedural due process rights under the Fifth Amendment to the US Constitution.

94

Mr. Hutchison is informed and reasonable believes and thereon alleges that all Defendants and subordinate's acts and/or omissions were intentional, willful, malicious, oppressive, and despicable, and/or were done in willful and conscious disregard of the rights, welfare, and safety of Plaintiffs, as the proximate cause for Plaintiffs being subjected to, including but not limited to: severe physical, and psychological pain and suffering, as well as incurred expenses, and actual economic damages, and other damages.

95

Plaintiff requests injunctive relief against illegal interception of Biometric Identifier data under California Civil Code 52.7; and/or 18 USC §2521(2)(A)(i-iii); As well as, monetary and other appropriate equitable relief for damages suffered under subsection(2)(A), medical expenses, reasonable attorney's fees and other ligation costs, thereby justifying the awarding of punitive and exemplary damages against all Defendants. Plaintiffs have suffered other economic and non-economic damages as severe physical and psychological pain and suffering, and thereby entitled to injunction, monetary compensation, and all other forms of relief deemed just and proper by the court.

FIFTH CLAIM FOR RELIEF

(Violations of the National Research Act (1974), Sections 24170-
24179.5, 42 USC §1983; Violations of Equal Protection Clause:
Fourteenth Amendment, Gross Misconduct; Violation of Due Process: Fifth
Amendment, Racially Motivated Conspiratorial- Deprivation, 42 USC
§1985(3); Washington State Biometric Privacy Act (2017), RCW 19.375;
Civil Code 52.7; Gross Negligence, 42 USC §1986)


96

Plaintiffs incorporate by reference each and every allegation contained
in the preceding paragraphs as if set forth fully herein. Plaintiffs
bring this claim against all Defendants. At all times pertinent to the
allegations herein, NSA subordinates acts and/or omissions were
conducted and/or performed under color of law of the United States.
Although subordinates of Live Well Counseling, Virtual Technologies,
and Honeywell Electronics are private persons, and not state officials,
I instruct you that the relationship between Live Well Counseling and
Honeywell Electronics and the State of Washington is sufficiently close
that they were acting under color of law. In other words, this element
of Mr. Hutchison's claim is not in dispute, and you must find that this
element has been established.

97

The NSA's domestic intelligence network and cover businesses, including
but not limited to, Live Well Counseling, Honeywell Electronics, and
Virtual Technologies LTD., as well as, all subordinates to other
private sector entity participants in the US BRAIN Initiative Program,
and/or neurological technology research and developing products are
liable under the "Respondent Superior" doctrine. All Defendants were
aware of the contractual agreement of employment between Mr. Hutchison
and Honeywell Electronics. The United States Government and third-party
Defendants are liable for subordinates' intentional disregard of the
excessive risk of serious harm to Plaintiffs' health and safety as non-
consensual research subjects.

98

**55**

FBI, NSA, DIA, DHS, 18,000 law enforcement agencies, and the USG had foreseeability to racially motivated conspiratorial collusion, but failed to equally protect and/or prevent and/or interfere, and/or interrupt, the conspiratorial acts with prior knowledge of collusion under the (2006) FBI intelligence Assessment White Supremacist Infiltration of Law Enforcement and the 2009 (U//FOUO) Rightwing Extremism: Current Economic and Political Climate Fueling Resurgence in Radicalization and Recruitment constitutes foreseeability and is actionable under 42 USC §1986, as well as, the proximate cause for violations of inalienable rights to privacy, bodily integrity, and personal autonomy under the substantive due process clause of the Fifth Amendment to the US Constitution.

99

W.A.S.P.C., City of Spokane, Live Well Counseling, Honeywell Electronics, and other unknown private persons acts described herein constitute a deprivation of inalienable life and liberty interest to rights of privacy, bodily integrity, and personal autonomy under the Due Process Clause, as well as, the Equal Protection Clause of the Fourteenth Amendment to the US Constitution.

100

Mr. Hutchison and other family members, who had not been adjudicated guilty of any crime in accordance with due process of law and therefore were not subject to punishment, were subjected to harm, through the non-consensual implantation of ingestible neurotechnology unlawfully capturing all Plaintiffs Biometric Identifiers, in violation of The Declaration on the Protection of All Persons From Being Subjected to Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 3452, 30 U.N. Doc., GAOR Supp. (No.34) at 91, U.N. Doc. A/10034 (1976); and racially-motivated acts, as well as failure to equally protect the Hutchison's from torture, actionable under 42 USC §1983, in violation of the cruel and unusual punishment clause of the Eighth Amendment to the US Constitution.

101

The White House Office of Science and Technology Policy Executive Office of the President made agreements, associations, subcommittees

for research studies under the US BRAIN Initiative Program,
Neurological Initiative, and/or Human Genome Project, and by other
means, committed acts, under color of law to conduct human test trails
without consent from the Hutchison's. All Defendants' intentional acts
are a proximate and/or indirect cause for Plaintiffs damages, as a
direct result of the in-vivo ingestible implanted neurotechnology
biomedical devices embedded within the Hutchison's' brains and bodies.

102

Defendants conducted non-consensual medical experiments on the
Hutchison minor children R.C.H.II, A.P.H., J.E.H., without the implied
and/or express written parental consent of Mrs. and/or Mr. Hutchison,
directly violating the mandatory consent to obtain all data belonging
to a minor under the age of 13 years old. A strict requirement under
the COPPA- Childrens Online Privacy Protection Act of (1998) which
requires developers and website owners to obtain parents actual
knowledge and consent before they can collect personal information
online from a child under 13 years of age. Due to scientific facts of
the ingestible implantable neural technology and a Brian to Computer
Interface capable of remotely monitoring the children and directly
accessing, via WIFI, captured personal and private bio-metric
identifiers data belonging to the Hutchison children, and constitutes a
willful disregard of parental consent to capture and collect the
Hutchison children's personal privacy data. Is a violation of the
willful consent to participate in any and/or all state and/or federal
subcutaneous subcellular low-level-frequency identification device
actionable under California Civil Code 52.7;

103

All Defendants and DARPA did not obtain mandatory consent from all
Plaintiffs by signature on any consent forms, as a necessary step in
the process of consent under the Protection of Human Subjects in
Medical Experimentation Act "Common Rule" (Sections 24170-24179.5):
Describes the informed consent process and requires that "experimental
subject's bill of rights" be provided to all research subjects in
medical experiments.

104

**57**

The USG's subordinates gross misconduct derives from including but not
limited to: failure to follow procedures, policies, establish IRB
approved ethical neurotechnology medical experiments during the US
BRAIN Initiative Program. The Declaration on the Protection of All
Persons from Being Subjected to Torture and Other Cruel, Inhumane, or
Degrading Treatment or Punishment, General Assembly Resolution 3452 (9
December 1975); Article 5- The training of law enforcement personnel
and other public officials; Under Article 8- aggrieved persons shall
have rights to bring a claim and/or complaint to be impartially
examined by appropriate authorities of the state, constitutes a duty to
impartially examine and/or investigate unethical human medical
experiment violations of including but not limited to: 45 CFR 46(a)(1-
2); §46.101; §46.102; and §46.107 through §46.117 of this policy, by an
institutional review board (IRB) that operates in accordance with the
pertinent requirements of this policy. Subpart A- Basic HHS Policy for
Protection of Human Research Subjects §46.101-§46.124 Subpart B-
§46.201 thru §46.207 Additional Protections for Pregnant Women, Human
Fetuses and Neonates Involved in Research; Subpart D- §46.401 thru
§46.409 Additional Protections for Children Involved as Subjects in
Research; as well as, constitutes a deprivation of privacy, personal
autonomy, and bodily integrity under the substantive due process clause
of the Fifth Amendment to the United States Constitution.

105

USG failed the duty to impartially examine and/or investigate claims of
unethical human experiments using ingestible DARPA NESD Program ($N^3$)
Neurotechnology research and development by using neurotechnology to
capture Biometric Identifiers data, on all Plaintiffs as non-consenting
participants in human test trials, and failing to establish an IRB, but
instead Defendants conducted unethical experiments, using invasive
ingestible implantable sophisticated surveillance equipment, used as
remote monitoring and tracking devices and/or forms of sophisticated
surveillance equipment, and other technology used without Plaintiffs
acknowledgment by consent directly and indirectly causing serious harms
to Plaintiffs constituting Gross Misconduct, actionable under 42 USC
§1986.

106

Plaintiffs are informed and reasonable believe Defendants' acts and/or omissions of failure to impartially investigate unethical medical experiments, were intentionally racially motivated and are the proximate and/or indirect cause of, including but not limited to: All of Plaintiffs damages, severe pain & suffering, and deprivations of inalienable fundamental rights to "freedom of thought", protections to freedom of expression, speech, religious practices, as well as, life and liberty interests to privacy, personal autonomy, and bodily integrity under the Substantive Due Process Clause of the Fifth Amendment to the US Constitution, actionable under 42 USC §1985(3).

107

Plaintiffs allege Honeywell Electronics, Live Well Counseling, and others subordinates used the neurotechnology sophisticated surveillance equipment for private person racially motivated investigations and/or collection of Plaintiff's personal and private information for unlawful purposes, as an abuse of power, as well as a violation of the right to be free from intrusions upon seclusion under the Washington State Biometric Privacy Act (2017), RCW 19.375.20. The ingestible neural nanotechnology implant is based on scientific facts of sophisticated microbiological and micro-robotic electro-magnetic-mechanical engineering boffinry, and Plaintiffs allege in vivo implantation inside brain tissue, is causing irreparable damages to all Plaintiffs brain.

108

USG subordinates acting in both their individual and official capacity, as well as, private persons acting under color of law directly and/or indirectly caused Plaintiffs' mistreatment during the racially-motivated unethical non-consensual ingestible neurotechnology, under the US BRAIN Initiative Program and/or DARPA NESD ($N^3$) Neurotechnology bio-metric research experiments imposed out of, including but not limited to: intelligence gathering, satellite based monitoring, unethical human experimentation, racially motivated conspiratorial intent to defraud, further the understanding of mammalian neural function, and/or medical curiosity, without regard for the impact on Plaintiff's lives as a human research subjects. The unethical medical

experiment deprived Plaintiffs of their alienable and inalienable rights as human beings, and life and liberty interests to privacy, bodily integrity, and personal autonomy in violation of substantive and procedural due process clause under the Fifth Amendment to the United States Constitution.

<div align="center">109</div>

All Defendants' acts and omissions are the indirect and/or proximate cause for Plaintiffs non-consensual participation in human research and subjected to severe physical and psychological pain and suffering, have incurred expenses, and suffered actual economic damages. These injuries have caused and will continue to cause Plaintiffs great physical and mental pain and suffering without an injunction. Plaintiffs have suffered severe physical and psychological pain and suffering, justifying entitlement to injunctive relief and monetary compensation for actual economic damages suffered, by the Hutchison's', as well as, any other relief deemed just and proper by the court.

<div align="center">SIXTH CLAIM FOR RELIEF</div>

(Violations of Equal Protection Clause, Due Process Clause: Fourteenth Amendment; Unreasonable Search and Seizure: Fourth Amendment; Malicious Abuse of Power, 42 USC §1983; Gross Misconduct, Racially Motivated Conspiracy, 42 USC §1985(3); Washington State Biometric Privacy Act (2017), RCW 19.375; California Civil Code 52.7, 50 USC §1810 & §1828; Neglect to Infer, 42 USC §1986; Federal Question)

<div align="center">110</div>

Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein. Plaintiffs bring this claim against all Defendants. At all times pertinent to the allegations herein, all subordinates of the USG acts and omissions were conducted and/or performed under color of law of the United States. Although subordinates of Live Well Counseling and Honeywell Electronics are private persons, and not government officials, I instruct you that the relationship between Live Well Counseling and Honeywell Electronics and the USG is sufficiently close that they were acting under color of

<div align="center">**60**</div>

law. In other words, this element of Mr. Hutchison's claim is not in dispute, and you must find that this element has been established.

111

The NSA's domestic intelligence network and cover businesses, including but not limited to, Live Well Counseling, Honeywell Electronics, and Virtual Technologies LTD., as well as, all subordinates to other private sector entity participants in the US BRAIN Initiative Program, and/or DARPA NESD Program ($N^3$) Neurotechnology, Intelligent Neural Interface, are liable under the "Respondent Superior" doctrine. All Defendants were aware of the contractual agreement of employment between Mr. Hutchison and Honeywell Electronics. The USG and all other Defendants are liable for subordinates' intentional disregard of the excessive risk of serious harm to Plaintiffs' health and safety as non-consensual research subjects, are based on scientific facts, actionable under 50 USC §1810, for electronic searches of ingestible neurotechnology devices illegally implanted in the physical brain and body, constituting a physical search actionable under 50 USC §1828.

112

FBI, NSA, DIA, DHS, 18,000 law enforcement agencies, and the USG had foreseeability to racially motivated conspiratorial collusion, but failed to equally protect and/or prevent and/or interfere, and/or interrupt, the conspiratorial acts with prior knowledge of collusion under the (2006) FBI intelligence Assessment White Supremacist Infiltration of Law Enforcement and the 2009 (U//FOUO) Rightwing Extremism: Current Economic and Political Climate Fueling Resurgence in Radicalization and Recruitment constitutes foreseeability actionable under 42 USC§1986; and is the proximate cause for violations of inalienable rights to privacy, bodily integrity, and personal autonomy under the substantive due process clause of the Fifth Amendment to the United States Constitution.

113

Pursuant to 28 USC §1331 to answer a federal question on the constitutionality of a state research program conducted, by W.A.S.P.C. that was authorized by Washington State Legislature under HOUSE BILL 1142 (2009-10)- Calling for a study using radio frequency

identification or other similar technology to electronically monitor
felonious offenders; but there is no law allowing such research to be
conducted by state authorization, instead there are laws under RCW
19.375 to protect individuals Biometric Identifiers from illegally
capturing, furthermore W.A.S.P.C. is able to lawfully obtain bio-metric
identifiers with a warrant under RCW 19.375.040(3)-exclusions. But
there was no warrant issued and/or no prior notice given to Plaintiffs
requesting consent for implantation and/or participation in (N³) neuro-
tech BRAIN Initiative Program research, constituting Gross Misconduct.
Instead all Defendants use of neurotechnology as a satellite based
monitoring device to surveil the Hutchison's physical bodies,
constitutes an abuse of power, and is actionable under 42 USC §1983.
Plaintiff alleges private persons have obtained access to DARPA NESD
Program (N³) Neuro-tech & INI; And, with foreseeability of the BRAIN
Initiative Program research, and no effort to correct the unlawful
conduct of Mr. Hutchison's May 2019 complaint and other complaints
filed with federal agencies requesting removal of ingestible
neurotechnology, as well as neglecting to investigate a complaint filed
with the Washington State Department of Health alleging 42 USC §1985(3)
conspiratorial fraud is actionable under 42 USC §1986.

114

Explained by Definitions set forth in RCW 19.375.010, all Defendants
continue to have access to DARPA's NESD Program (N³) ingestible nano-
electronic chip, and Intelligent Neural Interface as a "bio-metric
system" to "capture" the Hutchison's' personal biomedical data. But,
their acts in obtaining the "bio-metric identifiers" were unlawful, in
violation of RCW 19.375.020 by not obtaining consent from Mr. Hutchison
and family to obtain his personal and private, "bio-metric identifiers"
data; as well as, unconstitutional by not obtaining a warrant for
searches and seizures of the Plaintiffs bodies, constituting a cavity
search in violation of the search and seizure clause of the Fourth
Amendment to the United States Constitution.

115

Plaintiffs are informed and believe and thereon allege that Defendants'
aforementioned racially-motivated acts were intentional, willful,

malicious, oppressive, and despicable, and/or were done in willful and conscious disregard of the rights, welfare, and safety of Mr. Hutchison and family who are Black/African Americans and members of a protected classes of United States citizens, thereby justifying the awarding of punitive and exemplary damages against the state of Washington, W.A.S.P.C., city of Spokane, Spokane Police Department, and Spokane County Sheriff's Department, as well as, all unknown third-party participants who aided and abetted white supremacists employees of Live Well Counseling and Honeywell Electronics.

116

All Defendants acting in both their individual and official capacity, as well as, private persons acting under color of law directly and/or indirectly caused Plaintiffs' mistreatment during the racially-motivated unethical non-consensual in vivo ingestible neurotechnology, BRAIN Initiative Program, for integrated bio-metric medical experiments imposed out of, including but not limited to: intelligence gathering, satellite based monitoring of suspects, subcutaneous subcellular implanting of neurotechnology, unethical human experimentation, racially motivated conspiratorial intent to defraud, further the understanding of mammalian neural function, and/or medical curiosity, without regard for the impact on Plaintiff's lives as non-consensual human research subjects. The unethical medical experiment deprived Plaintiffs of their alienable and inalienable rights as human beings to life and liberty interests to privacy, bodily integrity, and personal autonomy in violation of substantive and procedural due process under the Fourteenth Amendment to the United States Constitution.

117

All Defendants racially motivated intentional, unlawful, malicious, and discriminatory acts and/or omissions to conspire to defraud Mr. Hutchison, using neurotechnologies as sophisticated surveillance equipment, constituting a cavity search without a warrant violates the Reasonable Search and Seizure Clause of the Fourth Amendment to the US Constitution. As well as, a violation of the implied right to be protected equally under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

118

All Defendants' acts and/or omissions are the direct and/or proximate cause for Plaintiffs non-consensual participation in human neurotechnology research and directly subjected Plaintiffs to severe physical and psychological pain and suffering, have incurred expenses, and suffered actual economic damages. These injuries have caused and will continue to cause Plaintiffs great physical, mental pain and suffering without an injunction. Plaintiffs have suffered severe physical and psychological pain and suffering, justifying entitlement to injunctive relief and monetary compensation for actual economic damages suffered, by the Hutchison's', as well as, any other relief deemed just and proper by the court.


SIXTH CLAIM FOR RELIEF

(Violation of Unlawful Searches and Seizure- Fourth Amendment: 50 USC §1810-§1831; Electronic Communications Privacy Act (1986), 18 USC §2510-§3121; Violation of Due Process Clause: Fourteenth Amendment, Violation of the Computer Fraud and Abuse Act (1986) 18 U.S.C. §1030; Washington Cybercrime Act (2015) RCW §9A.90.010-§9A.90.110; Gross Negligence, RCW §9.61.260, 42 USC §1985(3))


119

Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein against all Defendants. At all times pertinent to the allegations herein, all subordinates of the USG acts and/or omissions were performed under color of law of the United States. Although subordinates of Live Well Counseling and Honeywell Electronics are private persons, and not state officials, I instruct you that the relationship between Live Well Counseling and Honeywell Electronics and the state of Washington is sufficiently close that they were acting under color of state law. In other words, this element of Mr. Hutchison's claim is not in dispute, and you must find that this element has been established.

120

The NSA's domestic intelligence network and cover businesses, including but not limited to, Live Well Counseling, Honeywell Electronics, and Virtual Technologies LTD., as well as, all subordinates to other private sector entities. All Defendants were aware of the contractual agreement of employment between Mr. Hutchison and Honeywell Electronics. Plaintiff is informed and has reason to believe third-party Defendants "digital pirates" are highly skilled black-hat hackers using such skill to compromise data, and commit several violations of the Electronic Communications Privacy Act of (1986).

121

Digital Pirates and other individuals as third-party actors described herein constitute a violation of the Electronic Communications Privacy Act (1986), 18 USC§2510-2523; Including but not limited to, known attempts at deprivation of enumerated rights to privacy and/or right to be free of unreasonable searches and seizures under the Fourth Amendment of the United States Constitution, actionable under 50 USC§1810 and §1828, as well as under 42 USC§1983 and §1985(3); Primary Defendants acts constitute an improper disclosure of the Plaintiffs private and personal data and/or information used beyond the extent permitted by section 2517 and is a violation of section 2520(a), actionable under 42 USC §1986; resulting in damages done to the Plaintiffs, thereby amounting to deprivation of alienable and inalienable rights to privacy, bodily integrity, and personal autonomy under the due process clause of the Fourteenth Amendment to the United States Constitution.

122

W.A.S.P.C., acts of collusion and/or inaction to infer with collusion, directly and/or indirectly contributed to "cyber stalking" acts committed by Digital Pirates as Third-Party Defendants. Allegations of collusion from the foreseeability of infiltration are attempts to recruit law enforcement, actionable under 42 USC§1986; Plaintiffs, who had not been adjudicated guilty of any crime in accordance with due process of law and therefore were not subject to punishment, were subjected to harms, through the intrusive technological cyber security breach that amounted to indirect punishment by the government.

**65**

123

FBI, NSA, DIA, DHS, 18,000 law enforcement agencies, and the USG had foreseeability to racially motivated conspiratorial collusion, but failed to equally protect and/or prevent and/or interfere, and/or interrupt, the conspiratorial acts with prior knowledge of collusion under the (2006) FBI intelligence Assessment White Supremacist Infiltration of Law Enforcement and the 2009 (U//FOUO) Rightwing Extremism: Current Economic and Political Climate Fueling Resurgence in Radicalization and Recruitment constitutes foreseeability and is the proximate cause of violations of inalienable rights to privacy, bodily integrity, and personal autonomy under the substantive due process clause of the Fifth Amendment to the United States Constitution.

124

Primary Defendants are vicariously liable for damages, derived from subordinates' racially motivated conspiratorial collusion with "Digital Pirates", as Third-Party Defendants, for acts of cyber intrusion, as black-hat hackers, and conspirators, involved in "code cracking." Plaintiffs further allege that IARPA, DARPA, NSA and/or other government agencies as participants in the BRAIN Initiative Program gave direct and/or indirect access to neurotechnology and BC/I to the "Digital Pirates". And, Mr. Hutchison's reasonable believes his personal and private life is displayed and accessed by an unknown number of third party Defendants via brain to computer interface, without Mr. Hutchison's authorized permission to gain access to, including but not limited to: EEG, MEG, EKG, fMRI, MES, DNN/HMM and other bio-metric identifier information and/or data in violation of the Biometric Privacy Act of (2017), actionable under RCW 19.375.020(4)(b)(ii); Using sophisticated surveillance equipment to electronically and physically search Mr. Hutchison brain and body via ingestible implantable neurotechnology, elector-magnetic radio frequency devices, as a subcutaneous radio frequency tracking device, to intentionally intimidate, torment, harass, embarrass, and corrupt the mind, by "reading and writing" on the implantable micro-robotic device, under what is known as "brain jacking" and is an illegal act in violation of

the Washington State law against, "cyber stalking", codified at RCW
9.61.260.

125

Primary Defendants are further liable for their conscious disregard of
the excessive risk of serious harm to Plaintiffs' health and safety.
Primary Defendants acts and omissions constitute constitutional
violations; including but not limited to: implied and/or actual rights
to be free from unreasonable intrusion upon seclusion, personal
autonomy, bodily integrity, and privacy protected by substantive
procedural and due process under the Fourteenth Amendment to the US
Constitution.

126

Plaintiffs, who had not been adjudicated guilty of any crime in
accordance with due process of law and therefore were not subject to
punishment, were subjected to harm, through the intrusive technological
cyber security breach that amounted to indirect punishment by the
government. Lee Salkin a Grand Dragon in the KKK of Wisconsin and
"Digital Pirates" acts of fraud by "swindling" comes with both civil
and criminal penalties under relevant parts of the Computer Fraud and
Abuse Act (CFAA) codified at 18 USC §1030- Fraud and related activity
in connection with computers. As well as, under relevant parts of Title
9A Chapter 9A.90 RCW the "Washington Cybercrime Act" §9A.90.010 –
§9A.90.110, Defendants hacked into Plaintiffs technological devices
without consent.

127

Defendants' unreasonable search of implantable technological devices,
"brain-jacking" actionable under 50 USC §1810 electronic searches and
seizures, conducted during the non-consensual human medical experiment
under the BRAIN Initiative by private persons subordinates of the
private sector, as well as government agents, officers, officials,
and/or employees of the United States Government, constituting
collusion, for research imposed out of racially motivated oppression,
medical curiosity, and neurological research without regard for the
impact on its human subjects. In violation of the Electronic
Communications Privacy Act (1986) 18 U.S.C. §2510-3121; acts of "brain-

jacking" constitute an improper disclosure of the Plaintiffs private
and personal data and/or information used beyond the extent permitted
by section 2517 and is a violation of section 2520(a) and are further
liable for their conscious disregard of the excessive risk of serious
harm to Plaintiffs' health and safety during the non-consensual bio-
metric medical experiments, actionable under 50 USC §1828-physical
searches and seizures directly deprived Plaintiffs of their enumerated
right to privacy under the Unreasonable Searches and Seizures Provision
of the Fourth Amendment of the United States Constitution.

<div align="center">128</div>

As a direct and proximate result of third-party Defendants' acts and
omissions, Plaintiffs have been subjected to severe physical and
psychological pain and suffering, have incurred expenses, and suffered
actual damages. These injuries have caused and will continue to cause
Plaintiffs great physical and mental pain and suffering.

<div align="center">129</div>

Plaintiff requests injunctive relief against illegal interception of
Biometric Identifier data under California Civil Code 52.7; and/or 18
USC §2521(2)(A)(i-iii). As well as, monetary and other appropriate
equitable relief for damages suffered under subsection (2)(A), medical
expenses, reasonable attorney's fees and other ligation costs, thereby
justifying the awarding of punitive and exemplary damages against all
Defendants. Plaintiffs have suffered other economic and non-economic
damages as severe physical and psychological pain and suffering, and
thereby entitled to injunction, monetary compensation, and all other
forms of relief deemed just and proper by the court.


<div align="center">SEVENTH CLAIM FOR RELIEF</div>

(Tortuous Inference with Contractual Economic Expectancy; Civil Rights
Act (1964), 42 USC §1985(3); Violation Freedom of Thought, Speech,
Religion, and Expression: First Amendment; Violation Equal Protection &
Substantive Due Process Clause: Fourteenth Amendment; Civil Rights Act
(1866) 42 U.S.C. §1981; Washington State Biometric Privacy Act (2017)
H.B. 1493, RCW 19.375(4)(b)(ii), Violation Re-enslavement Clause:
Thirteenth Amendment, 42 USC §1986)

<div align="center">**68**</div>

130

Plaintiffs incorporate by reference each and every allegation contained
in preceding paragraphs as if set forth fully herein against all
Defendants. All subordinates of the USG acts and omissions were
conducted and/or performed under color of law of the United States.
Although subordinates of Live Well Counseling and Honeywell Electronics
are private persons, and not state officials, I instruct you that the
relationship between Live Well Counseling and Honeywell Electronics and
the state is sufficiently close that they were acting under color of
state law. In other words, this element of Mr. Hutchison's claim is not
in dispute, and you must find that this element has been established.

131

Plaintiffs are informed and reasonable believe Honeywell LLC. alleged
use of implantable identifiable tracking electronic microchip devices
on Plaintiff Mr. Hutchison, has interfered with neurological functions
of the brain, to produce thought manipulation. Due to the scientific
specifics facts of bio-medical nanotechnologies ability to operate at
nanometer size, it is chemically reactive at that size, and interacts
with the physical body the way medicines would with possible side
effects causing damage to Plaintiffs brain leading to irreparable brain
damage. Subordinates of Honeywell Electronics have tortured Mr.
Hutchison using this technology, controlling his thoughts, programming
his mind during REM sleep, manipulate Mr. Hutchison's reproductive
organs while he is sleeping, and controlling his physical body,
controlling his speech and minds speech, as well as, releasing bodily
fluids without control and/or against his will. Mr. Hutchison has no
privacy and freedoms that he is entitled to by human rights laws,
federal laws, state laws, and under constitutionally personal
protections prohibiting infringement by private persons and
governments, constituting re-enslavement of Mr. Hutchison in the form
of neurotechnology slavery in violation of Article 2 and Article 6 of
The Slavery Convention of (1926), September 25, (1926), 60 L.N.T.S.
253, Amended on Dec. 7, 1953, 183 U.N.T.S. at 51 (1953); actionable
under 42 USC §1985(3).

132

Inter alia the freedom of expression & speech derives from the freedom of thought. Therefore technologies through which research and human experimentation is conducted by Intelligence Community Agencies, Federal Law Enforcement Agencies, State Law Enforcement Associations, and/or subsidiaries, using personal medical data from electroencephalography, functional magnetic resonance imaging, electrocardiography, visual cortex, and vital signs decoded and transmitted to brain computer interfaces, capable of intrusion of the mind is a constitutional violation of Plaintiffs' rights to freely think, directly putting the plaintiff's real time thoughts, memories, and ideas on digital display for all Defendants to access unlawfully via remotely, constituting a deprivation of procedural and substantive due process rights under the Fifth Amendment to the United States Constitution.

133

And, since the state of Washington has proposed legislation under HOUSE BILL 1142 (2009-10) allowing the Washington Association of Sheriffs and Police Chiefs to conduct research studies on implantable technologies used on criminals and recidivists. There is no such law in the State of Washington permitting an implantation of radio frequency devices and/or neural nanotechnology GPS tracking devices in the bodies of criminals and recidivists, or the Plaintiffs' bodies, constituting a state authorized human test trial in violation of 45 CFR 46 and other laws prohibiting non-consensual human experimentation. Plaintiff's §1983, §1985(3), and §1986 racially motivated failure to equally protect, racially motivated conspiratorial collusion, and failure to infer claims based common law tort of intrusion upon seclusion §652(b) second torts and is an intentional act of misconduct by conducting research and/or an investigation and/or surveillance of Plaintiff's life without a warrant obtained by a court of law, constituting an unreasonable search, violating the unreasonable search and seizure clause of the Fourth Amendment to the United States Constitution.

134

70

Plaintiff alleges Defendants conspiratorial collusion with white supremacist while acting under color of law is a vessel to follow through with racially motivated conspiratorial non-consensual and illegally implantation of technology devices within Plaintiff's body, as a form of torture using sophisticated surveillance equipment. Plaintiffs alleges Defendants intent is nefarious, racist, and for reasons to defraud, embarrass, intimidate, humiliate, torment, terrorize, and torture Mr. Hutchison and family. Plaintiff further alleges coconspirators have a shared ideology of white supremacy conspiratorial collusion. Defendants' acts and/or omission constitute a violation of equal protection clause, as well as, deprivation of inalienable rights to privacy, bodily integrity, and personal autonomy under Substantive Due Process Clause of Fourteenth Amendment of the United States Constitution.

135

The NSA's domestic intelligence network and cover businesses, including but not limited to, Live Well Counseling, Honeywell Electronics, and Virtual Technologies LTD., and other private sector entities are liable for subordinates discriminatory racially motivated and/or intentional disregard for constitutionally protected rights and/or gross negligent acts under, "Respondent Superior Doctrine", for acts and omission committed and/or performed in both their individual and official capacities as employees, described herein constitutes a deprivation of alienable and inalienable life and liberty interests and/or the fundamental right to Freedom of Thought as a precursor to the penumbra of constitutionally protected rights including but not limited to: Freedoms of Speech, Religion, and Expression under the First Amendment to the United States Constitution; rights to privacy, bodily, integrity, and personal autonomy under the substantive due process clause of the Fourteenth Amendment to the United States Constitution.

136

Honeywell Electronics a subsidiary of Honeywell, LLC., is liable for subordinates acts of racially motivated conspiracy to deprive Mr. Hutchison of alienable and inalienable rights to privacy, bodily integrity, and personal autonomy under the Fourteenth Amendment to the

**71**

US Constitution and is actionable under 42 USC §1986 for failure to interfere and/or neglect to infer with, 42 USC §1985(3), racially motivated conspiratorial collusion intent to defraud claim based on fraudulent misrepresentations made by subordinates employed by Honeywell, LLC. Due to scientific facts of ingestible neural nanotechnology connected to a DARPA BC/I capable of capturing bio-metric identifiers in real-time, and/or gaining access to Plaintiffs motorcortex, allowed Honeywell, LLC. to unlawfully obtain and disclose Plaintiffs "bio-metric identifiers" and/or all electrophysiological functions of the body and brain via MEG, EEG, and fMRI; for Remote Neural Monitoring functions and/or control the body and/or give commands to control, Mr. Hutchison during the course of employment with Honeywell Electronics, constitutes re-enslavement, thereby actionable under 42 USC §1985(3), and in violation of the Enslavement Clause of the Thirteenth Amendment to the United States Constitution; as well as, unlawful under the Washington State Biometric Privacy Act of (2017) H.B. 1493, codified at RCW 19.375; Gross misconduct by failure to comply with, including but not limited to: RCW 19.375.020(1) obtaining consent, RCW 19.375.020(2) giving proper notice to collect, RCW 19.375.020(3) unlawful disclosure, and is illegal under RCW 19.375.020(4)(b)(ii) Protection against or prevent actual or potential fraud, criminal activity, claims, security threats, and/or liability. As the direct and/or proximate cause, for tortuous inference with contractual economic expectancy; as well as all of Mr. Hutchison's other damages suffered.

137

At all times pertinent to the allegations herein, Primary Defendants were acting under color of federal law of the United States Government to deprive Plaintiffs of the freedom to think freely under the Freedom of Speech Provision of the First Amendment of the United States Constitution, via sophisticated surveillance equipment. And, all Defendants are further liable for their conscious disregard of the excessive risk of serious harm to Plaintiffs' health and safety.

138

FBI, NSA, DIA, DHS, 18,000 law enforcement agencies, and the USG had
foreseeability to racially motivated conspiratorial collusion, but
failed to equally protect and/or prevent and/or interfere, and/or
interrupt, the conspiratorial acts with prior knowledge of collusion
under the (2006) FBI intelligence Assessment White Supremacist
Infiltration of Law Enforcement and the 2009 (U//FOUO) Rightwing
Extremism: Current Economic and Political Climate Fueling Resurgence in
Radicalization and Recruitment constitutes foreseeability and is the
proximate cause of violations of inalienable rights to privacy, bodily
integrity, and personal autonomy under the substantive due process
clause of the Fifth Amendment to the United States Constitution.

139

Plaintiffs, who had not been adjudicated guilty of any crime in
accordance with due process of law and therefore were not subject to
punishment, but were subjected to harms by non-consensual participation
as research subjects under the United States BRAIN Initiative Program,
and directly punished through the subcutaneous radio frequency
identification neural nanotechnology experimental device and/or
permanent ingestible implantable electronic satellite based monitoring
device that amounted to punishment by the United States Government.

140

Plaintiffs' mistreatment and severe damages occur, during the unethical
non-consensual biomedical neurotechnology human experiment under the
United States Brain Initiative Program, and is imposed out of
intelligence gathering purposes, punishment for "thought-crime", and
medical curiosity, without regard of the impact on Mr. Hutchison as a
human research subject. Primary Defendants' alleged conduct during the
unethical non-consensual biomedical neurotechnology human experiment
deprived Plaintiffs of their alienable and inalienable rights to life
and liberty interests in violation of substantive and procedural due
process rights under the Fifth and Fourteenth Amendment of the United
States Constitution.

141

Plaintiffs are informed and reasonable believe and thereon allege that
all Defendants' aforementioned acts were intentional, willful,

73

malicious, oppressive and despicable, and/or were done in willful and
conscious disregard of the rights, welfare, and safety of Plaintiffs,
thereby justifying the awarding of punitive and exemplary damages
against all Defendants. Plaintiff's lack of sufficient medical
treatment during the unethical biomedical human experiment conducted by
Primary Defendants under the BRAIN Initiative Program is the direct
cause for a request, of "special circumstance" alternative relief, in
the form of proper subcellular microbiology medical examinations of
Plaintiffs' brain and body actionable under the California Civil Code
52.7.

<center>142</center>

As a direct and proximate result of all Defendants' acts and omissions,
Plaintiffs have been subjected to severe physical and psychological
pain and suffering, have incurred expenses, and suffered damages. These
injuries have caused and will continue to cause Plaintiffs great
physical and mental pain and suffering without injunction. Plaintiffs
have suffered for years, causing severe physical and psychological pain
and suffering, giving rise to justifiable entitlement to injunctive
relief, monetary compensation for actual economic and non-economic
damages, as well as, any other relief deemed just and proper by the
court.


<center>EIGHTH CLAIM FOR RELIEF</center>

(Tortuous Inference With Contractual Economic Expectancy, Fraudulent
Misrepresentations, 42 USC §1981; Civil Rights Act of (1964), Gross
Negligence, Gross Misconduct, Malicious Failure to Infer 42 USC §1986;
Violation of Cruel and Unusual Punishment: Eighth Amendment;
Intentional Infliction of Emotional Distress, 42 USC §1985(3);
Violations of Substantive Due Process & Equal Protections Provision:
Fourteenth Amendment, 42 USC §1983)


<center>143</center>

Plaintiffs incorporate by reference each and every allegation contained
in the preceding paragraphs as if set forth fully herein. All
Defendants acts and omissions were conducted and/or performed under

<center>**74**</center>

color of law of the United States. The NSA's domestic intelligence
network and cover businesses, including but not limited to, Live Well
Counseling, Honeywell Electronics, and Virtual Technologies LTD., as
well as, all subordinates to other private sector entities.

<div align="center">144</div>

Plaintiffs bring this claim against all Defendants and at all times
pertinent to the allegations herein, Defendants were acting under color
of law. And, all Defendants were aware of the contractual agreements
between Mr. Hutchison and both Honeywell Electronics is located at
15128 E Euclid Ave. Spokane Valley, WA 99216 and Live Well Counseling
was located at 521 North Argonne, Bldg B, Suite 105 Spokane Valley, WA
99212.

<div align="center">145</div>

Defendants are subject to liability for tortuous inference with
economic expectancy due to reasonable expectation of an economic
benefit derived from an employment contract with Honeywell Electronics.
Plaintiffs bring this action under RCW 49.363.020; and, Title VII Civil
Rights Act of (1964) Pub. L.88-352, 42 USC §2000e; and the Civil Rights
Act of (1991) Pub. L.102-166, 42 USC §§1981(b) to make and enforce
contracts and (c) protection against impairment, and Honeywell
Electronics' prohibited conduct under RCW 49.60.180 – 49.60.220 for
unfair practice to aid violations under RCW 49.44.170; And, Mr.
Hutchison has rights under RCW 49.60.030 to be free from discrimination
in the work place.

<div align="center">146</div>

Honeywell Electronic is liable for subordinate employees intentional
conspiratorial acts, that were deliberate and/or intentional, and
interfered with Plaintiffs performed job duties, Defendants deceptive
manner and/or wrongful conduct, intended to cause a breach of contract
and/or disruption of on-the-job performance, is the direct and/or
proximate cause for all of Mr. Hutchison's damages and/or from all
Defendants' acts that caused further damages and/or intended to
interfere with Mr. Hutchison's reasonable economic expectation derived
from the contractual agreement with Honeywell Electronics, directly

<div align="center">**75**</div>

and/or indirectly leading to a breach of contract with Honeywell
Electronics.

147

Mr. Hutchison reasonable believes Live Well Counseling is liable for
subordinates acts and omissions under RCW 19.86.020, for alleged
fraudulent misrepresentations made by Lee Salkin, who has an
educational background in the respective discipline, qualifying Salkin,
to conduct business as a Healthcare Provider. Thereby, breaching the
patient-physician contractual agreement implied in law, fraudulently
providing mental healthcare services rendered by Live Well Counseling
to Mr. Hutchison with intentions of fraudulent conveyance of the entire
contents of a checking account with Cayman National Bank.

148

Defendants racially motivated acts to conspire to defraud Plaintiff
derives from the "meeting of the minds" through coordinated efforts of
white supremacists between Lee Salkin of Live Well Counseling,
subordinates of Honeywell Electronics, members of a hacking group
called "digital pirates", and subordinates of W.A.S.P.C., subordinates
of the city of Spokane, as well as, private persons employed by Live
Well Counseling, Honeywell Electronics, Universities, and other unknown
federal agents, officers, and/or officials of federal agencies, acting
together to deprive with intent to defraud Mr. Hutchison, by fraudulent
misrepresentations made from Honeywell Electronics and Live Well
Counseling, constituting acts of "swindling" by identity theft and
forgery of Mr. Hutchison's signature on a Cayman National Bank draft
form.

149

On September 20, 2017 at around 8:00pm Mr. Hutchison recalls noticing
most of the employees were not on the shop floor, and Mr. Hutchison
then went on break, by going outside to smoke a cigarette where other
employees were seated and smoking as well. Mr. Hutchison then came back
into the building grabbed a cup of coffee and went into the break room,
and sat down next to the wall, where one of the conference rooms were
located. Mr. Hutchison recalls overhearing a, meeting he was not a

party to, taking place behind closed doors, in the conference room as follows:

150

"Mark Waterbly-Production Manager, Dwight Mostrom-Machinist, Jack Dowlen-Lead Machinist, Alex Duke-Machinist, Matthew White-Machinist and others voices were recognized during this meeting. The men congratulated Waterbly on his promotion. I overheard what I believed to be their cellphones hitting the table in the meeting room. I was sitting with my ear pressed up against the wall, listening to the meeting, I was uninformed of and/or unaware of and/or not invited to this meeting on pages 11 to 13 in paragraph 14 to 15.

151

Adams came out and saw me sitting against the wall and immediately ran back inside and warned the men in the room yelling, "S.A.N.B.O.G. he is on the other side of the wall" and one of the others asked, "Is he wearing earbuds"? And, Waterbly ended the secret meeting. Mr. Hutchison heard the men in the room talking about his wife and children as though they were viewing and/or surveilling his family while in the privacy of their own home, right before the end of the meeting.

152

Mr. Hutchison was in fear of his life, due to the hostilities he overheard during the "secret meeting" and was in deeper fear for his family's safety from the technology he witnessed. Plaintiff Mr. Hutchison's racially motivated conspiracy claims also include, collusion with employees, officers, and officials at the local, state, and federal levels of government via direct and/or indirect collusion with white supremacists in the region. Mr. Hutchison further claims, "They waited for my family to move up there to (Spokane, WA) from Georgia to plot against me, causing economic hardship for my family resulting in a foreclosure of (Real-Estate) property and unemployment, as well as, being cyber stalked with technologies, causing severe mental anguish and other non-economic losses."

153

The employees of Honeywell as Defendants conspiratorial acts, of a "secret meeting", constitute a meeting of the minds to conspire against

Mr. Hutchison. Unknown third-party Defendants as co-conspirators called "Brothers" were mentioned in the conversation, as well as, mentioning an undisclosed amount of money to be divided by the conspirators, including a plot to physically harm Mr. Hutchison, and implying harms done to his son. Mr. Hutchison noticed Mark Waterbly and many others exiting the room without making eye contact with him.

154

W.A.S.P.C., City of Spokane, Live Well Counseling, Honeywell Electronics, and other unknown private persons acts described herein constitute a deprivation of inalienable life and liberty interest to rights of privacy, bodily integrity, and personal autonomy under the Due Process Clause, as well as, the Equal Protection Clause of the Fourteenth Amendment to the US Constitution.

155

All Defendants and other participants in the US Brain Initiative Program and the government agency participants, as well as, private sector subordinates alleged intentional acts, malicious misconduct, gross negligence, and/or failure to infer with Co-Defendants misuse of ingestible implantable neurotechnology electronic microchips, DARPA's Brain to Computer Interface, and other sophisticated surveillance equipment, constitutes foreseeable neglect to infer, actionable under 42 USC §1986.

156

Live Well Counseling and Honeywell Electronics subordinates racially motivated conspiratorial collusion intent to defraud, actionable under 42 USC 1985(3); as well as, a racially motivated failure to equally protect Plaintiffs from all Defendants conspiratorial collusion intent to defraud actionable under 42 USC §1983; And, an abuse of power, undermining due process of law and failing to prevent suffrage by torture from the misuse of ingestible implantable neurotechnology electronic microchips to commit fraud represents a substantial permanent intrusion upon Mr. Hutchison's mind and body actionable under 50 USC §1810 and §1828; As well as, non-consensual searching and capturing bio-metric identifiers in violation of Washington States Biometric Privacy Act of (2017), RCW 19.375.020(1) requiring consent to

obtain, collect, and store bio-metric data, constituting Gross
Misconduct by complete disregard to follow procedures under state
and/or federal laws, based on scientific facts of neurotechnologies and
is the proximate cause, for punishment and/or without adjudication of
guilt, constitutes an illegal cavity search of Plaintiff's mind and
body amounting to extremely unreasonable intrusions upon seclusion
under the Due Process Clause, as well as, Equal Protections Provisions
of the Fourteenth Amendment to the United States Constitution.

157

Plaintiff is informed and reasonable believes the United States
Government is indirectly liable for the intentional and/or negligent
acts and omissions, of subordinates, acting under color of law, while
mishandling and/or misusing and/or failing to secure and/or willingly
participating and/or associating in racially motivated hate groups, as
the proximate cause of ingestible implantable neurotechnology devices
falling into the hands of employees at Live Well Counseling, Honeywell
Electronics, and third-party defendants "digital pirates", who with
malicious intent to commit fraud, and to make fraudulent
misrepresentations, including but not limited to: communications,
writings, speech, body movements, or silence, making statements that
were false and/or partially or entirely untrue, and omitted details to
intentionally deceive, as well as, failed to disclose important facts
related to white supremacists activity in the workplace and the area,
all Defendants indirectly placed Mr. Hutchison into a compromising
situation without reasonable consideration to harms derived from
unethically entering into an agreement between Live Well Counseling via
third party CIGNA Incident number 10367032-01 under a Short Term
Disability program offered by Honeywell Electronics. Mr. Hutchison
wouldn't have entered into agreements with both Honeywell Electronics
and Live Well Counseling, with prior knowledge of the, "whole truth",
to intentionally implant ingestible neurotechnology in the brain and
body of Mr. Hutchison and remotely monitor neural functions via
satellite connection to a DARPA Brain Computer Interface, to further
complete the intended act of "swindling" and/or unlawful conversion on
June 8th, 2018 at approximately 12pm using, a DARPA Brain to Computer

Interface and co-conspirators wouldn't have been able to complete the objective without access to neurotechnology electronic microchips and/or other sophisticated surveillance equipment.

158

Honeywell Electronics and Live Well Counseling subordinate employees acts and/or omissions to intentionally deceive Mr. Hutchison to enter into a contractual binding agreement with a $5000.00 relocation package included, was for nefarious purposes of using Mr. Hutchison's family as leverage and/or in furtherance of conspiratorial efforts to defraud, by "swindling" Mr. Hutchison out of a foreign bank account with Cayman National Bank. All Defendants who participated in the conspiracy to defraud Mr. Hutchison as employees, team leads, supervisors, managers, and/or members of staff, were employed by both Honeywell Electronics and Live Well Counseling and are liable under the "Respondent Superior" doctrine, for acts and/or omissions committed by subordinates, as well as, the proximate cause for all of Mr. Hutchison losses.

159

All Defendants as conspirators intentional acts and/or omissions were directly and/or indirectly intended to persuade Mr. Hutchison to entering into agreements and/or contract of employment with Honeywell Electronics, as well as, contractual agreement implied in law with a healthcare provider, Live Well Counseling, for mental anguish suffered during Mr. Hutchison's duration of employment, dealing with a "hostile work environment" while working a 12 hour night shift at Honeywell Electronics from November 2016 to November 2017 when a noose was found on the jobsite in December of 2016 and the employee was terminated in January of 2017 causing retaliatory reactions from other co-workers. Mr. Hutchison reasonable relied on the contractual agreement of employment with Honeywell Electronics for economic expectancy to the extent of providing for his unemployed pregnant wife and children, as well as, to purchase real estate property located at 2406 South Pines Rd. Spokane Valley, WA with a short and convenient commute to and fro work within 15 minutes under normal conditions.

160

Mr. Hutchison reasonable believed at the commencement of the agreements
that all Defendants were performing their job duties professionally,
thereby, allowing Mr. Hutchison to believe they were honest about
specifics of said agreements and intentions. But, instead Defendants
intentional deception and/or deliberate indifference underlies the
furtherance of cause, to obtain all funds available within Mr.
Hutchison's personal checking account with Cayman National Bank and
other economic losses suffered by the Plaintiffs, which represents a
substantial permanent impairment upon Mr. Hutchison's personal and
private life by actually affecting the Plaintiffs mind and body via
ingestible implantable neural nanotechnology devices capable of
searching and capturing bio-metric identifiers in real time non-
consensually in violation of the Biometric Privacy Act (2017), RCW
19.375.020(4)(b)(ii); Furthermore, constituting intentional acts of
infliction of emotional distress caused by fraudulent
misrepresentations made in conscious disregard of procedures and
policies set forth under state and/or federal laws, based on
unsubstantiated facts leading to probable cause, and no adjudication of
guilt, but directly and/or indirectly amounts to punishment by the
United States Government, in the form of torture derived from research
conducted by subordinates using, including but not limited to:
sophisticated surveillance equipment, in-vivo ingestible implantable
neural nanotechnologies, and DARPA's Brain to Computer Interface to
remotely monitor Plaintiff's neural functions and other Biometric
Identifiers causing substantial damages, constitutes a violation of the
Cruel and Unusual Punishment Clause under the Eighth Amendment to the
United States Constitution.

161

Plaintiffs reasonable allege all Defendants had prior knowledge of,
neurotechnology devices, satellite based monitoring DARPA brain to
computer interfaces, and other sophisticated surveillance equipment
used on Plaintiffs, Mr. Hutchison and his family, created, "a living
hell", from hostilities at work, tortured remotely via neurotechnology,
severe mental anguish and extreme amounts of emotional distress,
thereby interfering with Plaintiffs, ability to conduct mundane and/or

ordinary functions of everyday life, including but not limited to, the ability to be productive at work, and/or at home, marital relations, as well as, conscious decision making, directly contributing to interruptions, disruptions, and invasions of Plaintiffs life and liberty interests, including but not limited to: fundamental rights to freedom of thought, privacy, bodily integrity, and personal autonomy under the substantive due process clause of the Fourteenth Amendments to the United States Constitution.

162

All Defendants' acts and/or omissions are degrading to human dignity, blatantly racially motivated and obviously fraudulent through conspiratorial collusion between Live Well Counseling, Honeywell Electronics, and local, state, and unknown federal agents of federal agencies and/or private sector entities, by failing to install proper cyber security features on ingestible implantable neurotechnology devices and/or allowing all Defendants to gain access to, and/or fail to infer and/or prevent all Defendants from gaining access to sophisticated surveillance equipment, bio-metric identifier data and/or micro-robotic neurotechnology devices with nanotransmitters, actionable under 42 USC §1986; As well as, the proximate cause for all of Mr. Hutchison's economic and non-economic damages derived from deceptive fraudulent misrepresentations to interfere with the economic expectancy derived from the contractual agreement with Honeywell Electronics and Live Well Counseling.

163

Plaintiffs are informed and thereon allege that all Defendants' aforementioned acts were intentional, willful, malicious, oppressive and despicable, and/or were done in willful and conscious disregard of the rights, welfare, and safety of Plaintiffs, and the proximate cause of severe physical and psychological pain and suffering, justifying entitlement to injunctive relief, monetary compensation for actual economic damages suffered, and the awarding of punitive and exemplary damages against all Defendants, as well as any other relief deemed just and proper by the court.

NINTH CLAIM FOR RELIEF

(Violation of Substantive & Procedural Due Process Rights: Fifth &
Fourteenth Amendment, California Civil Code 52.7; Violation of Search
and Seizure Clause: Fourth Amendment, 50 USC §1810 & §1828; Malicious
Misconduct, Violations of Equal Protection: Fourteenth Amendment, 42
USC §1983; Civil Rights Act of (1866); Conspiratorial Collusion
Deprivation, 42 USC §1985(3))


164

Plaintiffs, incorporate by reference each and every allegation reflects
accounts of a historical pattern of racially motivated discrimination,
racial profiling, unlawful conduct, and torture, as well as, unethical
human experiments contained in the preceding paragraphs as if set forth
fully herein against all Defendants. At all times pertinent to the
allegations herein, all subordinates of the USG were acting under color
of law of the United States, and are further liable for their conscious
disregard of the excessive risk of serious harm to Plaintiffs' health
and safety under the BRAIN Initiative Program. Although subordinates of
Live Well Counseling and Honeywell Electronics are private persons, and
not state officials, I instruct you that the relationship between Live
Well Counseling, Honeywell Electronics and the state are sufficiently
close that they were acting under color of law. In other words, this
element of Mr. Hutchison's claim is not in dispute, and you must find
that this element has been established.

165

The USG is liable for failing to infer with unethical neurotechnology
microchip medical experiments under the Brain Initiative Program for
creating and/or participating and/or funding private sector entities;
As well as, under the "Respondent Superior" doctrine, for intentional
acts of subordinate unknown federal agents of federal agencies,
including but not limited to: IARPA, DARPA, FBI, DIA, and NSA's
domestic intelligence network and cover businesses in the course of
research gathering from neurotechnology electronic chips and a DARPA
BC/I, actionable under 42 USC §1986; as well as, violates rights to

83

privacy, bodily integrity, and personal autonomy under the due process clause of the Fifth Amendment to the US Constitution.

166

Live Well Counseling, Honeywell Electronics LLC, University of Washington Nano Manufacturing Facility, Georgetown University, and the University of Columbia, as well as, all subordinates' and employees of unknown third-party co-conspirators, are indirectly liable for subordinates intentional racially motivated acts and/or omissions, constituting a deprivation of alienable and inalienable life and liberty interests rights to privacy, bodily integrity, and personal autonomy in violation of the Due Process Clause of the Fourteenth Amendment to the US Constitution.

167

W.A.S.P.C., and Washington State subordinates, as well as, unknown third-party co-conspirator subordinates' friends, associates, affiliates, and/or organizations who are involved with the BRAIN Initiative Program, that directly and/or indirectly contributed, allowed, and/or failed to prevent racially motivated acts, under color of law of the United States can be proven during discovery, and would show evidence of, including but not limited to: racially motivated collusion and/or conspiratorial acts and/or discrimination and/or violations of equal protections, and unethical neurotechnology medical experiments performed on Mr. Hutchison based on race, sex, neural capabilities, and economic status, actionable under 42 USC §1985(3);

168

FBI, NSA, IARPA, DARPA, as well as, the USG are liable for failing to infer with the intentional acts of unknown third-party co-conspirator subordinates' friends, associates, affiliates, and/or organizations, for racially motivated acts under color of law, actionable under 42 USC §1986; reasonable discoverable based on scientific facts of specific Signals Intelligence low-level-frequency MHz band, and the eye witnessed DARPA Brain to Computer Interface, as factual evidence to support the allegations of, including but not limited to: racially motivated collusion and/or conspiratorial acts and/or discrimination and/or violations of equal protections, and human experiments based on

race as a deprivation of alienable and inalienable rights to privacy, personal autonomy, and bodily integrity under the due process clause of the Fifth Amendment.

169

Plaintiffs, who were not adjudicated guilty of any crime in accordance with due process of law and therefore were not subject to punishment, were subjected to harms, through the racially-motivated in vivo electronic chip biomedical human experiment and/or permanent implantable radio frequency identification device and/or ingestible implantable neural nanotechnology device with multi-app bio-metric identifiers, as a sophisticated surveillance equipment tool used by Law Enforcement and/or Civil Regimes and/or private persons. Mr. Hutchison witnessed DARPA's multi-app Brain Computer Interface/Machine that includes but is not limited to: Remote Neural Monitoring and controlling function, Functional Magnetic Resonance Imaging Brain Mapping & Thought Decoding/Translation Monitoring and controlling function, Magnetoencephalogram Brain Monitoring and controlling function, Electroencephalographic Monitoring and controlling function, Low-Level Frequency Electromagnetic Brain Wave Speech Injection Monitoring and controlling function, Deep Neural Network Speech/Thought to Text Decoding and Translation Monitoring and controlling function, Global Positioning Satellite Location Monitoring and controlling function, Electrocardiogram ECG/EKG Vital Signs Monitoring and controlling function, Magnetic Resonance Imaging Full Body Mapping Monitoring and controlling function; Electrophysiological Monitoring and controlling function, all displays are digital and shown in Real-Time, accessible remotely via WIFI connectivity to electronic devices, that indirectly amounted to punishment by the USG actionable under 50 USC §1810 for electronic searches and seizures 50 USC §1828 for physical searches and seizures of Biometric Identifiers; and, is actionable under 42 USC §1985(3), as well as, under 42 USC §1986 for failure to infer.

170

The USG is further liable for subordinates acts in both their individual and/or official capacity colluding with racially motivated

individuals with a white supremacy ideology, and/or other private persons as co-conspirator and Co-Defendants, to develop neural nanotechnology devices, brain computer interfaces/machines and/or, are authorized to conduct research and/or, non-consensual capture bio-metric identifiers and/or, facilitate and control data obtained, thru direct and/or indirect access under federal grants and/or under federal contract, with appropriations set aside for subject-matter related scientific matters, actually or proximate conducted by federal agents, officials, and officers of Federal Agencies of the USG. The use and/or misuse of classified technologies to conduct unethical human experiments for surveillance purposes, constitutes Gross Misconduct in violation of Executive Order 12333 section 2.10, as equal protection violations, actionable under 42 USC §1983.

171

All Defendants, including but not limited to: unknown federal officers, officials, or employees and/or subcontractors and/or contractors with the National Security Agency and/or other federal agencies who directly and/or indirectly contributed to the misconduct by non-compliance with the provisions set forth in relevant parts of Executive Order 12333 for rules of conducting intelligence gathering via electronic and physical searches during the neurotechnology research experiment and/or within certain approved programs. For example, the misuse of sophisticated surveillance micro-robotic technology and/or ingestible implantable neurotechnology electronic chips, as well as, techniques and methods are specifically and strictly barred for intelligence agencies and/or representative agents and/or contractors and/or subcontractors from operating outside of contractual agreement and/or scope of employment; And, expressly forbidden to engage in activities in undisclosed direct or indirect participation in organizations within the United States, constituting Malicious Misconduct, actionable under 42 USC §1986; as well as, in violation of alienable and inalienable life and liberty interests to, "freedom of thought", under a penumbra of constitutional rights; including but not limited to: First, Fourth, Fifth, Eighth, and Fourteenth Amendment protections to the US Constitution.

172

All Defendants deliberate indifference acts and/or inaction constitute gross misconduct, using sophisticated surveillance equipment in the form of neurotechnology legally and/or illegally obtained thru the BRAIN Initiative Program, and given to white supremacists. The alleged Unethical non-consensual neurotechnology medical research experiment utilizes; including but not limited to: Signals Intelligence, Domestic Intelligence, Communications Intelligence, and/or any other form of Intelligence gathering methods and capabilities to further intelligence gathering methods under the Foreign Intelligence Surveillance Act of (1978) codified at 50 United States Code Section 2 §1810 electronic searches and §1828 physical searches, going beyond the reasonable standard to ethically conduct body cavity searches using electronic neurotechnology devices. In violation of guidelines issued by the Department of Health and Human Services, Food and Drug Administration, and the Common Rule, actionable under 45 CFR 46, as well as violations of International Human Rights Laws, Nuremberg Code, and Torture Victim rights, for extremely despicable and horrific tortures misusing invasive ingestible neurotechnology devices, to covertly and deceptively monitored Mr. Hutchison in real-time, during a domestic surveillance program authorized under E.O. 12333; As well as, a violation of privacy, personal autonomy, and bodily integrity as substantive and procedural due process rights under the Fifth Amendment to the US Constitution.

173

For example, under E.O.12223- §2.4, Collection Techniques- using signals intelligence which is discussed in an interview with Russ Tice a former NSA intelligence officer and current whistleblower relating to electronic intelligence gathering via space systems communications, non-communications signals, electronic warfare, satellite control, telemetry, sensors, and special capability systems; §2.7, Contracting with Private Sector Companies, entities, and academic organizations, for Research and Development purposes with Neural Nanotechnology Manufacturing Facilities; §2.8, Consistency with other laws and violations of the US Constitution by failure to infer with racially motivated conspiratorial collusion; §2.9, Undisclosed Participation in

**87**

organizations within the United States- Disclosures of Intelligence
Affiliation; §2.10, Human experimentation using "neuroweaponry" to
monitor and control the mind and body of the Plaintiff directly and/or
indirectly interfering with all aspects of life; §2.12, Forbidden
Indirect Participation with white supremacist organizations,
associations, co-ops, clubs, fraternity, sorority and/or any other
federally recognized terrorist groups.

174

All Defendants were aware of the technological devices implanted in the
Plaintiffs' body at the time of fraud by "swindling". And, are liable
for the intent to interfere, deprive, and cause both economic and non-
economic damages to Mr. Hutchison. Live Well Counseling subordinate Lee
Salkin's character is in question, as a result of intent, to defraud
Plaintiff under FRCP Rule 9(b), "swindling" trick Plaintiff, and
Salkins' alleged white supremacists affiliations and/or ideology can be
proven by Salkin's', "ghost skin" character.

175

Live Well Counseling subordinate Lee Salkin's dual-fold character to
commit fraud is based on deception. Lee Salkin and others are alleged
members of white supremacists groups using sophisticated surveillance
equipment to monitor Plaintiffs Mr. Hutchison and his pregnant wife and
children on a day to day basis in real-time and is the direct cause for
Mr. Hutchison's economic losses as a result of fraudulent
misrepresentations made by the all Defendants.

176

Lee Salkin and his affiliates are alleged members of white supremacists
groups in an area of the United States that stems from a history of
white supremacist activity; As well as, notorious for cyberstalking
civil regimes. Plaintiff Mr. Hutchison has first-hand accounts of
Salkin's' involvement in white supremacy and/or other familial
circumstances of Salkin's' involvement in white supremacy.

177

All state and federal government Defendant's access and/or use of the
ingestible implantable electronic microchips to commit fraud represents
a substantial permanent intrusion upon Mr. Hutchison's mind and body

searching and capturing bio-metric identifiers non-consensually and all
Defendants disregard to follow procedures under state and/or federal
laws, based on unsubstantiated facts leading to probable cause, and no
adjudication of guilt, constitutes an illegal search without a warrant,
in violation of the implied right to privacy under the Fourth Amendment
to the US. Constitution.

178

Live Well Counseling and Honeywell Electronics, as well as, Spokane PD
subordinate's intentional acts are the actual and direct cause, of
Plaintiffs suffrage. Defendants racially motivated acts have harmed
Plaintiffs, proximate causing irreparable non-economic damages;
including but not limited to, dissociated identity, doubt in oneself
confidence, low self-worth, inadequate decision making, and the ability
to cope with economic losses, loss of sleep, emotional distress, and
severe mental anguish, indirectly caused by fraud.

179

Plaintiffs have suffered due to all Defendants and/or other unknown co-
conspirators malicious misconduct, gross negligence, and failure to
infer with the racially motivated conspiracy, as an abuse of power,
that undermines due process of law, actionable under 42 USC §1986; as
well as, prevents Plaintiffs from being free from unreasonable
intrusion upon seclusion under Substantive Due Process Clause of the
Fourteenth Amendment of the United States Constitution.

180

All Defendants and/or other unknown third-party conspirators have prior
knowledge of neurotechnology devices, sophisticated surveillance
equipment, and satellite based monitoring devices, used on Plaintiff
Mr. Hutchison and his family, creating a living hell, indirectly
causing severe mental anguish, and therefore interfering with
Plaintiffs, ability to conduct mundane and/or ordinary functions of
everyday life, including but not limited to, the ability to be
productive at work and/or at home, marital relations, and conscious
decision making, directly contributing to interruptions, disruptions,
and invasions of Plaintiffs life and liberty interests, as well as, the
fundamental right to freedom of thought, as rights to privacy, bodily

**89**

integrity, and personal autonomy under due process clause of the Fifth
Amendment to the Constitution.

181

Mr. Hutchison a member of a protected class of United States citizen
reasonably believes he is a victim of a racially motivated
conspiratorial intent to defraud scheme, involving private persons and
government employees, acting in their individual and/or official
capacities, directly and/or indirectly conspiring with organizations
that have a racist agenda as motive, to defraud and violate Mr.
Hutchison's constitutionally protected rights to privacy, bodily
integrity, and personal autonomy, as well as, scientific fact based
freedom of thought under substantive due process clause of the Fifth
Amendment of the US Constitution.

182

All Defendants as conspirators, others, and unknown third-party
Defendant coconspirators are liable under 42 USC §1985(3) for acts
and/or omissions both directly and indirectly leading to racially
motivated conspiratorial collusion deprivations with intent to defraud.
All Defendants are liable for actual economic damages caused by fraud
and non-economic damages suffered by Plaintiffs, specifically the loss
of a foreign bank account with the Cayman National Bank calculated by
the actual lifetime value and/or septuplicated value of the account
based on a product with Cayman National Bank, owned by the Plaintiff
Mr. Hutchison at the time identity theft occurred and forgery was
committed by conspiratorial collusion between Live Well Counseling and
others using a DARPA brain computer interface connected to ingestible
neurotechnology electronic microchips embedded within Mr. Hutchison's
brain and body.

183

Mr. Hutchison's parents Stephanie Anise and Thaddeus Joseph Hutchison,
setup the foreign account for their child at age (4) four, by making an
initial deposit totaling $102,000 and 00/100 cents in 1990. For
example, with the economic expectancy and modern medical technological
advancements Mr. Hutchison's life expectancy could reach over One
hundred years with advanced medical science, and/or his children would

have inherited this account, with a unique product that septuplicate
every 7 years, with a maturity date following the seventh year leading
to a lifetime value sum of $69,178,753,430,598,000 and 00/100 cents by
the year 2089 and Plaintiffs projected lifetime age at 103 years old.

<center>184</center>

Plaintiffs are informed and thereon allege that all Defendants'
aforementioned acts were intentional, willful, malicious, oppressive
and despicable, and/or were done in willful and conscious disregard of
the rights, welfare, and safety of Plaintiffs, and the proximate cause
of severe physical and psychological pain and suffering, justifying
entitlement to injunctive relief, monetary compensation for actual
economic damages suffered, and the awarding of punitive and exemplary
damages against all Defendants, as well as any other relief deemed just
and proper by the court.

<center>TENTH CLAIM FOR RELIEF</center>

(Violation of the Re-enslavement clause: Thirteenth Amendment, 42 USC
§1981; Washington Biometric Privacy Act (2017), RCW 19.375; Tortuous
Inference with Contract, California Civil Code 52.7; Violations Civil
Rights Act (1862), 42 USC §1985(3); Negligence, 42 USC §1986)

<center>185</center>

Mr. Hutchison refers to the "badges and incidents of slavery" to
support within each and every allegation contained in the preceding
paragraphs as if set forth fully herein. Reflects accounts of a
historical pattern of racially motivated discrimination, racial
profiling, unlawful conduct, and torture, as well as, unethical human
experiments contained in the preceding paragraphs as if set forth fully
herein against all Defendants. Although subordinates of Live Well
Counseling and Honeywell Electronics are private persons, and not
government officials, I instruct you that the relationship between Live
Well Counseling and Honeywell Electronics and the government are
sufficiently close that they were acting under color of law of the
United States. In other words, this element of Mr. Hutchison's claim is

<center>**91**</center>

not in dispute, and you must find that this element has been established.

186

All Defendants were aware of the contractual agreement of employment between Mr. Hutchison and Honeywell Electronics. Honeywell Electronics, business is located at 15128 E Euclid Ave, Spokane Valley, WA 99216, and is a subsidiary of Honeywell LLC., with a principle place of business located at 101 Columbia Road, Morristown, New Jersey, 07962-2497. Plaintiff alleges re-enslavement of the mind and body, derived from scientific facts of ingestible neurotechnology nano-electronic microchips implanted in the Hutchison's bodies on August 18th, 2017, stated on pages 09 to 10 in paragraphs 13 to 15 at approximately 8:30pm to 9:45pm by alleged white supremacists employees under a racially motivated conspiratorial deprivation with intent to defraud and/or steal Mr. Hutchison's checking account with Cayman National Bank.

187

On September 20th, 2017 Honeywell Electronics subordinate employees had a secret, "KKK meeting", stated on pages 11 to 14 paragraphs 19 to 23 for coordinated efforts to plot against Mr. Hutchison with racially motivated conspiratorial intent to defraud and/or steal the entire contents of Mr. Hutchison's unique checking account with Cayman National Bank. Mr. Hutchison's mind and body were integrated with neural interfaced electronic microchip nanotechnology, "Microchip Neural Nanotransmitters", capturing bio-metric identifiers, in real-time via DNN Deep Neural Network, DARPA BC/I Brain Computer Interface/Machine.

188

All Defendants have access to Plaintiffs private and personal life, from in vivo ingestible implantable neurotechnology devices based on scientific fact of multiple disciplines, including but not limited to: micro-robotic, micro-biology, neurological structures, and/or multiple applications to control and/or manipulate and/or punish the Plaintiffs' physiological mind and body, accessible remotely via a DARPA Brain to Computer Interface, and is similar if not the same to devices, under Patent WO 2012/126003 A1 and/or KR20170090373A. Funding for neural

research is contributed by government under the BRAIN Initiative,
Neurological Initiative, and/or Humane Genome Project; and paid for by
grants similar if not the same, to the National Institute of Health
(NIBIB and NCMRR/NICHD) under Bioengineering Research Partnership
Program (1R01EB007401-01), the National Science Foundation under the
ERFI Program (#0937848), and by the Defense Advanced Research Projects
Agency (DARPA) Reorganization and Plasticity to Accelerate Injury
Recovery program (REPAIR) (N66001-10-C-2010). The US Government may
have certain rights in this invention as provided for by terms of the
above grants and are liable for negligence and/or failure to secure
neurotechnology electronic microchip devices from falling into the
hands of white supremacists, actionable under 42 USC §1986, as well as,
the proximate cause for all of Plaintiffs damages suffered.

189

The well-known narrative and/or rhetoric of white supremacy ideology is
publicly discussed, and pursuant to FRCP Rule 44 any published article
of relevant subject-matter can be used in conjunction with FRE 803(16)-
HISTORICAL DOCUMENTS as evidence. And, any reasonable person, that
doesn't share a white supremacy ideology, based on historic facts
derived from internet based research under FRE Rule 201(b)(2), would be
able to determine the origin and cause for racially motivated unlawful
acts toward members of a protected class of United States citizens,
here in constitutes a violation of the re-enslavement clause of the
Thirteenth Amendment to the United States Constitution as a derivative
of the protections provided to Black/African Americans and their
descendants stated in section 2 of the Civil Rights Act (1863); to
prevent any and all forms of re-enslavement, badges, incidents, and
vestiges, as well as re-enslavement of Mr. Hutchison's brain and body
as a form of neurotechnology slavery in violation of Article 2 and
Article 6 of The Slavery Convention of (1926), September 25, (1926), 60
L.N.T.S. 253, Amended on Dec. 7, 1953, 183 U.N.T.S. at 51 (1953);
actionable under 42 USC §1985(3).

190

Plaintiff Mr. Hutchison makes relevant references to a historical fact
pattern of discrimination derived from collusion between white

supremacist organizations and local and state government employees, officials, officers, and/or employees of federal agencies and/or political affiliated governmental positions. This historical pattern of failure to protect and/or infer with the racially motivated conspiracies to deprive Mr. Hutchison and other Black/ African Americans alienable and inalienable rights and/or life and liberty interests in violation of the Due Process Clause of the Fifth Amendment of the US Constitution; As well as, Equal Protections stated under the Fourteenth Amendment to the US Constitution; constituting badges and incidents of slavery in violation of the re-enslavement clause of the Thirteenth Amendment of the United States Constitution.

191

Unknown Federal Agents of Federal Agencies had foreseeable knowledge to prevent and/or failed to protect and/or failed to infer with the alleged racially motivated conspiracy orchestrated by white supremacists Defendants, constituting negligent and/or willful misconduct as subordinates of the United States Government, while operating within the scope of employment, as well as private persons acting in both their individual and official capacities under color of law. The negligent acts created a zone of danger, causing harms to the Plaintiffs who are Black/ African Americans as subjects of investigations into Black Extremists, actionable under 42 USC §1986.

192

Mr. Hutchison, who had not been adjudicated guilty of any crime in accordance with due process of law and therefore were not subject to punishment, but were subjected to harm via the Black Identity Extremist Intelligence Assessment, clearly stating, "Black Extremists", were active during the historical civil rights movement into the peaceful protests of lawfully organized Black/African American groups. In which a reasonable person who doesn't share similar per-conceived racially motivated lack of concern to uphold the law and/or enforce the law and/or provide equal protections of civil rights to Black/African American citizens and others based on white supremacy ideology, constitutes equal protections violations, constituting Gross Negligence, with foreseeability, actionable under 42 USC §1986.

**94**

193

Plaintiffs' mistreatment during the racially motivated non-consensual human biomedical experiment was imposed out of, including but not limited to: intelligence gathering purposes, GSO based monitoring, unethical human experimentation and/or medical curiosity, without regard for the impact on its human subjects. All Defendants allegedly conducted research on Plaintiffs during the non-consensual neurotechnology electronic microchip biomedical human experiments indirectly depriving Plaintiffs of their alienable and inalienable rights as human beings, as well as, life and liberty interests to privacy, bodily integrity, and personal autonomy under substantive and procedural due process rights stated in the Fifth and Fourteenth Amendment of the United States Constitution.

194

As a direct and/or proximate result of all Defendants' intentional acts and omissions, Plaintiffs have been subjected to severe physical and psychological pain and suffering, have incurred expenses, and suffered actual economic damages. These injuries have caused and will continue to cause Plaintiffs great physical and mental pain and suffering.

195

Plaintiffs are informed and thereon allege that all Defendants' aforementioned acts were intentional, willful, malicious, oppressive and despicable, and/or were done in willful and conscious disregard of the rights, welfare, and safety of Plaintiffs, and the proximate cause of severe physical and psychological pain and suffering, justifying entitlement to injunctive relief, monetary compensation for actual economic damages suffered, and the awarding of punitive and exemplary damages against all Defendants, as well as any other relief deemed just and proper by the court.


ELEVENTH CLAIM FOR RELIEF

(Tortuous Inference of Contract and Economic Expectancy, 42 USC §1985(3); Fraudulent Misrepresentation, Title VII Civil Rights Act of (1964) Pub. L.88-352, 42 USC §2000e; and the Civil Rights Act of (1991)

Pub.L.102-166, 42 USC §§1981(b)(c); Violation of the HIPAA Act, 42 USC §1986)

196

Mr. Hutchison refers to the "badges and incidents of slavery" to support within each and every allegation contained in the preceding paragraphs as if set forth fully herein. Reflects accounts of a historical pattern of racially motivated discrimination, racial profiling, unlawful conduct, and torture, as well as, unethical human experiments contained in the preceding paragraphs as if set forth fully herein against all Defendants. Although subordinates of Live Well Counseling and Honeywell Electronics are private persons, and not state officials, I instruct you that the relationship between Live Well Counseling and Honeywell Electronics and the state is sufficiently close that they were acting under color of state law. In other words, this element of Mr. Hutchison's claim is not in dispute, and you must find that this element has been established.

197

Primary Defendants Lee W. Salkin and Live Well Counseling directly conducted business with Honeywell Electronics, in a third-party payment arrangement, to accept insurance company funds through CIGNA with INCIDENT #10367032-01. Defendants Lee W. Salkin and Live Well Counseling had received said payments through Cigna for the duration of multiple sessions Mr. Hutchison attended while on (STD) Short Term Disability offered by Honeywell Electronics between the months of November 2017 to June 2018. Mr. Hutchison was financially supported by the supplemental Short Term Disability provided by CIGNA as shown on Mr. Hutchison 2017 and 2018 tax returns presentable under request.

198

Honeywell Electronics subordinates acts, of a "secret KKK meeting", on September 20th, 2017, stated under pages 11 to 14 in paragraph 19 to 23 constituting a meeting of the minds to conspire against Mr. Hutchison; third party co-conspirators, called "Brothers" were mentioned in the conversation, as well as, mentioning an undisclosed amount of money to be divided by the conspirators, including a plot to physically harm Mr.

Hutchison, and implying harms done to his son R.C.H.II. Mr. Hutchison was under the reasonable belief that Live Well Counseling provided adequate services for mental distress derived from "hostile work environment" related circumstances, derived from scientific fact of neurotechnology electronic microchips and a DARPA Brain to Computer Interface.

<center>199</center>

All Defendants intentional conspiratorial collusion deprivation with intent to defraud Mr. Hutchison, is both directly and/or indirectly violations of equal protections of contract law RCW 19.36.010, Title VII Civil Rights Act of (1964) Pub. L.88-352, 42 USC §2000e; and the Civil Rights Act of (1991) Pub. L.102-166, 42 USC §§1981(b) to make and enforce contracts and (c) protection against impairment, and prohibited conduct under RCW 49.60.180 - 49.60.220, for unfair practice to aid and abet violations under RCW 49.44.170; Mr. Hutchison has rights under RCW 49.60.030 to be free from discrimination in the work place, Defendants misconduct and racially motivated acts were in furtherance of the conspiracy to defraud Mr. Hutchison under 42 USC §1985(3).

<center>200</center>

Defendants Lee W. Salkin and Live Well Counseling directly conducted business with Honeywell Electronics, in a third-party payment arrangement, to accept insurance company funds through CIGNA INCIDENT #10367032-01, for the duration of multiple sessions the Plaintiff Mr. Hutchison attended through his employer Honeywell Electronics between the months of September 2017 to June 2018. Mr. Hutchison was financially supported by the supplemental Short Term Disability provided by his contractual employer Honeywell Electronics.

<center>201</center>

All Defendants intentional acts were the actual and/or direct cause, for "hostile work environment", during the duration of Plaintiff Mr. Hutchison's quasi contractual agreement implied in law from November 2016 to July 2018, with Honeywell Electronics; Mr. Hutchison encountered outrageous conduct, including but not limited to: racial prejudices, radio frequency identification tracking devices and/or ingestible implantable neurotechnology electronic microchips,

<center>**97**</center>

poisoning, as well as many other forms of harassment, actionable under the California Civil Code 52.7; that resulted in a breach of contract with Honeywell Electronics and the proximate cause for all of Mr. Hutchison's actual economic damages suffered; including but not limited to: Loss of Real Estate Property under RCW 64.04.005 with a fair market value at over $185,000.00USD, located at 2406 South Pines Rd. Spokane Valley, WA 99206 owned by Mr. Hutchison at the time of contractual interference, leading to a financial burden on Plaintiffs and caused severe mental anguish, as well as, future loss of expectancy from economic gain.

202

Plaintiffs are informed and have reason to believe Primary Defendant Lee W. Salkin deliberately deceived Plaintiffs for months as a Healthcare Provider. The misrepresentation was intentionally fraudulent, in order to obtain an illegitimate gain, by swindling Plaintiff Mr. Hutchison on June 8th 2018. Mr. Hutchison relied on Salkin's professionalism as a Mental Healthcare provider working for Live Well Counseling to provide sufficient counseling, so Mr. Hutchison could deal with the stresses of a hostile work environment and severe mental anguish of racism perpetrated by conspirator Defendants. Mr. Hutchison was a patient of Salkin's' and suffered consequences for trusting a Mental Healthcare provider motivated by white supremacy and access to technologies used against Mr. Hutchison. Salkin and Live Well Counseling along with coconspirators working for Honeywell are the proximate cause for Mr. Hutchison's damages suffered and the direct cause of years of severe mental anguish leading to an intentional infliction of emotional distress claim, resulting from Defendants outrages conduct.

203

Plaintiff Mr. Hutchison, brings a private action under R.C.W. 19.86.093(3), against Defendants Lee W Salkin and Live Well Counseling in both their individual and professional capacity, as well as, fraud under RCW 19.86.020, for alleged fraudulent misrepresentation; therefore, breaching the patient-physician contractual agreement, fraudulently providing mental healthcare services rendered by

Defendants Lee Salkin and Live Well Counseling to Mr. Hutchison with intentions of fraudulent conveyance of Mr. Hutchison's foreign financial account with Cayman National Bank.

204

Defendant Salkin was fully aware of his acts and omissions, and had intent to swindle Mr. Hutchison, knowing that his acts would cause injuries. And, a relevant fact is Salkin has an educational background in the respective discipline, qualifying Salkin, to conduct business as a Healthcare Provider. Defendant was trained and notified of laws under 42 USC §1320d-2a(d)(1)(A)(iii)- the need for training 'persons' who have access to health information; Live Well Counseling meets the health care provider description under 42 USC § 1320d - 2d(1)(v) the needs and capabilities of small 'health care providers and 'rural health care providers (as such providers are defined by the Secretary); as well as, based on information pertaining to health care providers, Defendants Lee W. Salkin as an employee of Live Well Counseling conducts business in the State of Washington located at 200 N Mullan Rd Ste 222, Spokane Valley, WA 99206; actionable under 42 USC §1985(3).

205

Defendant Salkin acting in his individual and/or official capacity, as a counselor and/or partner and/or employee, with Live Well Counseling, as a Health Care Provider and/or 'covered entity', committed acts and/or omissions constituting fraud perpetrated on a 'patient' Mr. Hutchison, by way of forgery of Mr. Hutchison's signature with intent of 'swindling' and deprive his 'patient' Mr. Hutchison, of inalienable rights to life and liberty interests, privacy, bodily integrity, and personal autonomy under Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution.

206

Plaintiff Mr. Hutchison has a justifiable reason to believe Live Well Counseling, LLC., a 'covered entity', is liable under the respondent superior doctrine for unlawful acts of subordinate employee, Lee W. Salkin, including but not limited to: failure to comply with administrative simplification provisions codified at 42 USC § 1320d-2, under section 264(c)(2) of the HIPAA Act of (1996), constituting Gross

Misconduct and Gross Negligence, related to the mishandling of patients personal and private identifiable health information. As well as, standards for information transactions and data elements under: 42 USC §1320d-2a(2)(A) Health claims or equivalent encounter information (E) Health care payment and remittance advice (J) Electronic funds transfers- Plaintiff brings additional allegations against Defendants failure to follow procedures under RCW 70.02.150 for Security Safeguards, violating the implied contract between Mr. Hutchison and Live Well Counseling, a "healthcare provider agreement" and/or short term disability contract with Cigna as a healthcare provider, paid for indirectly by third-party employer Honeywell Electronics.

207

Plaintiff Mr. Hutchison's claim of relief under 42 USC §1985(3), for racially motivated conspiratorial collusion, and purposes of direct and/or indirect fraud by "swindling" committed by Defendants Lee Salkin, and co-conspirators, for the entire value and/or funds, within 'patient' Mr. Hutchison's personal and private financial account with Cayman National Bank a Foreign Banking Institution. As well as, threats of harm to the 'Patient' Robert Charles Hutchison and his family, stated in the attached affidavit. Defendants affiliations with nation-wide White Supremacists organizations, centrally located in a region of the United States, well-known for such activities. Mr. Hutchison is under duress and fears retaliatory acts, because of access to technologies used by Salkin and others, with a long reach, and a network of technologically suave co-conspirator black-hat hackers, "digital pirates", to follow thru with threats made by Salkin and others, used to intimidate and/or oppress Mr. Hutchison, causing severe mental anguish and emotional harms to Mr. Hutchison and his family.

208

Plaintiff has been in fear of loss of life, constant paranoia, and deep depression, due to threats made by Defendants' Lee Salkin, Mark Waterbly and co-conspirators; as well as, racially motivated extraordinary circumstances, as fraudulent acts and/or omissions, committed by Third Party Defendant co-conspirators, with intent to intimidate, torment, harass, and embarrass the Plaintiff. Mr. Hutchison

has suffered under Defendants acts and/or omissions, accessing
implantable technological devices embedded in Mr. Hutchison's body,
unlawful intrusion upon seclusion, deemed unlawful under the Electronic
Communications Privacy Act of (1986), 18 USC §2510-3121; and for the
effect on state laws under RCW 9.61.260(1)(c)(3)(b)(5); As well as,
under 42 USC§1320d-7a (2)(A)(i)(I)- to prevent fraud and abuse;
collusion with Third-Party Defendants for racially-motivated
conspiratorial acts, as co-conspirators, under 42 USC §1985(3)
deprivation of inalienable rights to privacy, bodily integrity,
personal autonomy under Due Process Clause of the Fourteenth Amendment.

209

Plaintiffs fled the State of Washington, and have been, unable to bring
a private action and/or notice of wrong doing within the 180 day window
against Defendants Honeywell Electronics due to impossible
circumstances based in scientific fact of neurotechnology electronic
microchips used by all Defendants, constituting intentional acts of
outrageous and extreme conduct as subordinates of Live Well Counseling
and Honeywell LLC., conspiratorial acts of racially motivated threats,
poisoning, and misuse of implantable, radio frequency identification
electronic chip micro-robotic neurotechnology GSO satellite based
monitoring devices embedded in the Hutchison's brain and body.

210

Explained with specificity from the Plaintiff Mr. Hutchison's
perspective, "I attended a therapy session with Lee W. Salkin at Live
Well Counseling in Spokane, WA on June 8th, 2018 at 12:00pm after
receiving a phone call from Lee W. Salkin two days prior to
rescheduling my appointment from 2pm to 12pm. He said, "It is due to
personal events over the weekend and he had to change my appointment."
Which was lie to get Mr. Hutchison to arrive on June 8th 2018 Live Well
Counseling to follow thru with the racially motivated plot and/or
scheme between Salkin along with his cousin and another Nighthawk of
the KKK, to "swindle" Mr. Hutchison out of an account with Cayman
National Bank. Defendants are the proximate cause for all non-economic
damages suffered, by the Plaintiffs.

211

**101**

All Defendants are liable for all of Mr. Hutchison's actual economic damages suffered; including but not limited to, being blacklisted by employers, being subjected to various harassment by third-party private persons acting under duress and/or by their own free will with intent, without justification, or provocation, causing economic hardship damages, for lost wages and are calculated based on the average annual wage under RCW 50.04.355 of Washington State is $65,640.00 USD times a lifetime career of thirty-five years of cost of living adjustment to wages including bonuses, plus fringe benefits for medical insurance, 401K investments, as well as, real estate property as economic damages.

<div align="center">212</div>

Defendants are liable for all of Mr. Hutchison's non-economic damages, proximate caused by the misuse and abuse of ingestible implantable neural nanotechnology devices, implanted in Mr. Hutchison brain and body. All Defendants with access to Mr. Hutchison's Biometric Identifiers used data to spy, harass, embarrass, induce negative thoughts, control his bodily functions, jeopardize his safety, intrusion upon seclusion, and is the indirect cause of extreme amounts of mental anguish and severe mental stress. As well as, proximate causing interference in Mr. Hutchison's life, including but not limited to: relationships both personal and professional, economic expectancy, paranoia, mistrust of government, mistrust of mental health physicians, mistrust of thoughts, amounting to years of poverty, pain, and suffering without injunction.

<div align="center">213</div>

Honeywell Electronics, Live Well Counseling, DARPA, and other government subordinates' Gross Misconduct is the actual and/or direct cause of interference with economic expectation, as well as failure to succeed within the quasi contractual agreement implied in law, with third-party Honeywell Electronics. And, is the proximate and/or direct cause, for Plaintiffs non-economic damages, including but not limited to: emotional distress, severe mental anguish, psychological traumas, and reputation damages; As well as, jeopardized the safety, well-being, and health of Mr. Hutchison and his family members.

<div align="center">214</div>

<div align="center">**102**</div>

The State Washington indirectly aided and abetted W.A.S.P.C., Spokane PD, by authorizing the research to conduct human experiments using sophisticated surveillance equipment to monitor Plaintiffs, as well as, collusion between white supremacists, government agents, officials, and/or officers as local and state level employees, as well as, coconspirator third-party defendant, federal contractors, subcontractors, and unknown FLEA and/or unknown federal officials, officers, and/or employees of Federal Agencies and the United States is liable, for Mr. Hutchison's actual damages under 50 USC §1810 and 50 USC §1828.

215

Mr. Hutchison is an aggrieved person and entitled to relief from all Defendants for intentional wrongs; including but not limited to: Fraudulent Misrepresentation, Tortuous Deprivation of Constitutionally Protected Rights, Tort Negligence, Tortuous Inference with Contract & Economic Expectancy, Tort of Intentional Infliction of Emotional Distress, Tort of Outrage, malicious intent to stalk, intimidate, torment, harass, embarrass, oppress, bio-technologically enslave, as well as, other violations not stated in this claim; including but not limited to: substantive rulings, state laws, federal laws, and international human rights laws, against the possession, misuse, and abuse of bio-weapons, torture, slavery, and human experimentation, as the proximate cause for all of Mr. Hutchison's damages especially the "swindled" foreign bank account with Cayman National Bank in the full lifetime value amount of $69,178,753,430,598,000 and 00/100 cents.

216

Plaintiffs are informed and thereon allege that all Defendants' aforementioned acts were intentional, willful, malicious, oppressive and despicable, and/or were done in willful and conscious disregard of the rights, welfare, and safety of Plaintiffs, and the proximate cause of severe physical and psychological pain and suffering, justifying entitlement to injunctive relief, monetary compensation for actual economic damages suffered, and the awarding of punitive and exemplary damages against all Defendants, as well as any other relief deemed just and proper by the court.

TWELFTH CLAIM OF RELIEF

(Intentional Infliction of Emotional Distress, 50 USC §1828; Racially
Motivated Conspiracy, Trespass to Chattel, 42 USC §1985(3); Computer
Fraud and Abuse Act of (1986), 50 USC §1810; Washington Cybercrime Act
(2015), §9A.90.010-§9A.90.110, Violation of Re-enslavement Clause:
Thirteenth Amendment, 42 USC §1986)


217

Mr. Hutchison refers to the "badges and incidents of slavery" to
support within each and every allegation contained in the preceding
paragraphs as if set forth fully herein. Reflects accounts of a
historical pattern of racially motivated discrimination, racial
profiling, unlawful conduct, and torture, as well as, unethical human
experiments contained in the preceding paragraphs as if set forth fully
herein against all Defendants. Although subordinates of Live Well
Counseling and Honeywell Electronics are private persons, and not state
officials, I instruct you that the relationship between Live Well
Counseling and Honeywell Electronics and the state is sufficiently
close that they were acting under color of state law. In other words,
this element of Mr. Hutchison's claim is not in dispute, and you must
find that this element has been established.

218

Mr. Hutchison is informed and reasonable believes and thereon alleges
that all Defendants' aforementioned acts were intentional, willful,
malicious, oppressive and despicable, and/or were done in willful and
conscious disregard of the rights, welfare, and safety of Mr. Hutchison
as a form of neurotechnology slavery in violation of Article 2 and
Article 6 of The Slavery Convention of (1926), September 25, (1926), 60
L.N.T.S. 253, Amended on Dec. 7, 1953, 183 U.N.T.S. at 51 (1953);
actionable under 42 USC §1985(3).

219

Live Well Counseling, Honeywell Electronics, Virtual Technologies, The
State of Washington, W.A.S.P.C., City of Spokane, S.P.D., NSA, FBI,
DHS, DIA, IARPA, DARPA, and other unknown federal agents of federal

agencies unreasonable search of Plaintiffs brain and body using ingestible implantable neurotechnology electronic microchip devices, constitutes "brain-jacking", during the non-consensual human medical experiment under the BRAIN Initiative Program was imposed out of racially motivated oppression, intelligence gathering, medical curiosity, and "neural connectcome", without regard for the impact on its human subjects. The non-consensual human medical experiment deprived Plaintiffs of their enumerated right to Privacy under the Unreasonable Searches Provision of the Fourth Amendment of the United States Constitution.

220

Live Well Counseling received compensation for services rendered via electronic payment remittance from Washington State Medicaid, Cigna with an Incident # 10367032-01, and other forms of payment from the patient. Defendants Lee W. Salkin and Live Well Counseling acting as a 'health care clearinghouse', had a duty of care under 42 USC §1320d-2d(1)(B) following policies and security procedures which isolate the activities of 'health care clearinghouse', with respect to processing information in a manner that prevents unauthorized access to such information by such larger organizations.

221

Defendant Lee W. Salkin and Live Well Counseling, breached that duty, by failure to adhere to 42 USC §1320d-2d(1)(2) Safeguards- Each 'person', described in section 1320d-1(a) of this title who maintains or transmits health information shall maintain reasonable and appropriate administrative, technical, and physical safeguards –
(A) to ensure the integrity and confidentiality of the information;
(B) to protect against any reasonably anticipated –
(i) threats or hazards to the security or integrity of the information;
(ii) unauthorized uses or disclosures of the information; and
(C) otherwise to ensure compliance with this part by the officers and employees of such 'person'.

222

Defendant Salkin was fully aware of his intentions to swindle Mr. Hutchison, knowing that his acts would cause severe injuries;

**105**

constituting fraud, and is the actual and/or direct cause of Plaintiff
Mr. Hutchison's economic damages, as well as, the proximate and/or
indirect cause of Plaintiff Mr. Hutchison's severe mental anguish
creating years of paranoia and distrust of mental healthcare
professionals, and decision making capabilities.

223

Defendants W.A.S.P.C., IARPA, DARPA, NSA, FBI, and Honeywell
Electronics subordinates' conspiratorial acts of collusion are the
proximate and/or indirect cause of Mr. Hutchison's actual economic
damages, in the form of, financial harms, derived from, loss wages,
loss of real estate property, as well as, non-economic damages causing
mental suffrage, through extreme emotional distress, for years after
the intentional acts by all Defendants. Plaintiff Mr. Hutchison, has
lost sleep suffering nightmares, and is in a constant state of paranoia
and distrust of healthcare professionals, and others with access to
Plaintiffs personal and private information, making it difficult for
Mr. Hutchison to build sustainable relationships, both personal and
professional, causing financial instability, making it difficult for
Mr. Hutchison to obtain and retain several jobs since the incident of
fraud occurred, as well as, causing Plaintiffs' inability to live a
productive life, directly and indirectly affecting the lives of
Plaintiffs' children and other family members. Pursuant to FRCP Rule 9,
since fraud is at issue in these allegations the specificity of fact is
explained as so:

224

All Defendants are liable for intentional civil wrongs, tortuous acts,
in violation of the US Constitution, by being parties to a racially
motivated conspiratorial collusion plot with intent to defraud Mr.
Hutchison actionable under 42 USC §1985(3); for claims based on
scientific fact of electronic chip neurotechnology devices capable of
neural integration and remote access via brain computer interface
developed by DARPA, and was used by all Defendants while committing
acts of fraud, as well as, all other Defendants committed electronic
interception of Biometric Identifiers, and/or other methods of cyber

security intrusion in violation of, 18 USC §2511(2)(a)(iii)(d); and, actionable under 50 USC §1810.

225

Defendants Salkin, Digital Pirates affiliated co-conspirators, as well as, other private persons, and unknown agents, officers, officials, and employees in their individual capacity, who may or may not have a skilled ability as black-hat hackers, cyber intrusion, and/or permissive access to DARPA BC/I; Furthermore, Plaintiffs are entitled to recovery of civil damages under 18 USC §2520(b) Any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate relief includes –
(1) Such preliminary and/or equitable and/or declaratory relief as may be appropriate;(2) Damages under subsection (c) and punitive damages in appropriate cases; and (3) Reasonable attorney's fees and other litigation costs reasonably incurred.

226

Defendants Digital Pirates or their affiliated co-conspirators have a skilled ability, to gain access to data and/or breach encrypted cybersecurity information pertaining to satellite based monitoring radio frequency ingestible implantable neurotechnology device used to spy on Plaintiff Mr. Hutchison and his family, constituting cyber stalking under 47 USC§223, and is actionable under 42 USC§1985(3).

227

Defendants Digital Pirates or their affiliated co-conspirators have a skilled ability, intercept data and/or personal and private Biometric data belonging to Plaintiff Mr. Hutchison, including but not limited to, real time location information. These unlawful acts are prohibited under 18 USC §2511a- Interception and disclosure of wire, oral, or electronic communications, prohibited and actionable under 50 USC §1810.

228

**107**

Due to the age of technology and computer crimes, Plaintiffs' right to privacy under Substantive Due Process Clause of the Fifth and Fourteenth Amendment, is a fact at issue in these allegations of fraud. Both Dean W. Prosser, The Law of Torts, §117 (4th ed. 1971), and the advisers of 3 Restatement (Second) of Torts §652A (1977), agree that the right to privacy comprehends four distinct rights, "Which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff 'to be let alone.'" Prosser at 804.12, the four privacy rights violations stated in this claim are as so:

229

On August 18, 2017, while working a 12 hour night shift at Honeywell Electronics located in Spokane Valley, WA, Mr. Hutchison was working and visually inspecting a precision cut made on the Mori Seiki lathe in the Roughing Department, when at approximately 9:15pm Mr. Hutchison approached by two employees, Brain Adams and Alex Duke, placed 'microchips' in Mr. Hutchison's cup of water, directly causing Mr. Hutchison to receive an in-vivo ingestible neural nanotechnology biomedical implant capable of complete mapping and capturing of all biometric identifying data of Mr. Hutchison's brain and body, as well as, allows a 'person with access', to the DARPA Brain to Computer Interface to remotely monitor Mr. Hutchison in Real-Time via satellite based monitoring, as well as, capable of manipulating different neurological functions of Mr. Hutchison's brain."

230

Plaintiffs' testimony also states on August 18, 2017, between 8:30pm to 9:30pm the ingestible neural nanotechnology microchip devices came online connected to a DARPA Brain Computer Interface that Mr. Hutchison saw with his own eyes, during a walk by of Mostrom's computer monitor while on the job site at Honeywell Electronics.

231

1)Invasion- All Defendants acts constitute an intentional intrusion upon seclusion by way of invasive access to the Plaintiffs, biological medical information, personal and private medical data both stored and in real-time using ingestible microchip neurotechnology, low level

frequency electromagnetic radiation, radio frequency nanotransmitters, and/or other forms of sophisticated surveillance equipment on Plaintiffs, without consent or permission; including but not limited to, 'hacking' Plaintiffs personal and private technological devices, as well as, implanting an ingestible neural nanotechnology device indirectly into Mr. Hutchison brain, and 'brain-jacking' Plaintiffs' neural prosthesis implant, without consent or permission.

232

2) Offensive- All Defendants are liable directly and/or indirectly for acts of non-consensual appropriations of the Plaintiffs name or likeness, involving the misuse of all-encompassing biometric private and personal data captured directly from Mr. Hutchison's brain and body; including but not limited to, name, voice, sight, whereabouts, habits, vital signs, thoughts, precognition, algorithmic predictions, creating a false image of Plaintiff, constituting unlawful invasion to commit defamation of character, and/or deprivation of fundamental rights to freedom of thought and a penumbra of constitutionally protected rights, in which a reasonable person would be offended by such acts and omissions.

233

3) Private- All Defendants are liable directly and/or indirectly for acts of unreasonable publicity of Mr. Hutchison's private life with 'actual malice', including but not limited to: racially motivated inflammatory statements, subterfuge, and/or to sabotaging Plaintiffs' jobs, by rumors with false accusations on Plaintiff being involved in criminal activities and/or felonious acts to family members, members of social organizations, and employees of businesses/ companies that Plaintiff was gainfully employed on a third-party contractual basis, as well as, private persons conducting business with the Plaintiff's sole proprietorship, causing economic damages and further non-economic harms of severe emotional distress, depression, severe mental anguish, and psychological traumas.

234

4) Publicity- All Defendants are liable directly and/or indirectly for acts of private publicity and/or unlawful intrusions of Plaintiffs'

**109**

right to freedom of thought, personal privacy, personal autonomy, bodily integrity, and privacy of technological devices, as well as, indirectly having access to other private possessions belonging to Mr. Hutchison, constituting an unreasonable search and seizure of Mr. Hutchison's private and personal life. All Defendants acts of exposing Plaintiffs life, has caused emotional distress, severe mental anguish, psychological traumas and reputation damages, as well as, economic losses suffered; including but not limited to, blacklisted by employers, subjected to various forms of harassment, by third-party private persons, as gang-stalking and/or cyberstalking, acting intentionally and/or unintentionally while affiliated with the civil regime.

235

On June 8th 2018, Defendant Lee Salkin's acts, by way of fraud swindled Mr. Hutchison, by forgery, on a Cayman National Bank draft form containing Plaintiffs personal financial information constituting intentional Trespass to Chattel (Restatement of (Second) of Torts §217, 1965). The acts and/or omissions performed by all Defendants are violations of the right to be free from unreasonable intrusion of ingestible implantable neurotechnology electronic microchip devices, that comes with both civil liability and criminal liability for possible criminal acts, under relevant parts of the Computer Fraud and Abuse Act of (1986), actionable under 18 USC §1030, for fraud and related activity in connection with computers; As well as, under relevant parts of Title 9A Chapter 9A.90 RCW the "Washington Cybercrime Act" §9A.90.010 - §9A.90.110; actionable under 42 USC §1985(3).

236

Explained in specificity using RCW 9A.90.030 Definitions for example: "Defendants gained 'access' to 'data' on 'data network' by manipulating 'data program' to invasive use 'data services' to intrude upon 'data system' in Plaintiffs possession and/or financial institutions digital records, 'without authorization' to obtain 'Identifying Information' and input 'malware' to infect, consume, modify, destroy, record, or transmit data, or in some other fashion usurp the normal operation of the 'data', 'data system,' or 'data network.'"

**110**

237

All Defendants accessed private data on technological devices violating RCW 9A.90.080 "electronic data tampering in the first degree", to run code breaking software causing violations of §9A.90.040(1)(b), for computer trespass in the first degree, with intent to commit fraud and/or theft of Plaintiffs private and personal financial information. All Defendants as private persons "circumvented technological access barriers," or by other means allowing a remote person with access to monitor and/or record and/or have, "Without the express or implied permission" of the Plaintiffs and/or financial institutions.

238

All Defendants' acts and/or omissions are degrading to human dignity, blatantly racially motivated and obviously fraudulent through conspiratorial collusion with local, state, and federal government agents and/or private sector participants of the BRAIN Initiative Program, and failing to install proper cyber security features on ingestible implantable neurotechnology devices and/or recklessly allowing Defendants Salkin and co-Defendant private persons to gain access, or failing to infer and/or prevent all Defendants from gaining access to sophisticated surveillance equipment data and/or ingestible micro-robotic neurotechnology electronic microchip devices nano-transceiver and/or neurotransmitter data, actionable under 42 USC §1986; and is the proximate cause for Plaintiff's pecuniary losses and non-pecuniary damages directly resulting from deceptive fraudulent misrepresentations in connection with neurotechnology.

239

For example, Defendants' acts are similar to relevant parts of Re Equifax, Inc., Customer Data Security Breach Litigation, 1:17-md-2800-TWT; "when hackers stole personally-identifiable information of nearly 148 million American consumers by exploiting vulnerability in certain software used by Equifax. Plaintiffs' claim for attorneys' fees under Georgia law was allowed to proceed because the Plaintiffs' made sufficient allegations of 'bad faith.' The court found "Plaintiffs have alleged the specific misrepresentations that the Defendants made, which Defendants made them, how such representations were false, and why the

**111**

Defendants knew or should have known that those statements were false."
Plaintiffs alleged Defendants made false or misleading statements
and/or omissions about the sensitive information in Equifax's custody,
the vulnerability of Equifax's internal systems, and Equifax compliance
with Cybersecurity regulations and best practices. The plaintiffs were
awarded compensatory damages from identity theft or fraud among other
things." And, is relevant to Plaintiffs Gross Misconduct, 42 USC §1983;
claim against DARPA, IARPA, NSA, FBI, DHS, DIA, and the USG BRAIN
Initiative Program; for intentional and/or negligent and reckless
tortuous conduct of subordinates, constituting bad faith, as well as
gross negligence for racially motivated failure to infer with the
racially motivated conspiracy as an equal protection violation,
actionable under the Fourteenth Amendment of the US Constitution.

240

Mr. Hutchison and his family have suffered as a result of the
intentional disregard of constitutional protections as non-consensual
human research subjects, in as much as a breach of duty to secure the
ingestible implantable sophisticated surveillance devices,
cybersecurity, as well as, Plaintiffs personal and private real-time
location data via Orbital Satellite and private Biometric Identifier
medical information obtained unlawfully and/or lawfully using
neurotechnology electron microchips, and is the proximate cause of all
damages due to Defendants misuse and abuse with intent to commit fraud,
actionable under Plaintiffs §1985(3); racially motivated conspiratorial
collusion intent to defraud claim. Resulting in compromised biomedical
information on Mr. Hutchison and his family, compromised personal
biometric identifiable information, that compromises every aspect of
Plaintiffs personal privacy during all interactions of daily life using
cerebral cortex functions, of the brain; including but not limited to:
mind speech and thoughts, sight thru eyes, hearing thru ears, smelling
thru nose, speech thru mouth, physical touch and movement, as well as
multiple forms of the Hutchison family's real-time location information
via GPS, with allegations of reckless endangerment derived from
negligence has indirectly been leaked through cybersecurity intrusive

acts by all Defendants as co-conspirators, and will continue to plague all Plaintiffs without an injunction.

241

Mr. Hutchison reasonable believes he was harmed by private persons of private sector entities, unknown government agents of federal agencies and Lee Salkin, Mark Waterbly, Mostrom and other conspirators, liable for outrageous conduct of conspiratorial collusion utilizing United States BRAIN Initiative Program neurotechnology and/or DARPA BC/I, while acting in their individual and/or official capacities and are responsible for all harms done, because they directly and/or indirectly aided and abetted white supremacists conspirators by providing them access to sophisticated surveillance equipment, "neuroweaponry", used in the commission of the acts of fraud, constituting tortuous outrage; As well as, a direct and/or proximate cause, for Plaintiffs severe physical and psychological pain and suffering, incurred expenses, and actual economic damages. These injuries have caused and will continue to cause Plaintiffs great physical and mental pain and suffering.

242

All Defendant's acts are the proximate cause for actual damages, suffered by the Plaintiffs, resulting in the actual loss of personal property, as a proximate cause of loss of income with Honeywell Electronics annually grossing over $46,000.00 USD annually. Damages for lost personal property under RCW 64.04.010 and are calculated based on Fair Market Value of the time of purchase of $135,000.00 USD located at 2406 South Pines Rd. Spokane Valley, WA 99206, as of December 2020, with a Fair Market Value of $286,750.00 USD. As well as, a swindle foreign bank account with Cayman National Bank with a LTV of $69,178,753,430,598,000 and 00/100 cents.

243

The Hutchison's requests injunctive relief against illegal interception of Biometric Identifier data under 18 USC §2521(2)(A)(i-iii). As well as, monetary and other appropriate equitable relief for damages suffered under subsection(2)(A), medical expenses, reasonable attorney's fees and other ligation costs, thereby justifying the awarding of punitive and exemplary damages against all Defendants.

Plaintiffs have suffered other economic and non-economic damages as severe physical and psychological pain and suffering, and thereby entitled to injunction, monetary compensation, and all other forms of relief deemed just and proper by the court.


THIRTEENTH CLAIM OF RELIEF

(Computer Fraud and Abuse Act (1986), 18 USC §1030; Gross Negligence, 42 USC §1985(3); The Washington Cybercrime Act (2015) §9A.90.010–§9A.90.110; Electronic Communications Privacy Act (1986), Tortuous Conversion, 42 USC §1986; The HIPAA Act of (1996), 42 USC §1320d-2;)


244

Mr. Hutchison's, basis for a claim of relief under 42 USC §1985(3), is an alleged racially motivated conspiracy, for purposes of direct and/or indirect unlawful conversion of the entire value and/or funds available, within 'patient' Mr. Hutchison's personal financial account with Cayman National Bank a Foreign Banking Institution. As well as, threats of harm to the 'Patient' Robert Charles Hutchison and his family, due to Defendants affiliations with nation-wide White Supremacists organizations, centrally located in a region of the United States, well-known for such activities. Mr. Hutchison was under duress and feared retaliatory acts, because of technologies used by Salkin and others, with a long arm reach, and network to follow thru with threats made by Salkin, used to intimidate, humiliate, discriminate, torture, and/or oppress Mr. Hutchison, causing psychological harms to Mr. Hutchison and his family.

245

Mr. Hutchison has been in fear of loss of life, constant paranoia, and deep depression, due to "neural weaponry" and threats made by Lee Salkin and others with remote access to the ($N^3$) Neurotechnology and/or (NESD) Intelligent Neural Interface; as well as, racially motivated conspiratorial circumstances, encompassing fraudulent acts and/or omissions, committed by Live Well Counseling and Honeywell Electronics subordinate co-conspirators, by unlawful acts in violation of RCW 9.61.260(1)I,(3)(b)(5), for intrusion of electronic devices, deemed

**114**

unlawful under the Electronic Communications Privacy Act of (1986)
codified at 18 USC §2510-§3121 and for the effect on state laws under
42 USC §1320d-7a(2)(A)(i)(I) to prevent fraud and abuse; for racially-
motivated conspiratorial acts, with help from co-conspirators,
actionable under 42 USC §1985(3); Plaintiffs fled the State of
Washington and has been in hiding, unable to bring a private action
and/or notice of wrong doing within the 180 day window against the
Defendants.

246

Mr. Hutchison is entitled, under RCW 19.86.093(3), to bring a private
action against Defendants Lee W. Salkin and Live Well Counseling, under
RCW 19.86.020; for acts of Malicious Misconduct on June 8th, 2018,
fraudulent misrepresentation and/or deceptive conduct as a medical
practice to obtain funds by forgery, identity theft, and/or
"swindling", constituting Tortuous Conversion (Restatement (Second) of
Torts §222A, 1965). And, the direct cause for Plaintiffs' pecuniary
damages, including but not limited to, the entire lifetime value of a
septuplicated foreign bank account with Cayman National Bank, and the
indirect cause for breach of contractual agreement between Honeywell
Electronics and Live Well Counseling. Defendants were hired to 'treat'
Plaintiff as in a patient-physician relationship for services rendered
by Defendants Lee Salkin and Live Well Counseling.

247

Mr. Hutchison has a justifiable reason to believe 'covered entity' Live
Well Counseling, LLC and subordinate employee, Lee W. Salkin as
Defendants, failed to follow procedures under RCW 70.02.150 for
Security Safeguards. And, were not complying with the administrative
simplification provisions codified at 42 USC §1320d-2, under section
264(2) of the HIPAA Act of (1996) relating to the privacy of
individually identifiable health information. As well as, standards for
information transactions and data elements under: 42 USC §1320d-2a (2)
(A) Health claims or equivalent encounter information I Health care
payment and remittance advice (J) Electronic funds transfers- Plaintiff
brings additional allegations against Defendants for violating the
implied contract, "healthcare provider agreement" and short term

disability contract with Cigna as a healthcare provider paid for by
Plaintiffs third-party employer.

248

Lee W. Wegenke Salkin has an educational background in the respective
discipline, qualifying Salkin to conduct business as a Healthcare
Provider. Defendants were trained and notified of the law under 42 USC
§1320d-2a(d)(1)(A)(iii)- the need for training 'persons' who have
access to health information; Live Well Counseling meets the health
care provider description under 42 USC §1320d-2d(1)(v) the needs and
capabilities of small 'health care providers and 'rural health care
providers (as such providers are defined by the Secretary); As well as,
based on information pertaining to health care providers, Defendants
Lee W. Salkin as an employee of Live Well Counseling conducts business
in the State of Washington located at 200 N Mullan Rd Ste 222, Spokane
Valley, WA 99206.

249

Live Well Counseling received compensation for services rendered via
electronic payment remittance from Washington State Medicaid, Cigna
with an Incident # 10367032-01, and other forms of payment from the
patient. Defendants Lee W. Salkin and Live Well Counseling acting as a
'health care clearinghouse', had a duty of care under 42 USC §1320d-
2d(1)(B) following policies and security procedures which isolate the
activities of 'health care clearinghouse', with respect to processing
information in a manner that prevents unauthorized access to such
information by such larger organizations.

250

Defendant Lee W. Salkin and Live Well Counseling, breached that duty,
by failure to adhere to 42 USC § 1320d-2d(1)(2) Safeguards- Each
'person', described in section 1320d-1(a) of this title who maintains
or transmits health information shall maintain reasonable and
appropriate administrative, technical, and physical safeguards –
(A) to ensure the integrity and confidentiality of the information;
(B) to protect against any reasonably anticipated –
(i) threats or hazards to the security or integrity of the information;
and (ii) unauthorized uses or disclosures of the information; and

(C) otherwise to ensure compliance with this part by the officers and employees of such 'person'.

251

Live Well Counseling breach of that duty, allegedly constituting fraud, caused several injuries and severe mental anguish to Mr. Hutchison leading to years of paranoia and distrust of healthcare professionals. Defendants' acts were the proximate and/or direct cause of the injury, Lee W. Salkin was fully aware of his acts and omissions, and had intent to swindle Mr. Hutchison, knowing that his acts would cause injuries.

252

Mr. Hutchison has suffered actual economic damages, including but not limited to, loss wages, loss of real estate property, and a stolen Cayman National Bank account, as well as non-economic damages, in the form of suffrage of extreme emotional distress for years after the intentional acts of Lee W. Salkin and others, Mr. Hutchison, has lost sleep suffering nightmares, and is in a constant state of paranoia and distrust of healthcare professionals, and others with access to Plaintiffs personal and private information via neurotechnology, making it extremely difficult for Mr. Hutchison to build sustainable relationships, both personal and professional, causing financial instability to obtain and retain several jobs since the incident of fraud occurred, as well as, causing Plaintiffs' inability to live a productive life, directly and indirectly affecting the lives of Plaintiffs' family members.

253

Aforementioned Defendants acts constitute a racially-motivated conspiracy, actionable under 42 USC §1985(3) have affected the Plaintiff in many ways. The Plaintiff seeks relief under RCW 70.02.170(2) for actual economic damages suffered from fraudulent acts committed by Defendants; as well as, treble damages request under RCW 19.86.090, for outrageous, extremely malicious conduct of unethical human experimentation indirectly leading to tortuous inference with contract.

254

Defendant Salkin while in his official capacity, as a counselor and/or partner and/or employee, with Live Well Counseling, as a Health Care Provider and/or 'covered entity', committed acts and/or omissions constituting fraud by 'swindling', 'patient' Mr. Hutchison, obtaining signature by unlawful means with intent to defraud by 'swindling' and deprive his 'patient' Mr. Hutchison. Defendants received compensation for services rendered via electronic payment remittance from Washington State Medicaid, Cigna Incident number 10367032-01, and other forms of payment from the patient. As well as, a possibility of "kickbacks" from Medicaid and other Health Insurance Providers who issued payments to Live Well Counseling.

255

Mr. Hutchison is informed and has reason to believe Live Well Counseling as a Healthcare provider has unlawfully used proceeds, "fruits of unlawful gain 'swindling'", made to the 'covered entity' relocating to a different location; Mr. Hutchison looks to relevant statutes to seek relief and/or remedy for harms suffered as a derivative of Defendants' malicious medical malpractice acts and/or omissions directly and/or indirectly violating Federal statutes and Washington state laws. Defendants were aware of the 'patient' vulnerabilities due to a Patient-Provider Relationship; and should be brought to justice for the wrongdoings, of deprivation of inalienable rights to life and liberty interests, privacy, bodily integrity, and personal autonomy under Due Process Clause of the Fourteenth Amendment to the United States Constitution.

256

Defendants or their affiliated co-conspirators have a skilled ability, to gain access to data and/or breach encrypted cybersecurity data on DARPA's ($N^3$) Next Generation Neurotechnology connected to a (NESD) Neural Engineering System Design Intelligent Neural Interface used to spy on Mr. Hutchison and his family. Defendants or their affiliated co-conspirators have a skilled ability, including but not limited to: intercept data, personal and private biometric identifiers data, and

**118**

telecommunications data, as well as real-time location information belonging to all Plaintiffs.

257

This unlawful act is prohibited under 18 USC §2511a- Interception and disclosure of wire, oral, or electronic communications, prohibited. On August 18, 2017 Mr. Hutchison orally ingested a micro-robotic electronic chip, "neurotechnology" implant that allows a "person with access" to a DARPA BC/I to remotely monitor and manipulate different neurological functions of Mr. Hutchison's brain. Between 8:30p to 9:00p the Defendants hacked Mr. Hutchison's cell phone, implanted electronic chip "brain-jacking", and other electronic devices via NSA access to advanced tracking technologies, during my shift at Honeywell Electronics". Extreme amounts of emotional distress, severe mental anguish, and torture have occurred as a result of said invasion.

258

Due to the age of technology and computer crimes, Plaintiffs' right to privacy under Substantive Due Process Clause of the Fourteenth Amendment, is a fact at issue in this claim. Both Dean W. Prosser, The Law of Torts, §117 (4$^{th}$ed. 1971), and the advisers of 3 Restatement (Second) of Torts §652A (1977), agree that the right to privacy comprehends four distinct rights, "Which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff 'to be let alone.'" Prosser at 804.12, the four privacy rights violations stated in these factual allegations as so:

259

1) Invasion- The Defendants acts constitute an intentional intrusion upon seclusion by way of invasive access to Mr. Hutchison's, biometric biological medical information, personal and private medical data both stored and in real-time using electromagnetic, radio frequency, and/or other forms of sophisticated surveillance equipment on Plaintiffs, without consent or permission; including but not limited to, 'hacking' Plaintiffs personal and private technological devices, as well as, implanting and 'brain-jacking' Plaintiffs' neural prosthesis implant without consent or permission.

260

2) Offensive- Defendants acts of non-consensual appropriations of the
Plaintiffs name or likeness, including but not limited to: the misuse
of all-encompassing private and personal data; Mr. Hutchison's name
and/or voice, as well as, signature and/or image of Mr. Hutchison,
constituting unlawful invasion to commit defamation of character,
and/or deprivation of privacy and fraudulent misrepresentation to
defraud, in which a reasonable person would be offended by such acts
and omissions.

261

3) Private- Defendants acts of unreasonable publicity of private life
with 'actual malice', including but not limited to: inflammatory false
statements, subterfuge, and/or to sabotage Mr. Hutchison and family
members, as well as members of social organizations, members of
businesses and/or companies that Mr. Hutchison was gainfully employed,
on a third party contractual basis, private persons conducting business
with Mr. Hutchison's sole proprietorship, causing further harms to Mr.
Hutchison in the form of severe emotional distress, depression, severe
mental anguish, and psychological traumas.

262

4) Publicity- Defendants acts of private publicity and/or unlawful
intrusions of Plaintiffs' personal autonomy, bodily integrity, and
technological devices, among other private possessions belonging to Mr.
Hutchison, constituting an unreasonable false light of Plaintiffs'
private and personal life. Defendants acts of exposing Plaintiffs life,
has caused emotional distress, severe mental anguish, psychological
traumas and reputation damages, as well as, economic losses suffered;
including but not limited to, blacklisted by employers, subjected to
various forms of harassment, by third-party private persons, acting
intentionally and/or unintentionally while under duress.

263

The alleged unconstitutional acts and/or omissions performed by the
Defendants were violations of the right to be free from unreasonable
intrusion of technological devices, that comes with both civil
liability for possible criminal acts, under relevant parts of the

**120**

Computer Fraud and Abuse Act (CFAA) codified at 18 USC §1030 – Fraud and related activity in connection with computers. Under relevant parts of Title 9A Chapter 9A.90 RCW the "Washington Cybercrime Act" §9A.90.010 – §9A.90.110; Explained in specificity using RCW 9A.90.030 Definitions for example:

264

"The Defendants gained 'access' to 'data' on 'data network' by manipulating 'data program' to invasive use 'data services' to intrude upon 'data system' in Plaintiffs possession and/or financial institutions digital records, 'without authorization' to obtain 'Identifying Information' and input 'malware' to infect, consume, modify, destroy, record, or transmit data, or in some other fashion usurp the normal operation of the 'data', 'data system,' or 'data network.'"

265

All Defendants "circumvent technological access barriers" by allowing a remote person, "Without the express or implied permission" of Mr. Hutchison and/or financial institution. Defendants accessed private data on technological devices violating RCW 9A.90.080 "electronic data tampering in the first degree", to run code breaking software causing violations of §9A.90.040(1)(b) computer trespass in the first degree, with intent to commit fraud and/or theft of Plaintiffs private and personal financial information.

266

Fraud in connection with computers is a fact within Mr. Hutchison's allegations and/or appropriate diligent discovery is necessary to prove Defendants acts were conspiratorial and relevant to Plaintiffs' §1985(3) claim. Pursuant to FRCP Rule 9(b), Defendants "Mens Rea" is a fact at issue in this claim and is pleaded with specificity as so:

267

Lee Salkin's' character is in question, as a result of intent, to defraud Mr. Hutchison, and/or swindle Mr. Hutchison, and said origins of Salkins' alleged white supremacists affiliations and/or ideology can be proven by Salkin's' character and family involvement in the Ku Klux Klan of Wisconsin. Defendant's two-faced character as a, "ghost-skin",

is based on deception. As defined by the FBI under white supremacist
infiltration of law enforcement intelligence assessment as, "ghost-
skin", is a white supremacist hiding in plain sight to deceive others
and conceal any affiliation with white supremacist organizations.

268

Defendant Salkin and his affiliates are members of white supremacists
groups in an area of the United States that stems from a history of
white supremacy. Plaintiff has first-hand accounts of Salkin's'
involvement in white supremacy and/or other familial circumstances of
Salkin's' involvement in white supremacy for generations, "obtained
from an anonymous source". Defendant Salkin and others premeditated
used sophisticated surveillance equipment, monitoring Mr. Hutchison,
his wife, and children on a day to day basis in real-time and was the
direct cause for Mr. Hutchison's economic losses as a result of fraud
that occurred On June 8th $^2$018. Mr. Hutchison attended a therapy session
with Salkin at Live Well Counseling in Spokane, WA. Mr. Hutchison
reasonable believes, Lee Salkin committed identity theft, fraud by
"swindling" and/or unlawful conversion of an offshore bank account,
because Mr. Hutchison was unaware of the Cayman National Bank account.
I was not told about the account due to my parents' untimely death
before I became the age of Thirty years old in which my inheritance
would have been available to me. Lee Salkin is/was a member of a secret
society of black-hat-hackers/code-breakers also known as "Digital
Pirates" in the state of Washington and Grand Dragon of the Ku Klux
Klan state of Wisconsin. I was informed of his affiliations and the
offshore account from an anonymous source. I have a reason to believe
Salkin in collusion with other coconspirators acts of fraudulent
misrepresentation, "swindling" and/or identity theft forgery on a
Cayman National bank draft form containing Plaintiffs personal
financial information. Resulting in a significant financial loss in an
amount exceeding $20 million USD with an expected Life Time Value by
year 2089, Plaintiff expected lifetime age limit of 103 years of age
based on an actual LTV product with Cayman National Bank, this account
was a unique product that septuplicated every 7 years with a maturity

date following the seventh year leading to an exponential lifetime value sum valued at $69,178,753,430,598,000 and 00/100 cents.

269

All Defendants other than the USG are liable for civil wrongs, for tortuous acts, and HIPPA Violations among other deprivations of constitutionally personal protections, committing electronic interception, or other methods of cyber security intrusion. Plaintiffs are entitled to recovery of civil damages under 18 USC §2520(b) Any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate relief includes:(1) Such preliminary and/or equitable and/or declaratory relief as may be appropriate; (2) Damages under subsection (c) and punitive damages in appropriate cases; and (3) Reasonable attorney's fees and other litigation costs reasonably incurred. I request injunctive relief against illegal interception under 18 USC §2521(2)(A)(i-iii). For, monetary and other appropriate equitable relief of actual economic damages suffered under subsection (2)(A); And, punitive damages, reasonable attorney's fees and other ligation costs, as well as any other form of relief deemed reasonable by this court.


FOURTEENTH CLAIM FOR RELIEF

(Violation of Equal Protection: Fourteenth Amendment, 42 USC §1983; Gross Misconduct, Violation of Unreasonable Searches & Seizures: Fourth Amendment; 50 USC §1810 & §1828; Gross Negligence, Bivens Action, 42 USC §1986)


270

Mr. Hutchison refers to the "badges and incidents of slavery" to support within each and every allegation contained in the preceding paragraphs as if set forth fully herein. Reflects accounts of a historical pattern of racially motivated discrimination, failure to infer with racist conspiracies, racial profiling, unlawful conduct, and

torture, as well as, unethical human experiments contained in the
preceding paragraphs as if set forth fully herein against all
Defendants. Unknown Federal Law Enforcement Agents of Federal Agencies
are government officials. In other words, this element of Mr.
Hutchison's claim is not in dispute, and you must find that this
element has been established.

271

The USG and state of Washington are liable for subordinates gross
misconduct, negligence and/or failure to infer with Complaints filed by
Mr. Hutchison alleging racially motivated conspiratorial collusion
between white supremacist and private sector participants in the US
Brain Initiative, because unknown persons of the DARPA and/or of the
FBI, acted in both their individual and/or official capacity under
color of law and authority of the USG as officers, officials, and/or
employees, set the conditions for, committed, directed, ordered,
confirmed, ratified, acquiesced, had command responsibility for, aided
and abetted, conspired to, and/or otherwise directly and/or indirectly
caused or facilitated unethical non-consensual DARPA NESD ($N^3$) Neuro-
tech integrated biomedical human experiments conducted on Mr. Hutchison
and other family members, constituting cavity searches in violation of
the unreasonable search and seizure clause of the Fourth Amendment to
the US Constitution; As well as, actionable under 50 USC §1828.

272

Unknown Agents of the NSA, FBI, and DHS are proximately liable for
failure to infer with the racially motivated conspiratorial collusion
deprivation with intent to defraud, actionable under 28 USC §2679(b)(1)
exclusiveness of remedy, due to intentional failure to acknowledge Mr.
Hutchison's claims of mistreatment, cyberstalking, and harassment among
other grievances. And, failure to impartially examine, including but
not limited to several attempts at arbitration and/or complaints and/or
FOIA requests for material facts as evidence sent via May 14th, 2019,
case number 107016; cease and desist letter, "Official Complaint", by
certified mail on May, 24th 2019 to the Department of Homeland Security
Civil Rights and Civil Liberties, the US Department of Justice IG, and
the US Attorney General Office, mailed on April 1st, 2020 to the US

Dept. of Justice Civil Rights Division all sent via certified mail with
the United States Postal Service, actionable under Bivens V. Six
Unknown Federal Agents 403 US 388 (1971).

273

Based on allegations including but not limited to: race based
conspiratorial collusion, fraudulent misrepresentations, and factual
allegations of R.C.H.II being assaulted while being remotely monitored
by technologies under the US BRAIN Initiative Program, Neurological
Initiative, and/or Human Genome Project; including but not limited to:
unethical neural nanotechnology biomedical human experiments that
caused physical harms to Mr. Hutchison's nine year old son, while he
attended University Elementary School located in Spokane Valley, WA
during the Fourth Grade year, Constitutional Violations, FISA Act
violations, Human Rights Violations, requests for emergency injunction
from in vivo ingestible implantable neurotechnology embedded in
Plaintiff's brain as a non-consensual human research subject, being
psychologically tortured, extremely unusually high amounts of
"cyberstalking" from a hacker group called "Crackers" and/or "Digital
Pirates", and being the individual who is the subject of a federal
investigation leading to the counter terrorism unit of the FBI drafting
the Black Identity Extremist Intelligence Assessment (2017); and
unknown FLEA and/or unknown federal officials, officers, and/or
employees of Federal Agencies and the United States is liable, for Mr.
Hutchison's actual damages under 50 USC §1810.

274

Mr. Hutchison alleges Gross Negligence derived from the intentional
disregard for attempts at reconciliation, injunction, and remedy thru
arbitration. Negligence is herein listed as such: (1)- The FBI has a
duty to under 42 USC §2000ee-1(A) (3), and under the Convention on the
Rights of Persons with Disabilities (CRPD) Article 15- Freedom from
torture or cruel, inhuman or degrading treatment or punishment, as well
as by the Declaration on the Protection of All Persons from Being
Subjected to Torture and Other Cruel, Inhuman, or Degrading Treatment
or Punishment, General Assembly Resolution 3452 (9 December 1975);
Article 5- The training of law enforcement personnel and other public

officials; Under Article 8- aggrieved persons shall have rights to
bring a claim and/or complaint to be impartially examined by
appropriate authorities of the state; Furthermore, to ensure that such
department, agency, or element has adequate procedures to receive,
investigate, respond to, and redress complaints from individuals who
allege such department, agency, or element has violated their privacy
or civil liberties; (2)-The FBI breached that duty by negligently
and/or intentionally failing to address the complaint filed by Mr.
Hutchison, including but not limited to: racially motivated conspiracy,
collusion, constitutional violations, FISA violations and microchip
implanted devices. That a reasonable person in a similar capacity
would've acted upon by impartially examining grievances in the
complaint and/or cease and desist letter among other correspondence via
certified mail, in pursuit of justice to equally protect the Plaintiffs
from further harm; (3)- The breach of duty has caused significant harms
to the Plaintiffs, including but not limited to: extreme mental
anguish, emotional distress, and other non-economic damages, as well as
actual economic damages in the loss of income, loss of real estate, and
loss of entire contents of a personal checking account with Cayman
National Bank;(4)- The FBI is directly liable for subordinates acts
and/or failure to act as the proximate cause for Plaintiffs Damages
suffered, due to the fact of foreseeability of risk to the Hutchison's,
and should have known that inaction would cause injuries; As well as,
indirectly liable for neglecting to infer with abnormally dangerous
activities, involving racially motivated conspiratorial collusion
intent to defraud and deprive during an unethical neurotechnology
research experiment.

275

The failure to infer with racially motivated conspiracies is a FBI
organizational habit established under FRE Rule 406 Habit; Therefore an
organization and/or a person's habit does not have to be corroborated
to be admissible, i.e., a single witness can establish an organization
and/or a person's habit. And, collusion is plausible due to decades of
well-documented factual evidence to support allegations via white
supremacists connections to governmental positions, as a grandfathered

method of a caste system, and has created grounds for, "meeting of the minds." Herein explained with specificity encompassing some, but not all of the history, of FBI's subordinates acts of collusion between white supremacist organizations is explained by relevant sources; these allegations are evidentiary historical facts under FRE Rule 803(16) Ancient Documents for evidence supported by Rule 901 and pursuant to FRCP 44(a)(1)(A) Proving official government publications, judicial proceedings and other relevant documents, of well-documented public knowledge, including but not limited to: newspaper articles, televised testimonies, documentaries, and other relevant media, used to validate allegations of a historical pattern of racially motivated unequal protections, constituting Gross Misconduct, as well as intentional foreseeable neglect to infer, actionable under 42 USC §1986; stated in Plaintiffs claims under cause of action on pages 6 to 30 paragraph 8 to 45.

276

Defendants have a habit of conducting discriminatory investigations on Black Americans in violation of The Civil Rights Act of (1870) under Section 2 states, "That is shall be the duty of every person and officer to give to all citizens of the United States the same and equal opportunity to perform any prerequisite.", and under Section 6 for racially motivate conspiracy. Due to scientific facts of ingestible personal identifiable neurotechnology tracking devices allegedly in possession of white supremacists, indirectly caused damages to all Plaintiffs, and due to the historical failure to infer with racist conspiracy plots and schemes perpetrated by the KKK with government aid, causes a "chilling effect" fear of future harms, constituting Equal Protection Violations, actionable under 42 USC §1983.

277

Mr. Hutchison and family are informed and thereon allege that all Defendants' aforementioned acts were intentional, willful, malicious, oppressive and despicable, and/or were done in willful and conscious disregard of the rights, welfare, and safety of Plaintiffs, and the proximate cause of severe physical and psychological pain and suffering, justifying entitlement to injunctive relief, monetary

compensation for actual economic damages suffered, and the awarding of punitive and exemplary damages against all Defendants, as well as any other relief deemed just and proper by the court.

## FIFTEENTH CLAIM FOR RELIEF

(Cruel and Unusual Punishment: Eight Amendment Violations, 42 USC §1986; Due Process and Equal Protections: Fourteenth Amendment Violations, 42 USC §1983; Malicious Misconduct, Abuse of Power, Racially Motivated Conspiratorial Collusion, 42 USC §1985(3); Federal Question, 28 USC §1331)

278

Plaintiffs herein incorporate by relevant allegations, a pattern of racial profiling and collusion between white supremacist and Spokane PD, W.A.S.P.C. and/or racially motivated failure to equally protect and/or infer with a racially motivated conspiracy to deprive Mr. Hutchison of alienable and inalienable rights and/or life and liberty interests in violation of the Equal Protections Clause, as well as, Due Process Clause of the Fourteenth Amendment of the United States Constitution.

279

The constitutionality of state based subcutaneous and other technology research conducted directly by the State of Washington, by authorizing W.A.S.P.C. to conduct SBM on criminals and other offenders under HOUSE BILL 1142 (2009-10) is in question and this court has authority under 28 USC §1331 to answer. And, a material fact of satellite based monitoring, is legal in North Carolina and Delaware, but there is no law in the state of Washington authorizing such form of wearable and/or ingestible and/or implantable identifiable electronic devices and/or neurotechnology nano-electronic chip to monitor an individual for a lifetime using geosynchronous orbital positioning satellites, and/or DARPA brain computer interface/machines remotely accessible to a civil regime, and/or government, constituting unconstitutional surveillance under 50 USC §1810 and §1828 for both electronic and physical searches and seizures of Mr. Hutchison Biometric Identifiers, by intentional intrusive acts performed by all Defendants is also a violation of the

right to be free from unreasonable intrusion that comes with both civil and criminal penalties under relevant parts of the Computer Fraud and Abuse Act (CFAA) codified at 18 USC §1030— Fraud and related activity in connection with computers; under relevant parts of Title 9A Chapter 9A.90 RCW the "Washington Cybercrime Act" §9A.90.010-§9A.90.110, actionable under 42 USC §1985(3).

280

Furthermore, under relevant parts of State v. Grady, 233 N.C. App. 788 (2014) The Supreme Court of the United States vacated those decisions, noting that civil regimes, too, can include searches within the meaning of the Fourth Amendment. The Court remanded the case to North Carolina for a determination of whether SBM is a reasonable search. Grady v North Carolina, 135 S. Ct. 1368 (2015); On remand, the trial court concluded that given the "totality of the circumstances, including the nature and purpose of the search and the extent to which it intrudes upon reasonable privacy expectations," SBM is a reasonable search and therefore constitutional. Grady, 135 S. Ct. Id. at 1371. A divided court of appeals reversed, concluding that the search was unreasonable as applied to this defendant. The court applied a "general Fourth Amendment approach" similar to that used by the Supreme Court of the United States, to uphold warrantless searches of probationers and parolees, mainly on the theory that they have a diminished expectation of privacy in light of their supervision. See United States v. Knights, 534 U.S. 112 (2001) (probationers); Samson v. California, 547 U.S. 843 (2006) (parolees). Though Grady was no longer on probation or post-release supervision, the court concluded that his status as a registrant nonetheless diminished his expectation of privacy as compared to non-registrant citizens. Slip op at 11.

281

In Mr. Hutchison's situation, he is a non-registrant citizen, who did not give consent to participate in a satellite based monitoring program of any kind, and has not been adjudicated guilty of any crime in any court of law, within the United States or abroad. Therefore Mr. Hutchison has a reasonable expectation of privacy and should be protected from unreasonable searches and seizures of, "biometric

identifiers" or any other form of search conducted by civil regime and/or governments, under the Fourth Amendment to the United States Constitution. Mr. Hutchison's constitutional rights were supposed to be protected under federal and state law, but instead, Mr. Hutchison has suffered as a result of all Defendants intentional racially-motivated conspiratorial acts, including but not limited to: deliberate indifference, intrusion upon seclusion, and "gang-stalking", actionable under 42 USC §1983.

282

Furthermore, Defendants conspiratorial collusive civil regime is utilizing satellite based monitoring, implantable electronic identification devices and/or ingestible neurotechnology, against Mr. Hutchison with intent, to torture, embarrass, torment, and harass him repeatedly for years constituting an extremely outrageous form of "cyber stalking", constituting intentional infliction of emotional distress, actionable under 42 USC §1985(3). Washington state has no law authorizing satellite based monitoring, but instead has laws against "cyberstalking", under RCW 9.61.260 and is classified as a class C felony under RCW 9.61.260(3)(b) The perpetrator(s) engaging in the behavior prohibited under subsection(1)(c) of this section by threatening to kill the person threatened or any other person. And, Washington State also passed legislation against unlawful interception of electronic communications, under the Washington Cybercrime Act of 2016 under RCW 9A.90, as well as, the third state to enact a biometric privacy law codified at RCW 19.375 and without obtaining a warrant, the searches and seizures are not just unconstitutional, but is a grossly outrageous form of abuse of power, extreme abuse and/or misuse of neurotechnology and a DARPA brain to computer interface/ machine capable of GSO/GPS tracking, to continue the harassment of Mr. Hutchison, for a lifetime, without any form of relief, actionable under 42 USC §1986.

283

Harrassment, torture, and malicious falsehood in the form of slanderous accusations stated in Mr. Hutchison's claim, in regard to libel and slander as in New York Times Co. v. Sullivan, 376 U.S. 254 (1964), the

US Supreme Court ruled that free speech protections in the First
Amendment to the U.S. Constitution, as well as, in Chaplinsky v. New
Hampshire, 315 U.S. 568, 62 S. Ct. 766, 86 L Ed. 1031 (1942), in which
the U.S. Supreme Court stated, "There are certain well-defined and
narrowly limited classes of speech, the prevention and punishment of
which have never been thought to raise constitutional problems." The
court in Chaplinsky held that defamatory speech is not essential to the
exposition of ideas and that it can be regulated without raising
constitutional concerns. This reasoning was confirmed in Beauharnias v
Illinois, 343 U.S. 250, 72 S. Ct. 725, 96 L. Ed. 919 (1952), where the
Court again held that libelous speech is not protected by the
Constitution, actionable under the Fourteenth Amendment to the US
Constitution.

<div align="center">284</div>

Torture and the constant threat of physical harm is outrageously
unnecessary as in Furman v. Georgia 408 U.S. 238 (1972); the court
stated, "The actions of defendants were found to have been degrading to
human dignity, obvious infliction of harm to the plaintiff, and was
found to be unacceptable by the general public, as well as, patently
unnecessary". "Cruel and unusual punishment is unacceptable in a
civilized society"; Mr. Hutchison has been victimized by Defendants
extremely outrageous conduct involving sophisticated surveillance
equipment, "neural weaponry", indirectly used as a form of punishment
derived from the misuse and abuse of advanced technologies in the hands
of white supremacists, actionable under the Eighth Amendment to the US
Constitution. This is why it is absolutely necessary for this court to
grant Mr. Hutchison injunctive relief to end the torment, torture, and
an outrageous intrusion upon seclusion, in violation of the inalienable
rights to privacy, bodily integrity, and personal autonomy under the
due process clause of the Fourteenth Amendment to the US Constitution.

<div align="center">288</div>

Defendants DARPA indirectly conducted unethical human medical
experiments using NESD, $N^3$ and, INI to unconstitutional violate Mr.
Hutchison's' rights and is the proximate cause for damages suffered,
justifying requests for, including but not limited to: monetary

<div align="center">**131**</div>

economic losses, as well as monetary compensation for non-economic
damages of severe mental anguish, loss of sleep, embarrassment, loss of
feeling secure within his own body, and other losses due to all
Defendants intentional and/or negligent acts in furtherance of Salkin,
Mostrom, and others racially-motivated conspiracy against Mr. Hutchison
to deprive and defraud by acquiring the entire contents of a foreign
bank checking account with Cayman National Bank. As well as, continuous
violations of the penumbra of constitutional personal protections and
will perpetuate the suppression of all Plaintiffs' due process rights
to privacy, personal autonomy, bodily integrity, and the freedom to
think and make conscious decisions without interference from any
Defendant using sophisticated ingestible implantable neurotechnology
nano-electronic chip connected to a DARPA BC/I to secretly monitor The
Hutchison's before, during, and after litigation without injunctive
relief granted by this court.

289

Mr. Hutchison and family are informed and thereon allege that all
Defendants' aforementioned acts were intentional, willful, malicious,
oppressive and despicable, and/or were done in willful and conscious
disregard of the rights, welfare, and safety of Plaintiffs, and the
proximate cause of severe physical and psychological pain and
suffering, justifying entitlement to injunctive relief, monetary
compensation for actual economic damages suffered, and the awarding of
punitive and exemplary damages against all Defendants, as well as any
other relief deemed just and proper by the court.


SIXTEENTH CLAIM FOR RELIEF

(Equal Protections Clause Fourteenth Amendment, 42 USC §1983; Due
Process Clause: Fourteenth Amendment, 42 USC §1986; Gross Negligence,
Gross Misconduct, Fraudulent Misrepresentation, 42 USC §1985(3))


290

Mr. Hutchison attempted to contact the Washington State Department of
Health Complaint Intake Unit. And, Mr. Hutchison received a
confirmation via email. As well as, contacting USG subordinates sending

**132**

correspondence via certified mail to FBI, DHS and more. But no action was taken and/or given a second thought about concerns over fraud in connection to computers involving a health care provider affiliated with white supremacy and an unethical human experiment. Constituting foreseeable failure to infer with the racially motivated conspiratorial collusion intent to defraud and deprive Mr. Hutchison of constitutional protected rights to privacy, bodily integrity and personal autonomy under the Fourteenth Amendment to the US Constitution, actionable under 42 USC §1986.

291

Pursuant to FRCP Rule 44 for publicly accessible information used in conjunction with FRE 803 based on Mr. Hutchison's eye witness testimony and allegations of being a victim of fraud directly caused by a Health Care Provider Live Well Counseling subordinate Lee W. Salkin pursuant to FRCP Rule 9(b) mind "Mens Rea" for motive as a premeditated intentional act in violation of the Computer Fraud and Abuse Act (CFAA) codified at 18 USC §1030 – Fraud and related activity in connection with computers. Under relevant parts of Title 9A Chapter 9A.90 RCW the "Washington Cybercrime Act" §9A.90.010 – §9A.90.110; While Mr. Hutchison a patient of Live Well Counseling was temporarily disabled due to unforeseeable circumstances related to a racially-motivated conspiratorial deprivation, actionable under 42 USC §1985(3); involving subcellular Satellite Based Monitoring under an unethical non-consensual human medical experiment indirectly conducted by DARPA using an Intelligent Neural Interface (INI), Neural Engineering System Design (NESD), and Next Generation Nonsurgical Nuero-technology (N³) project technologies of the US BRAIN Initiative Program, as well as fraudulent misrepresentations made by Live Well Counseling to follow through with a plan to swindle Mr. Hutchison.

292

The Washington State Department of Health Secretary has authority under RCW 43.70.090(3); Subpoenas issued in the conduct of investigations required or authorized by other statutory provisions or necessary in the enforcement of other statutory provisions shall be governed by RCW 34.05.588(2); among other legally authorized capabilities within his

official capacity, including but not limited to investigate internal misconduct of subordinates. Due to Mr. Hutchison's circumstances of being targeted by racially motivated individual actors, and allegations of conspiratorial collusion, constituting Gross Negligence, for example:

293

The Washington State Department of Health and subordinate Mr. Joe Johnston a Complaint Intake Investigator has a sworn duty under the constitutional oath stated in 5 U.S. Code 3331 and a duty to investigate complaints of, including but not limited to: healthcare related fraud, abuse, misuse of personal identifying data, racial discrimination and other HIPPA violations complaints. The Department of Health is a Government Agency with resources and the capacity to punish via fines, and by other means of authoritative action established under the Revised Code of Washington, Chapter 43.70, including but not limited to: RCW 43.70.190 Violations- Injunctions and legal proceedings authorized; RCW 43.70.200 Enforcement of health laws and state or local rules and regulations upon request of local health officers; RCW 43.70.512 Public Health System- foundational public health services-Intent; RCW 43.70.740 Adjudicative proceedings; And, under RCW 43.70.790 Health care facility inspection and investigation availability. As well as, the Convention on the Rights of Persons with Disabilities (CRPD) Article 15- Freedom from torture or cruel, inhuman or degrading treatment or punishment, and by the Declaration on the Protection of All Persons from Being Subjected to Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, General Assembly Resolution 3452 (9 December 1975); Article 5- The training of law enforcement personnel and other public officials; Under Article 8- aggrieved persons shall have rights to bring a claim and/or complaint to be impartially examined by appropriate authorities of the state; Furthermore, all public officials have a duty codified at 5 CFR 2635.101; Basic obligation of public service.

294

The Washington State Department of Health breached that duty by failing to promptly and impartially examine the facts surrounding Mr.

Hutchison's complaint and/or contact appropriate authorities to investigate the alleged accusations and failed to punish Live Well Counseling, as well as notify the public about the alleged accusations, including but not limited to: racially motivated fraudulent misrepresentations, failure to comply with administrative simplification provisions codified at 42 USC §1320d-2, under section 264(c)(2) of the HIPAA Act of (1996), relating to the privacy of individually identifiable health information. As well as, standards for information transactions and data elements under: 42 USC §1320d-2a (2) (A) Health claims or equivalent encounter information (E) Health care payment and remittance advice (J) Electronic funds transfers- Mr. Hutchison brings additional allegations against Live Well Counseling for failure to follow procedures under RCW 70.02.150 for Security Safeguards, violating the implied contract between Mr. Hutchison and Live Well Counseling, a "healthcare provider patient agreement" and/or short term disability contract with Honeywell Electronics rendered via electronic payment remittance from Washington State Medicaid, Cigna with an Incident # 10367032-01, and other forms of payment from the patient Mr. Hutchison. As well as, a possibility of "kickbacks" from Medicaid and other Health Insurance Providers who issued payments to Live Well Counseling. Mr. Hutchison is informed and reasonable believes Live Well Counseling as a Healthcare provider has unlawfully used proceeds, "fruits of unlawful gain 'swindling'", made to the 'covered entity' relocating to a different location in the city of Spokane located at 200 North Mullan, STE 222. Spokane, WA 99206.

<center>295</center>

As a proximate cause of gross misconduct for abuse of power, abuse of process, and the Washington State Department of Health's breach of duty by inaction with foreseeability constitutes a failure to infer and/or investigate and/or report wrong-doings committed by Live Well Counseling subordinate Grand Dragon of the KKK of Wisconsin Lee W. Salkin, that created a "zone of foreseeable danger", actionable under 42 USC §1983; Including but not limited to: malicious falsehood and/or slanderous public opinion of Mr. Hutchison, directly leading to hostilities toward Mr. Hutchison as a Black man and member of a

<center>135</center>

protected class of US citizens, actionable under the Equal Protection
Clause of the Fourteenth Amendment to the US Constitution that
indirectly caused both non-economic and economic damages. And, with
foreseeability via a complaint filed by Mr. Hutchison, the Washington
State Department of Health should have known that the failure to infer
with a racially-motivated conspiracy with intent to defraud and deprive
would have caused Mr. Hutchison further damages.

296

Mr. Hutchison further alleges that the Washington Department of Health
subordinate Joe Johnston was under duress and/or intentionally failed
to investigate Mr. Hutchison's complaint, constituting Gross Misconduct
as a direct and/or indirect co-conspirator to the racially motivated
conspiratorial collusion intent to defraud and deprive Mr. Hutchison of
alienable and inalienable rights to life and liberty interests to
privacy, bodily integrity, and personal autonomy under the Due Process
Clause of the Fourteenth Amendment to the US Constitution, actionable
under 42 USC §1985(3).

297

The Washington State Department of Health is liable under the
Respondent Superior Doctrine for subordinates negligent and/or
intentional acts and failure to investigate, as well as the proximate
cause of Plaintiffs damages, resulting in non-economic damages under
RCW 4.56.250 (b) for pain and suffering, inconvenience, mental anguish,
injury to reputation, and humiliation, based on Defendants gross
negligence, intentional omissions, and malicious misconduct. Plaintiffs
seek a modest and reasonable amount based on 0.43 times the annual
average wage times the average life expectancy of Mr. Hutchison and
qualified actual economic damages, as well as, a special circumstances
writ of mandamus to investigate allegations previously filed complaint.

298

Mr. Hutchison and family are informed and thereon allege that all
Defendants' aforementioned acts were negligent and/or intentional,
willful, malicious, oppressive and despicable, and/or were done in
willful and conscious disregard of the rights, welfare, and safety of
Mr. Hutchison, and is the proximate cause of severe physical and

**136**

psychological pain and suffering, justifying entitlement to injunctive relief, monetary compensation for non-economic damages, actual economic damages suffered, and awarding of punitive and exemplary damages against all Defendants, as well as in addition to a request of treble damages at the allotted maximum amount and/or any other form of relief deemed reasonable by the court.


PRAYER FOR RELIEF

All Defendants, including but not limited to: IARPA, DARPA, NSA, DHS, FBI, DIA, Washington State, Spokane County, City of Spokane, City of Spokane Valley, Spokane Police Department, Spokane Sheriff Department, W.A.S.P.C. and Ku Klux Klan, are liable for subordinates negligent and/or intentional acts and/or omissions as conspirators to Mr. Hutchison's alleged 42 USC §1983; 42 USC §1985(3); 42 USC §1986; and other claims, including but not limited to: Gross Misconduct, Fraudulent Misrepresentation, Malicious Intent to Stalk, Intimidate, Torment, Harass, Embarrass, Oppress, Discriminate, Bio-technologically re-enslavement, and terroristic threats to Mr. Hutchison, his wife, and young children; As well as, for unlawful intrusion upon seclusion derived from ingestible implantable neurotechnology nano-electronic devices cyber security intrusions and physical manipulations.

Without swift relief from this court, the Plaintiffs will continue to suffer from intrusive and damaging effects of unethical human experimentation. The Hutchison family repeats, realleges the allegations of the preceding paragraphs of this complaint as if each were fully set forth herein in their entirety. All Defendants are liable for intentional acts and/or omissions while conducting unethical human experiments, without the consent of the Plaintiffs, as well as, for misuse of ingestible biometric identifier neurotechnology and/or implantable identifiable electronic microchip tracking devices and/or DARPA's NESD ($N^3$) Next-Gen Neuro-tech and Intelligent Neural Interface used as sophisticated surveillance equipment for surveillance and/or cyber security compromised capturing of real-time activities, location, and biometric identifiers justifying relief for intentional intrusions

**137**

of; including but not limited to: All workplaces, vehicles, homes, sleep, releasing of bodily fluids, and/or places of business and more. During the duration of research experimentation, to defraud Mr. Hutchison, in violation of state, federal, and international laws; Plaintiff requests relief under 42 USC §1981(a), for infringement of rights stated in the Fifth and Fourteenth Amendments to the US Constitution, with congressional intent to confer a remedy for civil wrongs; Under 42 USC §1983 equal protections violations, race based conspiratorial collusion, and sub cellular SBM; §1985(3) claim of racially motivated conspiratorial collusion intent to defraud, human experimentation, and deprivation; the Civil Rights Act of (1871) Section 2, codified in relevant part at 42 USC §1985 "provided a civil penalty against persons who knew of and failed to prevent §2 violations," provision codified at 42 USC §1986; As well as, violation of Title VII Civil Rights Act of (1964) Pub. L.88-352, 42 USC §2000e; and the Civil Rights Act of (1991), Pub.L.102-166 and the Lily Ledbetter Fair Pay Act of (2009) Pub.L.111-2, The Americans with Disabilities Act of (1990), and section 501 of the Rehabilitation Act of (1973); Violations of the Biometric Privacy Act (2017) codified at RCW 19.375.20(4)(b)(ii); injunction for future illegal interception and/or capturing of Biometric Identifiers, and violations under RCW 70.02.170(2) for actual economic damages suffered in conjunction with bio-metric identifiers and fraud with intent to commit trespass to chattel; including but not limited to other damages sought upon discovery. Additional requests for punitive damages under 50 USC §1828, and reasonable request for treble damages under RCW 19.86.090 for intentional, outrageously, extreme, and malicious interference with contractual economic expectancy, conduct during the unethical non-consensual neural nanotechnology biomedical human experiment under the Unite States BRAIN Initiative Program, as well as, other forms of relief and/or compensation under 18 USC §2521(2)(A)(i-iii), and recovery of reasonable attorney's fees under 50 USC §1810, and all litigation costs.

The racially motivated conspiratorial collusion deprivation with intent to defraud Mr. Hutchison of constitutionally protected civil rights and civil liberties, including but not limited to: the fundamental right of freedom of thought, freedom from unreasonable electronic and physical searches and seizures of Biometric Identifiers, freedom from unreasonable cruelty as punishment, freedom of expression, freedom of religion, substantive due process rights to privacy, personal autonomy, and bodily integrity, are the actual and/or proximate causes for all non-economic damages suffered. As well as, all Defendants intentional and negligent acts and/or omissions are the actual and/or proximate causes for all reasonable economic damages. California Civil Code (2016); 52.7(2) states, "Plaintiffs may bring a civil action for actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief". And, under 28 USC §1343(a) recovery for; including but not limited to: damages to person, property, redress of deprivation, injury, and failure to infer, as well as all claims of relief under 28 USC §1346(b) with an additional request for treble damages under RCW 19.86.090 for malicious interference with contractual economic expectancy, For Example:

California Civil Code (2016); 52.7(b)(1) for initial civil penalties of $10,000.00 USD, and $1000.00 USD for each day the violation continues until the deficiency is corrected, as well as judicial grant for reasonable attorney's fees and litigation costs, including, but not limited to, expert witness fees and expenses as part of the costs. Damages, for lost personal property under RCW 64.04.010 calculated based on Fair Market Value at the time of purchase in the amount of **$185,000.00 USD** located at 2406 South Pines Rd. Spokane Valley, WA 99206. Violations California Civil Code (2016); 52.7(2) physical searches and seizures of ingestible implanted electronic microchip identification device under 50 USC §1828 for $100.00 USD a day since August 18, 2017 and every day thereafter equal to more than $135,000.00 USD times (6) six for each member of the Hutchison family amounting to a subtotal of **$810,000.00 USD.** Pursuant to RCW 4.56.250(b) based on 0.43 times the annual average wage times the average life expectancy of

**139**

Mr. Hutchison, for non-economic damages amount of $2,350,760.24 USD;
and for reduced earning capacity in the amount of $401,520.48 USD; plus
economic damages of $32,895.00 USD; for lost wages between the months
of November 2017 to June 2018 subtotal of **$2,785,175.72 USD**. Pursuant
to RCW §19.375.020(4)(b)(ii) non-consensual capturing, disclosing, and
mishandling bio-metric identifiers amounting to damages for lost wages
are calculated based on the average annual wage pursuant to RCW
50.04.355 of Washington State is $65,640.00 USD times a lifetime career
of thirty-five years in the estimated amount of economic expectancy in
the amount of $2,797,400.00 USD plus $3,094,000.00 USD for cost of
living adjustment to wages; including bonuses, plus fringe benefits for
medical insurance in the amount of $906,000.00 USD to a subtotal
**$6,797,400.00 USD** for economic expectancy. Violations under RCW
70.02.170(2) for actual economic damages suffered in conjunction with
bio-metric identifiers and fraud with intent to commit trespass to
chattel derived from unlawful electronic searches under 18 USC
§2520(a), subsection(b)-Relief, and subsection(2)(a); for actual
damages, attorney's fees, and other forms of relief including punitive
damages and other investigation and litigation costs. As well as,
electronic seizures of the body recoverable under 50 USC §1810 for the
Life Time Value of the foreign bank account with Cayman National Bank
checking account in the actual amount of damages subtotal
**$69,178,753,430,598,000.00 USD,** punitive damages, and reasonable
attorney's fees and other investigation and litigation costs.

California Civil Code (2016), subsection(3); Additionally, punitive
damages may also be awarded upon proof of the defendant's malice,
oppression, fraud, or duress in requiring, coercing, or compelling the
plaintiff to undergo the subcutaneous implanting of an identification
device, for an estimated combined non-economic and economic damages
subtotal of $10,577,575.12 USD, as well as a request for punitive
damages in the amount of $35,000,000.00 USD times (6) for each member
of the Hutchison family subtotal of $210,000,000.00 USD equal to more
than ***$220,577,575.12 USD,*** and *$69,178,753,430,598,000.00 USD* for a

**140**

final overall grand total request for monetary compensation in the amount of **_$69,178,753,651,175,575.12 USD_**.

With hope and a prayer The Hutchison family seeks a humble request for maximum allotted relief possible, in the form of injunction, monetary compensation, treble damages for outrageous breach of contractual economic expectancy and/or punitive damages; As well as, all future medical expenses for examination of sub-cellular neurotechnology or other tests and/or any other form of relief deemed reasonable by this court to make a good faith effort to bring about justice, by ruling in the Plaintiffs favor on the merits, as well as allow Plaintiffs to be made whole again by granting any other form of relief deemed reasonable by the court.

This complaint was typed in Courier New 12pt Font.